PAUL F. DAUER (CALIFORNIA BAR NO. 37428)
LAW OFFICES OF PAUL F. DAUER
400 CAPITOL MALL, SUITE 2950
SACRAMENTO, CA 95814
TELEPHONE: (916) 448-2431
FACSIMILE: (916) 448-2462
EMAIL: PFDAUER@PFDATTY.COM

JENNIFER L. MCCREADY (CALIFORNIA BAR NO. 179262)
LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814
TELEPHONE: (916) 325-4000
FACSIMILE: (916) 325-4010
EMAIL: JENNIFER.MCCREADY@BBKLAW.COM

Attorneys for Plaintiff
FIRE-TROL HOLDINGS LLC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FIRE-TROL HOLDINGS LLC,

Plaintiff,

v.

UNITED STATES,

Defendant.

Case No. 04-1389-C
Judge: George Miller

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

# INTRODUCTION

Plaintiff Fire-Trol Holdings L.L.C. ("Fire-Trol") seeks a preliminary injunction maintaining the *status quo* pending a hearing on the merits of its action challenging 1) a final rule, announced by the United States Forest Service ("USFS"), banning sodium ferrocyanide (also known as yellow prussiate of soda, or "YP Soda") in wildland fire retardants purchased by the USFS and 2) a final rule requiring gum thickener in all wildland fire retardants purchased by the agency. Both rules are contrary to the federal Competition in Contracting Act ("CICA") and will establish a monopoly manufacturer of qualified wildland fire retardants. Both rules also were adopted contrary to the Administrative Procedure Act ("APA") and Federal Acquisition Regulation ("FAR") and demonstrate an abuse of the USFS' discretion. Fire-Trol has no adequate remedy at law to prevent the threatened injury.

Absent a preliminary injunction, Fire-Trol will suffer irreparable harm in that its business will be substantially crippled, and is likely to be destroyed. Further, the public will be harmed if the USFS establishes a monopoly supplier of wildland fire retardant. The USFS will suffer no harm from maintaining the *status quo*, in which it can purchase the same retardants that it has been purchasing and applying for decades. Thus, the balance of harms strongly favors Fire-Trol.

Plaintiff is likely to succeed on the merits because the USFS failed to comply with the APA and FAR requirements for adopting new testing or qualification standards. In addition, the ban on YP Soda and the requirement for gum thickener improperly create a monopoly, contrary to CICA. The USFS' rules challenged herein are both arbitrary and capricious in that they are premature, not supported by sound science, and not supported by adequate study and risk analyses. It is necessary, appropriate, and in the interests of justice for this Court to grant a preliminary injunction to maintain the *status quo* pending the trial on the merits.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

## QUESTIONS PRESENTED

The following questions are presented by this motion for preliminary injunction:

1. Whether this Court has jurisdiction, as found by the United States District Court for the District of Arizona, over an action to review the USFS' adoption of rules – without compliance with the FAR and APA and contrary to CICA – prohibiting wildland fire retardants containing YP Soda and requiring that wildland fire retardants contain gum thickener. The District Court dismissed this action for lack of jurisdiction on the ground that the Court of Federal Claims has exclusive jurisdiction over these issues.

2. Whether Plaintiff Fire-Trol has established a) a likelihood of success on the merits of one or more of its claims, b) that it will be irreparably harmed absent a preliminary injunction, c) that the balance of harms weighs in favor of issuing a preliminary injunction to maintain the *status quo* pending a ruling on the merits of this action, and d) that the public interest is served by the issuance of a preliminary injunction sufficient to merit issuance of the requested preliminary injunction.

## STATEMENT OF FACTS

### I. BACKGROUND

Wildland fires can be tremendously destructive of lives (both human and animal), habitats, and property. The USFS purchases and drops wildland fire retardants to reduce the overall harmful effects of wildland fires by controlling or reducing the scope, severity, and/or duration of wildland fires. **Only two companies**, Fire-Trol and Astaris LLC ("Astaris"), manufacture wildland fire retardants qualified for purchase by the USFS.[1] Exhibit A.

In Forest Service Specification 5100-304b (January 2000) ("Specification"), the USFS defined its requirements for wildland fire retardant. Exhibit B. The Specification mandates detailed testing, which can require two to three years or more to complete, to

[1] Fire-Trol and Astaris, or their predecessors, have been the exclusive manufacturers of long-term chemical wildland fire retardants meeting the USFS' requirements since the conception of the retardant program in the 1960s. The sole exception was a short period in the mid-1980s when another competitor entered the market, but that competitor was ultimately unsuccessful. Declaration of Joe Grigel, filed herewith at ¶ 6.

determine whether the retardant will perform to Specification standards. Declaration of Joe Grigel, filed herewith ("Grigel Decl.") at ¶ 2; Declaration of Rob Crouch, filed herewith ("Crouch Decl.") at ¶ 7. Pursuant to the Specification, all retardants must meet certain anti-corrosion standards, and all products purchased by the USFS contain one or more corrosion inhibitors to meet that standard. Crouch Decl. at ¶ 5; Exhibit B at ¶ 4.5.6. Products that are deemed compliant with the Specification are listed on the wildland fire retardant qualified products list ("QPL"). Historically, the USFS has required bidders to bid products which are compliant with the Specification.

YP Soda, which is added to table salt and road salt to inhibit corrosion and/or to prevent "caking," is one of the only effective ingredients to inhibit corrosion in storage tanks and in the aircraft that deliver retardant. Crouch Decl. at ¶ 6. YP Soda is the corrosion inhibitor in all Fire-Trol® fire retardants which meet the Specification, and has been successfully used in retardants sold to the USFS **for the past 30 years**. Crouch Decl. at ¶ 6; Grigel Decl. at ¶¶ 4, 5. The USFS has expressly acknowledged that use of YP Soda as a corrosion inhibitor in fire retardant chemical products does not pose a health hazard to humans. Exhibit C at pp. 26, 27, 29, 30, and 35.

## II. THE USFS ADOPTED RULES BANNING YP SODA AND REQUIRING GUM THICKENER WITHOUT COMPLYING WITH THE APA

The USFS adopted a rule banning YP Soda in wildland fire retardants based on its erroneous belief that such retardants pose a greater hazard to aquatic species than do wildland fire retardants which do not contain YP Soda. In addition, the USFS adopted a rule requiring gum thickener in wildland fire retardants based on its unsupported belief that retardants with small amounts of gum thickener will increase drop heights and will improve delivery of the retardant. Both of these rules were adopted without the compliance with the APA or the FAR which would have disclosed the fundamental flaws in the USFS' beliefs and conclusions.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

**A. Rule Banning Retardants Containing YP Soda**

On March 28, 2000, the USFS suspended purchases of Fire-Trol's wildland fire retardants relying on the U.S. Geological Survey, Columbia Environmental Research Center study titled *The Effects of UVB Radiation on the Toxicity of Fire-fighting Chemicals* ("USGS 2000 Study"). Exhibits C (at pp. 28, 29, 30, and 33), D, E, F, and G. Less than a month later, the USFS acknowledged that its suspension of purchases from Fire-Trol was legally unfounded, unequivocally committed to conduct in-depth field testing to determine the effects of wildland fire retardant on aquatic environments, and resumed purchasing Fire-Trol fire retardants. Exhibit C (at pp. 27, 29, 30, and 35), F, G, and H; *see also* Exhibit T at pp. 107-08, ¶ 34. However, in June 2000, before the studies were commenced, the USFS publicly announced its new rule that it would not purchase wildland fire retardants containing YP Soda beginning with the 2004 through 2006 contract cycle. Exhibit I. Although the USFS has changed the implementation date for its rule, the USFS has never rescinded its unfounded rule banning retardants containing YP Soda. Exhibit J (USFS letter stating that, "[b]ecause other, less toxic, alternatives are available at reasonable cost, the Forest Service does not want YP Soda in retardant."); Exhibit K; Exhibit L (USFS letter informing the GAO that the USFS "intends to **continue its position** that it will not accept retardants containing YP Soda . . .." (emphasis added); Exhibit M (stating that the USFS "continues to sustain the fundamentals of [its] position" against retardants containing YP Soda); Exhibit N (USFS letter agreeing to "allow an additional year to our original position" that the ban on YP Soda would be effective beginning in 2004).) The USFS has not adopted its rule banning YP Soda in accordance with the APA or the FAR, as discussed below, and has not clearly detailed the basis for its rule.

**B. Rule Requiring Gum Thickener In Retardants**

The USFS also is requiring that retardants contain gum thickener sufficient to demonstrate a viscosity of at least 100 centipoise, beginning with the 2005 procurement cycle. Exhibits I, J, K, L, M, and N. Fire-Trol's liquid concentrate retardant, its most

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

successful retardant, does not contain a gum thickener. Crouch Decl. at ¶ 10; Exhibit AF. The USFS has not adopted its rule requiring gum-thickened retardant in accordance with the APA or the FAR, as discussed below, and has not clearly detailed the basis for its rule.

## III. THE USFS' IMPROPER MODIFICATION OF THE SPECIFICATION TO IMPLEMENT ITS RULES

The USFS' rules banning YP Soda and requiring gum thickener are an improper attempt to informally "modify" the rigorous Specification testing procedures for listing products on the wildland fire retardant QPL. In May 2002, the USFS announced modified testing and qualification procedures which purported to give the USFS additional discretion beyond that stated in the Specification. Exhibit K. Following a Fire-Trol protest, the USFS withdrew its modification, stating:

> . . . To the extent the May 26, 2002. [sic] letter may be deemed a change to specifications, the Qualified Products List, and testing procedures for qualification, the Forest Service has determined that it will make such changes **after** the Forest Service has complied with applicable portions of the Federal Acquisition Regulation ("FAR"), including Part 9 of the FAR, and any other applicable statutes and regulations.

Exhibit L (emphasis added); *see also* Exhibit M (reiterating that a modified Specification would be published "after complying with applicable statutes and regulations").

After withdrawing the improper May 2002 modification, the USFS has not adopted any new or modified Specification in accordance with the FAR or the APA. However, the USFS is taking the position that it has complied with legal requirements for modifying the Specification. *See* Exhibit O (Canadian Interagency Forest Fire Centre letter stating that the USFS told them that the revised testing procedure "has been formally and officially adopted"). The USFS has told Fire-Trol that the USFS will not test products containing YP Soda because such products will not be purchased in future procurements by the USFS. Grigel Decl at ¶ 14; Crouch Decl. at ¶¶ 14, 16. The USFS also has been applying the modified field testing procedures stated in the May 26, 2002 letter to list products as "fully qualified." Exhibits A and K. Finally, the USFS has been testing Astaris'

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

retardants against a purported different combustion retarding effectiveness standard. Exhibit P, pp. 69-70, ¶¶ 5-11. By applying modifications to the Specification without first complying with statutory and regulatory requirements, the USFS has exhibited its intent not to comply with its commitment to "make such changes after the Forest Service has complied with applicable portions of the [FAR], including Part 9 of the FAR, and any other applicable statutes and regulations." Exhibit L.

Unless a preliminary injunction issues, the USFS will apply its informal "modifications" to the Specification, contrary to the FAR and the APA, to implement its rules challenged in this action to the 2005 procurements. *See* Exhibit Q (GAO transcript excerpts) at pp. 235-37, 253-54, 315-17. Based on the extensive and consistent assertions of the USFS' rules, the USFS intends to apply those rules, which have not been adopted in a modified Specification, to the 2005 procurements. *See* Exhibits I, J, K, L, M, and N. Most recently, when Fire-Trol attempted to avoid the need to request a preliminary injunction by requesting that the USFS defer implementation of its rules pending resolution of this dispute, the USFS declined. Exhibit AD. Thus, although the solicitations have not formally issued, it is indisputable that the USFS will apply its unlawful rules banning YP Soda and requiring gum thickener to the 2005 procurement unless enjoined from doing so.

## ARGUMENT

Plaintiff Fire-Trol seeks a preliminary injunction, under Rule 65 of the Rules of the Court of Federal Claims, pending the decision by this court on the merits of Fire-Trol's challenges to the USFS' rulemaking and modification of qualification requirements. As this Court has explained:

> The Court balances four factors in determining whether to issue a preliminary injunction: the likelihood of success on the merits; whether plaintiff will suffer irreparable injury absent the injunction; the balance of harm to plaintiff and defendant; and the public interest. [citation]

*Labat-Anderson Inc. v. United States,* 50 Fed. Cl. 99, 105 (Fed. Cl., 2001); *see also FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed. Cir. 1993); *PGBA, L.L.C. v. United States,* 57 Fed. Cl. 655, 656 (Fed. Cl., 2003). A strong showing in one factor may overcome a weakness in another factor. *FMC,* 3 F.3d at 427; *PGBA,* 57 Fed. Cl. at 656-57. The purpose of a preliminary injunction is to maintain the *status quo* and protect against the threatened injury until the merits of the dispute are heard and decided. *See Cordis Corp. v. Medtronic, Inc.,* 835 F.2d 859, 863 (Fed. Cir., 1987). As set forth below, Fire-Trol has established its right to a preliminary injunction restraining the USFS from implementing the rules challenged herein until this Court can rule on the validity of those restrictions on competition.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

## I. THIS COURT HAS JURISDICTION TO HEAR THIS MATTER

Under 28 U.S.C. section 1491(b), this Court has subject matter jurisdiction to hear this matter, including this motion for a preliminary injunction. *See generally Labat-Anderson,* 50 Fed. Cl. at 102-03 (stating that subject matter jurisdiction is a threshold matter to be addressed prior to reaching the merits on a motion for preliminary injunction). The instant action is one by an interested party objecting to violations of the Administrative Procedure Act, Federal Acquisition Regulation, and Competition in Contracting Act in connection with proposed procurements. *See* 28 U.S.C. § 1491(b). Fire-Trol originally filed this dispute in the United States District Court for the District of Arizona. That District Court dismissed for lack of jurisdiction, holding that this Court has exclusive jurisdiction over APA, FAR, and CICA challenges to qualification requirements and rules relating to what an agency must or must not purchase. *See* Exhibit AE. Because "procurement" is interpreted broadly, this Court should confirm that it has jurisdiction over challenges to adoption or modification of qualification requirements and rulemaking under the APA, even when those actions apply to more than just a single procurement. *See Labat-Anderson,* 50 Fed. Cl. at 104 (citing *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) for the principle that jurisdiction over a "proposed procurement" is broadly interpreted); *CCL, Inc. v. United States*, 39 Fed. Cl.

780, 788-89 (Fed. Cl. 1997); *see also CW Gov't Travel, Inc. v. United States,* 2004 U.S. Claims LEXIS 193 at *18-19 (Ct. Cl., July 26, 2004) (holding that the Court of Federal Claims has jurisdiction over an action challenging an alleged "violation of statutory requirements for competition in government procurements").

If this Court finds that it does not have jurisdiction over this action, Plaintiff Fire-Trol requests that this Court so rule prior to October 12, 2004. October 12 is the last day for Fire-Trol to appeal the decision of the District Court dismissing the almost identical action on the ground that this Court has exclusive jurisdiction over the action. Federal Rules of Appellate Procedure, Rule 4; Exhibit AE. Under 28 U.S.C. section 1500, Fire-Trol cannot appeal that decision without divesting this Court of jurisdiction. Accordingly, in order to protect Fire-Trol's ability to pursue this action in this Court, if jurisdiction is proper, or in the District Court should this Court find it lacks jurisdiction, Fire-Trol requests that this Court rule on subject matter jurisdiction prior to the expiration of Fire-Trol's right to appeal the District Court's ruling.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

## II. FIRE-TROL CAN ESTABLISH BOTH IRREPARABLE INJURY AND THAT THE BALANCE OF HARMS TIPS IN FIRE-TROL'S FAVOR

### A. Fire-Trol Will Be Irreparably Injured Absent A Preliminary Injunction

The USFS purchases wildland fire retardants through competitive procurements, awarding requirements contracts at USFS and Bureau of Land Management fire fighting bases on a firebase-by-firebase basis. Grigel Decl. at ¶ 8. Except in the most recent procurement, contracts have historically been awarded for one year terms with two one-year extension options, for a total of a three-year contract cycle. *Id.* at ¶ 10. One procurement is for the purchase of "bulk" retardant, and one procurement is for "full service" contracts, *i.e.,* delivering the retardant "mixed and loaded" onto aircraft at specified bases. *Id.* at ¶ 8. The USFS also awards retardant contracts for retardant to be delivered "FOB Origin," placing individual orders for retardant for temporary bases, helicopters, and single engine air tanker ("SEAT") aircraft. *Id*. Contracts at permanent

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

bases constituting at least one-third of the anticipated retardant needs will be reprocured beginning in late 2004 for the 2005-2007 contract cycle.[2] *Id.* at ¶ 11.

Because Fire-Trol uses YP Soda in all of its qualified wildland fire retardants, implementation of the rule banning YP Soda in retardants will entirely preclude Fire-Trol from competing in the 2005 procurements. Fire-Trol currently has the contracts for seven bases at which the bulk contracts necessarily will be reprocured, the requirements for which were evaluated in the 2004 procurement at approximately 1.5 million gallons of retardant. Exhibit Q. Fire-Trol also currently has the contracts for six bases at which the full service contracts necessarily will be reprocured, the requirements for which were evaluated in the 2004 procurement at approximately 3.4 million gallons of retardant. Exhibit R. Fire-Trol will lose all these bases if the ban on YP Soda is implemented.

With respect to the requirement for gum-thickener, of the Fire-Trol bases which must be re-procured in 2005, five of the seven "bulk" bases and three of the six "full service" bases are for the supply of Fire-Trol's non-gum-thickened liquid concentrate retardant. Exhibits Q and R. Fire-Trol has no gum-thickened liquid concentrate product to bid at those bases, and will only be able to bid a high viscosity gum-thickened powder retardant. Crouch Decl at ¶¶ 9-10. Because it will be more costly for Fire-Trol to bid its gum-thickened retardant, and given the close competition in the last procurement, Fire-Trol is likely to lose its existing contract bases if the USFS is permitted to proceed under its rule requiring gum thickener. Grigel Decl. at ¶¶ 29, 31.

Fire-Trol has contracts for additional USFS bases which will not necessarily be re-procured in 2005 – those one-year contracts with options to renew. Exhibits Q and R. Although the USFS historically has exercised the options to renew, the options may not be exercised, and **all** of Fire-Trol's contracts could be re-procured in 2005. Absent a

[2] In the most recent procurement, the USFS awarded contracts for different terms to stagger the awards and allow for approximately one-third of the volume of retardant to be reprocured each year, rather than all of the contracts being reprocured every three years. Exhibits K and N. Accordingly, the USFS must reprocure contracts for at least one-third of the anticipated retardant volume in 2005. If the USFS follows historical precedent and awards one year contracts with two one-year options, application of the USFS' rules challenged in this action to the 2005 procurement will effectively bar Fire-Trol from one-third of the market for three years.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

preliminary injunction, Fire-Trol is assured of losing at least what is estimated to be almost 5 million gallons worth of retardant business – or approximately 38% of its estimated current contract volume with its primary customer.[3] Exhibits Q and R. This substantial loss of business could so adversely affect the economics of Fire-Trol that Fire-Trol would be unable to remain in business. Grigel Decl. at ¶¶ 32-34. If the USFS does not exercise the options on the remaining contracts, Fire-Trol would lose about 85% of Fire-Trol's annual United States income, and certainly would be put out of business. *Id.* at ¶¶ 27-28.

Likely destruction of a business constitutes irreparable harm sufficient to support issuance of a preliminary injunction. *See Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 516 (Fed. Cir., 1990) (issuing a stay where lack of a stay would cause "catastrophic and irreparable" harm because the business "may well cease to exist"); *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.,* 749 F. 2d 124, 125-26 (2d Cir. 1984); *Poeng v. United States*, 167 F. Supp. 2d 1136, 1143 (S.D. Cal., 2001) (stating that the "majority of district courts addressing this issue have concluded that a loss of at least thirty percent of a plaintiff's business can constitute irreparable harm."). Denial of the opportunity to compete for or obtain a government contract also constitutes irreparable injury. *See Alaska Central Express, Inc. v. United States*, 51 Fed. Cl. 227, 231 (Fed. Cl. 2001); *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (Fed. Cl., 2000); *Wetsel-Oviatt Lumber Co. v. United States,* 43 Fed. Cl. 748, 753 (Fed. Cl. 1999). Finally, "intangible injuries, such as damage to . . . goodwill, qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir., 1991); *see also UARCO Inc. v. Lam*, 18 F. Supp. 2d 1116, 1125 (D. Haw., 1998)

---

[3] Fire-Trol retardants are sold to other governments, such as the Canadian government, European countries, and the State of California, which rely on the USFS' Specification and identification of qualified retardants. Grigel Decl. at ¶ 37. Other governments are aware of the USFS' position on at least the issue of YP Soda. *Id.* at ¶¶ 38-39; Exhibit O. If the USFS is permitted to implement its ban in a procurement, the adverse reaction by other governments to Fire-Trol's retardants based on the USFS rules is likely to translate into lost sales to those governments. Grigel Decl. at ¶¶ 38, 40.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

("loss of clients and market share is not economic loss that can be fully compensated by a damage award.").

Application of the USFS' rule against purchasing fire retardant containing YP Soda will deny Fire-Trol the ability to compete in the upcoming procurement and will severely cripple, if not destroy, Fire-Trol's business. Similarly, the USFS' requirement for gum-thickener will severely impair Fire-Trol's ability to compete in the upcoming procurement, and will result in irreparable damage to Fire-Trol. The harm is sufficiently immediate because the underlying action cannot be concluded prior to issuance of the solicitation this fall and award of the contracts in January or February 2005. *See Privitera v. California Bd. of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir., 1991). Accordingly, Fire-Trol will suffer immediate, irreparable harm absent a preliminary injunction preventing the USFS from enforcing its restriction on competition and rules banning retardants containing YP Soda and requiring gum thickener.

**B. The USFS Will Not Be Harmed Because Issuance Of A Preliminary Injunction Will Maintain The *Status Quo*, Allowing It To Continue To Purchase The Fire Retardants It Has Purchased For Decades**

Issuance of a preliminary injunction will simply maintain the *status quo* prior to the USFS' actions challenged in this suit. For the last 30 years, the USFS has been purchasing and applying Fire-Trol® non-gum-thickened liquid concentrate fire retardants containing YP Soda to public lands to control wildland fires. Grigel Decl. at ¶ 5. Because the requested preliminary injunction will allow the USFS to continue to purchase the wildland fire retardants that it has purchased and used successfully for years, the USFS will not suffer any harm from the issuance of the requested preliminary injunction.

The USFS may claim that retardants containing YP Soda may kill more fish than retardants which do not contain YP Soda, and that the USFS will be harmed from delay in implementing its ban. However, the USFS' *Guidelines for Aerial Application of Retardants and Foams in Aquatic Environments* generally prohibit application of wildland fire retardant 300 feet or less from a body of water, except when necessary to protect life

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

or property. Exhibit S at pp. 84, 85-86. In the limited instances in which retardant is dropped into surface waters – only 8 identified instances between August 2001 and December 2002 – it is not always fatal to fish. Exhibit T at p. 106, ¶ 30 and p. 116, Exhibit 2. Even when retardant has been fatal to fish, the fatalities likely are caused by, and generally credited to, the ammonia present in all retardants. *Id.* at p. 106, ¶ 28; Crouch Decl. at ¶ 3. Furthermore, the United States Fish and Wildlife Service, which is responsible for protection of threatened and endangered species and which has investigated retardant drops into surface waters, has never ordered that the USFS stop using wildland fire retardants containing YP Soda. Because the USFS cannot establish that retardants containing YP Soda pose any materially greater risk to fish than any other retardant, any claimed harm to fish by the USFS is unsupported and, at most, *de minimis.*

**C. The Balance Of Harms Favors Issuing a Preliminary Injunction**

The balance of harms strongly favors issuing a preliminary injunction restraining the USFS from applying its rules challenged in this action. Absent a preliminary injunction, Fire-Trol's business likely will be severely damaged or destroyed, making it impossible for Fire-Trol ultimately to obtain complete relief from improper government action. Conversely, if a preliminary injunction is issued, the USFS will suffer no demonstrable harm because it can continue to use the retardants that it has purchased and applied to public lands for years and will benefit from the continued price competition. Because Fire-Trol will be substantially injured absent an injunction and the USFS will not be harmed by a preliminary injunction, the balance of harms weighs heavily in favor of issuing a preliminary injunction.

**D. The Public Interest Favors Granting a Preliminary Injunction to Maintain the *Status Quo* Pending a Hearing on the Merits of the Action**

In addition to the balance of harms weighing strongly in favor of the injunction, the public interest supports issuing a preliminary injunction. The instant action involves Fire-Trol's challenge to the USFS' actions for violating the Competition in Contracting Act, Administrative Procedure Act, and Federal Acquisition Regulation. Violations of statutes

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

and regulations necessarily offend the public interest and harm those the statutes were meant to protect – in this case, the public at large. *See CW Gov't Travel,* 2004 U.S. Claims LEXIS 193 at *52 (stating that it is "well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations"); *City of S. Pasadena v. Slater*, 56 F.Supp. 2d 1106, 1144 (C.D. Cal. 1999). Specifically, as noted in *Wetsel-Oviatt, supra,* "where the federal procurement process is tainted by arbitrary and capricious government action, the public interest is served by restoring integrity to the procurement process." *Wetsel-Oviatt,* 43 Fed. Cl. at 753. The purpose of CICA is to preserve and increase competition so as to increase available alternatives and decrease the cost to the government. *See AFGE, Local 2119 v.* Rumsfeld, 262 F.3d 649, 657 (7th Cir., 2001); *ATA Defense Indus. v. United States*, 38 Fed. Cl. 489, 500 (Ct. Cl., 1997) (citing Adam Smith, Wealth of Nations 112 (1776)) ; *60 Key Centre v. Administrator of Gen. Servs. Admin.*, 47 F.3d 55, 59 (2d Cir., 1995). The public is harmed when government violates CICA, the APA, and the FAR and limits competition.

The USFS' rules also harm the public by establishing a monopoly supplier of wildland fire retardant. Those rules will eliminate the competition that results in lower prices. *See* Exhibit J (stating that "[w]hen companies compete for our business, we and the taxpayer benefit"); Grigel Decl. at ¶ 30. Establishing a monopoly supplier also will increase the risks to public lands and structures, and risks of lost lives, if the manufacturer can not supply sufficient retardant to meet the nationwide demand. Increased costs and potential shortfalls in supply cannot be in the public interest.

Finally, establishing a monopoly supplier will leave the government with no alternative wildland fire retardant if Astaris' retardant or contract performance is unacceptable. For example, if the USFS were to study Astaris' corrosion inhibitors, those components might be more environmentally persistent and ultimately more hazardous than YP Soda. However, if Fire-Trol retardants were no longer available, the USFS would have no alternative retardant to purchase. Similarly, if Astaris were not

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

manufacturing its retardant to contract specifications, or were unable or unwilling to continue manufacturing wildland fire retardant, the USFS would have no alternate supplier from which it could acquire necessary retardants. Establishing a monopoly supplier harms the USFS – and the public – by eliminating the government's only option should Astaris no longer be willing or able to manufacture acceptable retardants.

Because of the substantial risks to the public from a monopoly supplier, and the fact that the USFS has violated statutory and regulatory requirements in adopting its rules, the public interest weighs strongly in favor of issuing the requested preliminary injunction.

## III. FIRE-TROL IS LIKELY TO SUCCEED IN ESTABLISHING THAT THE USFS FAILED TO COMPLY WITH STATUTORY AND REGULATORY REQUIREMENTS IN ADOPTING ITS RULES

It is probable that Fire-Trol will succeed on the merits of its action, as set forth below. Prohibiting YP Soda will restrict the bidding to one bidder, establishing a monopoly supplier of wildland fire retardant. Similarly, requiring gum thickener will substantially limit competition by precluding Fire-Trol from bidding its most cost-effective and desirable product. Either rule by the USFS constricts competition, contrary to CICA. In addition, the USFS is applying qualification requirements without complying with statute and regulations governing such requirements, including the APA and the FAR. Likelihood of success with respect to establishing **either** a violation of CICA **or** a violation of the statutory (APA) or regulatory (FAR) requirements for adopting or modifying a qualified products list specification is sufficient to support a preliminary injunction. Because the USFS is acting contrary to statute and regulation, Fire-Trol has established a likelihood of success on the merits which is sufficient to support the issuance of the requested preliminary injunction.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

### A. Fire-Trol Is Likely To Succeed In Establishing That The USFS Failed To Comply With The Competition In Contracting Act In Excluding Retardants Containing YP Soda And In Requiring Retardants Containing Gum Thickener

CICA exists to promote competition in public contracting. *See 60 Key Centre, supra,* 47 F.3d at 59. Except under limited exceptions not applicable herein, in procuring a contract for goods, a federal agency has a duty to obtain "full and open competition" using competitive procedures. *See* 41 U.S.C. §§ 253, 253a. Consistent with the statutory requirement for full and open competition, the Federal Standardization Manual ("FSM")[4], mandates that "[p]rior to inclusion of a requirement for qualification in a specification, the preparing activity will determine [that] . . . **[a]t least two or more sources** are available and willing to submit their products for qualification, except under unusual circumstances." Exhibit U (FSM, Ch. 6, Pt.1, ¶ 5 (2000) (emphasis added). Before qualification is established, the government also must have "a reasonable expectation that the product will be available in sufficient quantities **from several sources** to meet government requirements." *Id.*, ¶ 6(a) (emphasis added). If there is only one responsible source of a product, an agency may only award a contract using non-competitive procedures if "no other type of property . . . will satisfy the needs of the executive agency." 41 U.S.C. § 253(c)(1).

The USFS' rule excluding wildland fire retardants containing YP Soda violates the above legal principles. The rule limits the possible suppliers to one manufacturer, entirely eliminating competition rather than promoting it. *See* Exhibits A and H; *see also* Exhibit J (stating the USFS' desire in 2002 to have at least two companies in the retardant business). Stated another way, the USFS' rule prevents "[a]t least two or more sources [from being] available." With only one available source, the USFS can have no reasonable expectation that wildland fire retardant "will be available **in sufficient**

---

[4] Instructions concerning qualification of products are found in the FSM. FAR § 9.203(b) and (c).

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

**quantities from several sources**" to meet government needs.[5] Exhibit U at ¶ 6(a) (emphasis added). Finally, because wildland fire retardants containing YP Soda successfully have been used for decades, the USFS cannot establish that "no other type of property . . . will satisfy the needs of the [USFS]." Because excluding fire retardants containing YP Soda restricts, rather than promotes, full and open competition in contravention of the above statutes and regulations, Fire-Trol is likely to succeed in establishing a violation of the Competition in Contracting Act.

Similarly, the USFS cannot establish that no other type of property other than retardants containing gum thickener will satisfy the needs of the USFS. 41 U.S.C. § 253(c)(1). The USFS has stated that it needs fire retardants with sufficient viscosity to be dropped from higher altitudes and to allow sufficient retardant to reach the target to be effective. Exhibits J and M. Fire-Trol's non-gum-thickened retardants have been effectively used for 30 years, being dropped from altitudes deemed safe by the USFS. Grigel Decl. at ¶¶ 4-5, 16; Declaration of Terry Kennedy ("Kennedy Decl."), filed herewith, at ¶¶ 11, 16. In December 2000, the USFS was sent a letter indicating consensus among professional pilots and air attacks that Fire-Trol's "liquid concentrate is the preferred product of choice due to the fact that it is generally more effective in stopping the advancement of fires than the gum thicken [sic] products." Exhibit AF. Further, the USFS has no data demonstrating that the optimal altitude from which to drop Fire-Trol's non-gum-thickened retardants is any different from, or lower than, the optimal altitude from which a 100 centipoise, gum-thickened retardant would be dropped. Grigel Decl. at ¶ 16; Kennedy Decl. at ¶ 10. Thus, Fire-Trol's non-gum-thickened retardants meet the stated needs of the USFS. Because the USFS rule requiring gum thickener does

---

5 If the USFS were to institute its restriction on retardants containing YP Soda, putting Fire-Trol out of business, Astaris would have to have the capacity to supply not only the United States' entire demand for wildland fire retardant, but also the demand of every other current State and international customer (*e.g.,* Canada) of Fire-Trol's. Fire-Trol is unaware of any inquiry by the USFS to determine whether Astaris has sufficient capacity to meet that demand. Grigel Decl. at ¶ 41.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

not promote full and open competition for fire retardants, contrary to the purposes of CICA, Fire-Trol is likely to succeed in establishing a violation of that Act.

**B. Fire-Trol Is Likely To Succeed In Establishing That The USFS Is Violating The Statute And Regulations Governing Qualification Requirements In Attempting To Exclude Fire-Trol's Retardants From The Qualified Products List For Wildland Fire Retardants**

An agency must comply with statutory and regulatory procedures before employing "qualification requirements" – requirements for testing or quality assurance that must be completed before award of a contract – in a solicitation. *See* 41 U.S.C. § 253c; FAR (48 C.F.R.), Part 9, subpart 2. The USFS has established qualification requirements for wildland fire retardants in Specification 5100-304b. *See* Exhibit B. Fire-Trol's wildland fire retardants, all of which contain YP Soda and some of which do not contain gum thickener, are listed on the USFS' QPL pursuant to those qualification requirements. Exhibit A; Grigel Decl. at ¶¶ 3-5; Crouch Decl. at ¶¶ 8-10. In order to exclude Fire-Trol's qualified wildland fire retardants, the USFS must demonstrate 1) that a new specification has been established, 2) that the existing Specification has been modified, or 3) that Fire-Trol's retardants lawfully have been removed from the existing QPL for failing to meet the Specification.

**1. The USFS has not lawfully adopted a new or modified specification for wildland fire retardants**

When adopting or modifying a specification, the FAR requires that an agency, "where possible, give sufficient time to arrange for qualification before award." FAR § 9.205(a). In 2002, the USFS committed to "make such changes after the Forest Service has complied with applicable portions of the [FAR], including Part 9 of the FAR." Exhibit L. Because the USFS announced its rules banning YP Soda and requiring gum thickener in wildland fire retardants in 2000, the USFS had sufficient time to amend the Specification, or adopt a new specification, prior to the 2005 procurement. Notwithstanding acknowledging regulatory requirements, the USFS has inexplicably

failed to amend the Specification or adopt a new specification with sufficient time to allow bidders to arrange for qualification before award. If the USFS is seeking to exclude Fire-Trol's qualified retardants by claiming that they do not meet a new or modified Specification, Fire-Trol has shown a likelihood of success in establishing that USFS action violates the FAR.

In addition to complying with FAR requirements for adopting or amending a qualification requirement (specification), the USFS must comply with the APA. *See* 36 Fed. Reg. 13804 (Department of Agriculture election to be bound by the APA "when formulating rules relating to public property . . . or contracts as a matter of policy"). The APA requires that agencies adopting "rules" comply with specified public notice and comment procedures. 5 U.S.C. § 551(4) (defining "rule" as ". . . an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . ."); 5 U.S.C. § 553 (requiring notice of rulemaking published in the Federal Register and an opportunity for the public to comment). The USFS has not complied with notice and comment requirements of the APA for adopting a new or modified Specification. Crouch Decl. at ¶¶ 20-22. Accordingly, if the USFS is seeking to exclude Fire-Trol's qualified retardants by claiming that they do not meet a new or modified Specification, Fire-Trol has shown a likelihood of success in establishing that USFS action violates the APA.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

**2. The USFS has not lawfully removed Fire-Trol's retardants from the existing Specification for wildland fire retardants**

Similarly, the USFS cannot establish that it is properly removing Fire-Trol's products from the existing Specification under the requirements of the FAR. The USFS has not "promptly notif[ied]" Fire-Trol that its retardant is being removed from the QPL, including stating "specific information why the product or source no longer meets the qualification requirement," as required by the FAR. Grigel Decl. at ¶ 42; Crouch Decl. at ¶ 32; FAR § 9.207. In fact, the USFS cannot identify any way in which Fire-Trol's

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

products do not meet the Specification, and cannot identify grounds for removing Fire-Trol's retardants from the QPL. *See* FAR § 9.207. Because Fire-Trol's retardants remain properly listed on the USFS' QPL under the current Specification, Fire-Trol has established a likelihood of success on the merits of its position that the USFS cannot lawfully exclude Fire-Trol's retardants from any solicitation employing the wildland fire retardant Specification and QPL.

**IV. THE USFS RULES CONSTITUTE AN ABUSE OF DISCRETION BECAUSE THEY ARE UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

**A. The Ban On YP Soda Is Unsupported By Substantial Evidence**

The USFS decided to ban retardants containing YP Soda, without data supporting its conclusion that, when used in the field, retardants containing YP Soda pose a greater hazard to aquatic species than retardants without YP Soda. The preliminary USGS 2000 Study, on which the USFS relied, only recommended that field studies be conducted to consider the persistence of toxicity, the possibility of biological injury, and observed fish avoidance of retardant. Exhibit V. ***The USFS acknowledged that such field tests were necessary***, and committed that those field tests would include actual data collected from the 1999 and 2000 fire seasons. Exhibits C (at pp. 27, 29, 35), F (at p. 44), G, and H. The USFS had sufficient time to conduct the necessary studies in the more than four years since it acknowledged that such studies were necessary. Without conducting those studies, the USFS abused its discretion by announcing a rule banning retardants containing YP Soda a little more than a month after admitting that additional studies were necessary. Exhibit I.

The USGS 2000 Study is the **only** support the USFS has identified for its ban on YP Soda. The timing of the ban – just two months after the USGS 2000 Study was finalized – supports the conclusion that that preliminary study is the only factual support for the ban. As the study itself reflects, and as the USFS acknowledged, additional research was necessary to determine whether the preliminary, laboratory conclusions reached by the USGS 2000 Study are applicable and relevant when retardant containing

YP Soda is used in the field. Reliance on that preliminary study, without conducting the necessary follow-up studies and a risk assessment, can only be found to be an abuse of the USFS' discretion.

The subsequent USGS studies that were reported in 2002 were not the field studies the USFS stated it would perform, in that they did not evaluate actual use of wildland fire retardant. As one report noted: "Without information on toxicity in natural settings it is difficult to determine the ecological hazards and probability of injury resulting from exposure following field application of fire-retardant chemicals." Exhibit W at p. 159. Contrary to the USFS commitment, the 2002 reports did not use information collected from the 1999 and 2000 fire seasons. *See, e.g.,* Exhibit W at p. 15 ("Information about environmental concentrations of fire-retardant chemicals is mainly limited to recommended application rates"). In particular, the USFS did not use information on runoff or weathering obtained from the 1999 and 2000 fire seasons.[6] Exhibit Y at pp. 204-06 (environmental persistence report was based on weathering retardant in polypropylene buckets, rather than using actual field data).

In fact, the 2002 studies note numerous mitigating factors, which should be considered in a risk assessment, and support the conclusion that the risks from YP Soda, if any, are *de minimis*. The 2002 studies did not evaluate how other factors in a wildland fire, such as heat and ash, affected any potential risk from YP Soda. Exhibit Z at p. 224 (identifying ash and heat as effects of fire that "could cause a number of disruptions in aquatic habitats"); Exhibit Y at p. 214 (stating that the "overall contribution of fire-retardant chemicals to the hazards posed by wildland fires **may be inconsequential** in view of [the effects of ash and heat on the aquatic environment]") (emphasis added); *see also* Exhibit AA at pp. 232 (stating that "low concentrations of ash readily clog gill surfaces leading to respiratory failure") and 228, 231 (burning retardant eliminates its

---

[6] For example, a recent study of four large fires found that, contrary to USGS assumptions, wildland fire retardant run-off did not significantly contribute to ammonia or cyanide present in streams following fires. Both ammonia and cyanide are chemicals which occur naturally in burned areas, and are often present even in areas in which no wildland fire retardant was used. *See* Exhibit X at p. 172 and authorities cited therein.



LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

toxicity); Exhibit AB at p. 247 (concluding that: "In the case of GTS-R [Fire-Trol retardant], additional information on the potential destruction of sodium ferrocyanide by fire or, alternatively, the potential for the pyrogenic generation of cyanide compounds is needed."[7]).) Further, one report concludes that fish avoid retardant in the water, to the extent possible. Exhibit Z at pp. 225-26. Even if the fish cannot completely avoid the retardant, another report concludes that surviving fish recover rapidly once the exposure to retardant chemicals is stopped. Exhibit W at p. 167. The report admitted that actual duration of exposure "may be much shorter" than that used in the study, and "probably not sufficient to cause harm." *Id.*

When the USFS adopted its rule banning YP Soda in fire retardants, it abused its discretion in relying on the USGS 2000 Study, which was preliminary and recommended further study and validation. The subsequent studies, although not the necessary field studies or risk assessments, support Fire-Trol's position that its wildland fire retardants do not pose any materially greater risk than retardants without YP Soda, or fighting wildland fires without the use of fire retardants. In fact, as the USFS has acknowledged, **all** retardants pose a risk to fish because of the substantial amount of ammonia present in all retardants. *See* Exhibits C at p. 28, F at pp. 41-42, 44. Further, the USFS knows that there are very few instances of either manufacturer's wildland fire retardant being dropped into surface waters, and even fewer instances of fish kills. Exhibit T at pp. 106 (¶¶ 29, 30), 109-110 (¶¶ 38-41), and 116. Because the risk from ammonia is adequately mitigated by not dropping retardant within 300 feet of waterways (*see* Exhibit S at p. 84), that guideline should also adequately mitigate against any risk from the minimal amount of YP Soda in retardants. Because the USFS lacks a rational basis for concluding that wildland fire retardants containing YP Soda pose a materially greater risk than those without YP Soda, any attempt to ban Fire-Trol's retardants for containing YP Soda is an abuse of discretion.

[7] Wildland fires result in naturally-occurring cyanide, the impact of which the 2002 studies did not consider. Crouch Decl. at ¶ 34.

### B. The Gum Thickener Requirement Is Unsupported By Substantial Evidence

In adopting its rule requiring gum thickener in retardants, the USFS failed to consider the behavior of gum-thickened retardants in actual fire fighting conditions, such as the increased risk from gum-thickened retardants that the three-dimensional "fuel load" (trees, bushes, grass, etc.) will not be adequately coated to control the fire. *See* Kennedy Decl. at ¶¶ 13-15. The USFS also failed to consider that raising the drop height of retardant decreases its accuracy, increasing the risk of gaps in the fire line, which can make the retardant line potentially ineffective. *Id.* at ¶ 12. Finally, because gum thickener can be broken down by bacteria, reduced by water temperature, or affected by bulk manufacturing and mixing techniques, the USFS can not rationally conclude that its rule requiring gum thickener will lead to enhanced field performance. *See* Exhibit AC (testimony of Cecilia Johnson at 368:5-16, 373:13-375:20.) Thus, the USFS abused its discretion in adopting a rule requiring gum thickener.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

## CONCLUSION

Fire-Trol has established a likelihood that it will suffer irreparable injury, both through likely destruction of its business and through being denied the opportunity to compete on a government contract. Because an injunction would maintain the *statuts quo*, permitting the United States to purchase retardants that it has been purchasing for 30 or more years, the United States has not established that it would suffer harm from the issuance of an injunction. Accordingly, the balance of harms favors issuance of the injunction. Because the public is likely to be harmed by creation of a monopoly supplier, the public interest also favors issuing a preliminary injunction. Fire-Trol also has established a likelihood of success on the merits of its claims that the United States has failed, in one or more respects, to comply with the statutory and regulatory requirements of the APA, FAR, and/or CICA for adopting a rule or qualification requirement preventing the use of YP Soda in wildland fire retardants or requiring gum thickener in wildland fire retardants.

For the reasons stated above, Fire-Trol has established that a preliminary injunction should issue to preserve the *status quo* pending a final ruling on the merits of the dispute. Specifically, Fire-Trol requests that this Court enjoin the USFS, pending the resolution of this action, from 1) conducting any procurement of wildland fire retardants under qualification requirements other than those set forth in Specification 5100-304b, 2) excluding from any procurement any wildland fire retardant on the ground that it contains YP Soda, 3) excluding from any procurement any wildland fire retardant on the ground that it does not contain gum thickener or on the ground that it does not demonstrate any minimum viscosity standard, 4) removing from the QPL any wildland fire retardant on the ground that it contains YP Soda, and 5) removing from the QPL any wildland fire retardant on the ground that it does not contain gum thickener or on the ground that it does not demonstrate any minimum viscosity standard.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

DATED: September 3, 2004

LAW OFFICES OF PAUL F. DAUER
Paul F. Dauer, Attorney of Record

By: s/Paul F. Dauer
PAUL F. DAUER
Attorney for Plaintiff Fire-Trol Holdings, LLC

Telephone: (916) 448-2431
Facsimile: (916) 448-2462

## TABLE OF CONTENTS

Page


INTRODUCTION .......... 1

QUESTIONS PRESENTED .......... 2

STATEMENT OF FACTS .......... 2

I. BACKGROUND .......... 2

II. THE USFS ADOPTED RULES BANNING YP SODA AND REQUIRING GUM THICKENER WITHOUT COMPLYING WITH THE APA .......... 3

A. Rule Banning Retardants Containing YP Soda .......... 4

B. Rule Requiring Gum Thickener In Retardants .......... 4

III. THE USFS' IMPROPER MODIFICATION OF THE SPECIFICATION TO IMPLEMENT ITS RULES .......... 5

ARGUMENT .......... 6

I. THIS COURT HAS JURISDICTION TO HEAR THIS MATTER .......... 7

II. FIRE-TROL CAN ESTABLISH BOTH IRREPARABLE INJURY AND THAT THE BALANCE OF HARMS TIPS IN FIRE-TROL'S FAVOR .......... 8

A. Fire-Trol Will Be Irreparably Injured Absent A Preliminary Injunction .......... 8

B. The USFS Will Not Be Harmed Because Issuance Of A Preliminary Injunction Will Maintain The Status Quo, Allowing It To Continue To Purchase The Fire Retardants It Has Purchased For Decades .......... 11

C. The Balance Of Harms Favors Issuing a Preliminary Injunction .......... 12

D. The Public Interest Favors Granting a Preliminary Injunction to Maintain the Status Quo Pending a Hearing on the Merits of the Action .......... 12

III. FIRE-TROL IS LIKELY TO SUCCEED IN ESTABLISHING THAT THE USFS FAILED TO COMPLY WITH STATUTORY AND REGULATORY REQUIREMENTS IN ADOPTING ITS RULES .......... 14

A. Fire-Trol Is Likely To Succeed In Establishing That The USFS Failed To Comply With The Competition In Contracting Act In Excluding Retardants Containing YP Soda And In Requiring Retardants Containing Gum Thickener .......... 15

B. Fire-Trol Is Likely To Succeed In Establishing That The USFS Is Violating The Statute And Regulations Governing Qualification Requirements In Attempting To Exclude Fire-Trol's Retardants From The Qualified Products List For Wildland Fire Retardants .......... 17

1. The USFS has not lawfully adopted a new or modified specification for wildland fire retardants .......... 17

2. The USFS has not lawfully removed Fire-Trol's retardants from the existing Specification for wildland fire retardants .......... 18

IV. THE USFS RULES CONSTITUTE AN ABUSE OF DISCRETION BECAUSE THEY ARE UNSUPPORTED BY SUBSTANTIAL EVIDENCE .......... 19

## TABLE OF CONTENTS
(continued)

**Page**

A. The Ban On YP Soda Is Unsupported By Substantial Evidence ................ 19
B. The Gum Thickener Requirement Is Unsupported By Substantial Evidence ................ 22
CONCLUSION ................ 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*60 Key Centre v. Administrator of Gen. Servs. Admin.*, 47 F.3d 55 (2d Cir., 1995) ..... 13, 15
*AFGE, Local 2119 v.* Rumsfeld, 262 F.3d 649 (7th Cir., 2001) ..... 13
*Alaska Central Express, Inc. v. United States*, 51 Fed. Cl. 227 (Fed. Cl. 2001) ..... 10
*ATA Defense Indus. v. United States*, 38 Fed. Cl. 489 (Ct. Cl., 1997) ..... 13
*CCL, Inc. v. United States*, 39 Fed. Cl. 780 (Fed. Cl. 1997) ..... 8
*City of S. Pasadena v. Slater*, 56 F.Supp. 2d 1106 (C.D. Cal. 1999) ..... 13
*Cordis Corp. v. Medtronic, Inc.,* 835 F.2d 859 (Fed. Cir., 1987) ..... 7
*CW Gov't Travel, Inc. v. United States,* 2004 U.S. Claims LEXIS 193 ..... 8, 13
*FMC Corp. v. United States,* 3 F.3d 424 (Fed. Cr. 1993) ..... 7
*Labat-Anderson Inc. v. United States,* 50 Fed. Cl. 99 (Fed. Cl., 2001) ..... 7
*Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728 (Fed. Cl., 2000) ..... 10
*PGBA, L.L.C. v. United States,* 57 Fed. Cl. 655 (Fed. Cl., 2003) ..... 7
*Poeng v. United States*, 167 F. Supp. 2d 1136 (S.D. Cal., 2001) ..... 10
*Privitera v. California Bd. of Medical Quality Assurance*, 926 F.2d 890 (9th Cir., 1991) ..... 11
*RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286 (Fed. Cir. 1999) ..... 7
*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir., 1991) ..... 10
*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.,* 749 F. 2d 124 (2d Cir. 1984) ..... 10
*Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511 (Fed. Cir., 1990) ..... 10
*UARCO Inc. v. Lam*, 18 F. Supp. 2d 1116 (D. Haw., 1998) ..... 10
*Wetsel-Oviatt Lumber Co. v. United States,* 43 Fed. Cl. 748 (Fed. Cl. 1999) ..... 10, 13

## Statutes

28 United States Code section 1491(b) ..... 7
28 United States Code section 1500 ..... 8
36 Federal Register 13804 ..... 18
41 United States Code section 253 ..... 15
41 United States Code section 253(c)(1) ..... 15, 16
41 United States Code section 253a ..... 15
41 United States Code section 253c ..... 17

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

5 United States Code section 551(4) .......... 18
Federal Acquisition Regulation Part 9 .......... 5, 6, 15, 17, 18, 19
Federal Rules of Appellate Procedure, Rule 4 .......... 8

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814