EXHIBIT "C"

# INTERAGENCY FIRE AND AVIATION MANAGEMENT COMMUNICATION STRATEGY

CONCERNING THE STOP WORK ORDER TO
FIRE-TROL HOLDINGS, LLC

APRIL 20, 2000 @ 0900 HRS

COMMUNICATION STRATEGY: APRIL 20, 2000 @ 0900 HRS.

**GOALS OF THE STRATEGY:**

1. To inform the public and employees why we are issuing a "resume work" order to FIRE-TROL Holdings, LLC after the "stop work" order of March 28, 2000.
    2. Rationale for original "stop work" order.
    3. Information gained over the previous two weeks from OGC Attorneys, Environmental Engineers, and conversations with EPA.
    4. Impacts on the health and safety of the public.
    5. Respond to their concerns for the environmental impacts.
6. To assure employees that their personal health and safety is not at risk.

**KEY MESSAGES:**

**WHY THE DECISION WAS MADE?**

**The use of these retardant products was suspended to investigate:**

- Concerns for impacts to health and safety of employees, publics and the environment;
- Concern about wildland fire agencies exceeding EPA guidelines and rules; and
- Concerns for the social/political issues associated with public perceptions on dropping a product with sodium ferrocyanide on Federal lands.

**NEW INFORMATION ACQUIRED OVER THE LAST TWO WEEKS:**

- EPA does NOT have standards or regulations governing non-point source applications of this chemical;
- Sodium ferrocyanide is a component in a variety of products used (common) in daily life, such as: road de-icing salts, used in the pumping mechanisms of a variety of machines used in winter periods;
- The information in the report was derived in a laboratory setting and a key recommendation of the report was to analyze the products in the natural environment;
- Based on earlier risk assessments completed by LaBat-Anderson Laboratories, there is minimal risk to the public and employees.

**PROPOSED ACTIONS:**

- Immediately lift the suspension and issue an Order to Proceed;
- Direct the field in our policy reinforcing that we do NOT drop in waterways (stream-courses or lakes); provide additional guidelines for aerial retardant application which will include a 300 ft buffer zone for waterways.
- Provide information sources to employees and the public regarding health risks - utilize risk assessments which have already been completed;
- Contract for an analysis to determine if there are residual impacts on the environment from aerial application of retardant during the 1999 fire season;
- Contract for a follow-up field study to evaluate the results discovered in the laboratory.

**TALKING POINTS:**

1. On April 20, 2000, the suspension on the use of certain long-term retardant products was lifted by the federal wildland fire management agencies. The "stop work" order was put in place on March 28, 2000.

2. The agencies took this suspension action as a result of a recently completed report on the effects of these retardants on the aquatic environment.

3. The substance of concern was sodium ferrocyanide which is the compound used as a corrosion inhibitor that is needed to protect aircraft from structural damage. This stable compound, when in water and sunlight can produce simple cyanide.

4. A recent USGS report entitled: "The Effects of UVB Radiation in the Toxicity of Fire-fighting Chemicals", revealed the effect of cyanide is greater in the aquatic environment than we had previously understood when the retardant is exposed to sunlight.

5. Our risk assessments and long history of use indicate that there are no serious effects on firefighters and the public.

6. All federal agencies will maintain their long-standing policy not to drop any retardant in or near rivers, lakes and streams. This policy will be strengthened with the adoption of additional guidelines for aerial retardant application.

**BACKGROUND:**

A national Stop Work Order was issued to FIRE-TROL Holdings, L.L.C. on March 28, 2000 upon the review of the USGS Columbia Environmental Research Center's report titled *The Effects of UVB Radiation On the Toxicity of Fire-Fighting Chemicals*. The stop work order affected 46 of the 75 interagency aerial retardant firefighting bases.

The USDA Forest Service Wildland Fire Chemicals Systems Laboratory in Missoula Montana commissioned the report. FIRE-TROL Holdings, LLC is the world's largest producer of fire retardant chemicals. The report indicates that fire retardant containing sodium Ferrocyanide accidentally dropped into aquatic environments and exposed to sunlight could have an impact on fish mortality. Sodium Ferrocyanide in this application does not pose a health hazard to humans. The Stop Work Order was issued to allow time for further study and to determine the level of impact sodium ferrocyanide has on the environment when compared to other non-sodium Ferrocyanide containing fire retardants. The order was coordinated with our wildland fire fighting cooperators (including the states) at the National Interagency Fire Center.

Fire retardant is manufactured from fertilizer, which is highly corrosive without an inhibiting agent in the formulation. FIRE-TROL is the only product line that uses sodium Ferrocyanide as a corrosion inhibitor to protect their retardant tanks and aircraft flight surfaces. Sodium Ferrocyanide is also used in food products including common table salt, and in the salt used on roads, parking lots and sidewalks in winter. Additionally, it is used in development of blue/black pigments for ink, arc welding rods, and in the manufacture of fruit acids such as tartaric and citric acids.

During the past thirty years there have been numerous independent and agency studies of the effectiveness, health and safety, and the environmental impact of these long term fire retardant products. Ten years ago, these studies were reviewed by the Environmental Protection Agency. They published their ruling under 40 CFR Ch. 1 (122.27 – 122.3) which included the exemption of selected silvicultural activities including, fire control, nursery operations, prescribed fire, construction and reforestation. The regulation is based on the knowledge that all fire retardants and foams, not just those containing sodium ferrocyanide, if not applied in a manner to avoid aquatic areas, can be harmful to the aquatic environment. The EPA has deemed the use as a Cataclysmic Release, which is viewed as a balance to prevent the greater destruction of the wildland by fire (silting, suspended solids and pH changes) than the possible loss of fish from an inadvertent retardant drop into a waterway. 40 CFR Ch. 1 (122.27 – 122.3) was reviewed by the Office of the General Counsel which concurred that fire retardants and foams are neither subject to Point Source Regulations nor the NPDES (National Pollution Discharge Elimination System) procedures under the Clean Water Act.

An agency review of literature, manuals and interagency guides indicated the scientific studies have always stated that direct application of fire retardant to waterways should be avoided. This information is contained within the Air Tactical Group Supervisor's Interagency guide and needs to be added to the Fireline Handbook and the FSH. The policy is incorporated in the Aerial Retardant Application and Use course offered at National Advanced Resource Technology Center (NARTC), as well as being discussed during our annual training sessions for aerial delivery of retardants.

The decision-making process to issue the stop work order on March 28, 2000 was supported on the indication in the report that the sodium ferrocyanide exceeded EPA standards during its prescribed use. Based on new information gathered in the last three weeks, this is not correct. The report also indicated that retardants containing sodium ferrocyanide kill fish at a higher rate than previously suspected. This laboratory test was performed in a closed tank under artificial UV light and does not represent true field conditions. An in-depth regime of field-testing, as recommended in the report, will be performed. The final decision factor was the sociological implications and public perception of the use of sodium Ferrocyanide in the environment. We are seeking a balance between threats to life and property and the use of chemicals.

The health and safety of our employees is paramount and has been a key consideration in the decisions regarding these retardants. The retardant is not harmful to the public.

COMMUNICATION STRATEGY:



**PRESS RELEASE:**

****** PRESS RELEASE 4/20/00 ******

# AGENCIES LIFT SUSPENSION OF RETARDANT PRODUCTS

Federal wildland fire management agencies today lifted the suspension of the use of specific mixtures of retardant products used to control wildland fires.

Over the last two weeks, the agencies conducted an in-depth evaluation of the preliminary results contained in the U S Geological Survey report which prompted the suspension March 28.

Consultation with the Environmental Protection Agency determined that the corrosion inhibitor (sodium ferrocyanide) is commonly used in many everyday products used by the public.

One of the key recommendations in the report is to undertake a field review of the effects of the retardant. The report was completed in a laboratory setting and it may not accurately reflect what actually occurs in the natural environment.

The Federal agencies will undertake the following actions to insure that any risk to aquatic environments will be minimized. These include:

? Immediate direction reinforcing the policy for no aerial application in or near stream courses or lakes.
? Contracting for an analysis to determine if there are any residual impacts on the environment from the retardant products that were dropped in the 1999 fire season.
? Contracting for a follow-up study to ascertain if the impacts identified in the report are replicated in the natural environment.

Studies evaluating the quantitative risk to human health as a result of exposure to fire retarding chemicals, approved for use in fire suppression activities, were completed by LABAT-ANDERSON Laboratories. The 1994 and 1996 reports show there are minimal risks to wildland firefighters and the public

The federal and state fire fighting agencies have moved forward to resolve this matter expeditiously. "Our number one concern is for the health and safety of people and the environment. We will work as quickly as possible to assess the long-term effects of this agent, and then take appropriate action," said Jose Cruz, Director of Fire and Aviation Management for the USDA Forest Service.

Further information can be obtained by calling USDA-FS, National Interagency Fire Center, Dennis Pendleton at (208) 387-5605; Public Affairs Officer Mike Apicello at (208) 387-5460; Jack Sept, USDI-BLM, NIFC, Public Affairs Officer at (208) 387-5458; or Alice Forbes, Branch Chief, Equipment and Chemicals at (530) 226-2727.

**AUDIENCES:**

Internal: Senior Leadership
Employees and their organized representative groups (unions).
FAM web sites

External: Office of Communication (USDA/USDI)
Secretary's Office (USDA/USDI)
Other federal agencies (CEQ, FWS, NMFS)
Publics through the media – (interagency press release through NIFC)
Air Tanker Industry (Bill Broadwell)
State Partners
Tribal Governments
National Association of State Foresters

# Questions and Answers

1. Several years prior to a 1997 study, it was discovered that when dropped in water and then exposed to UV light, some retardants release free cyanide much faster and in much larger quantities than originally believed. Why was no action taken to stop the use of the products at that time?

Answer:

By the mid 1990's, we became concerned about the evidence of trace amounts of cyanide in some retardants. The wildland firefighting agencies knew that some retardant products produce cyanide when exposed to sunlight. A two-year study was commissioned to examine the specific compounds in retardants currently under contract. On March 15, 2000 the study was completed. It was first believed that we were in violation of Environmental Protection Agency standards/guidelines for aquatic environments. The study revealed higher than previously understood concentrations of cyanides in some retardants. On March 28, 2000 the agencies stopped all use of the affected retardants. This step was undertaken to allow the agencies to evaluate whether it was prudent to continue the use of these products.

(The study is dated March 15, 2000. The study was received on March 21, 2000.)

2. Why is cyanide in the retardant and what do we know about it?

Answer:

It is not free cyanide, it is sodium ferrocyanide which is a stable compound with many every day uses. Sodium ferrocyanide (YP soda) is added to certain types of retardant to inhibit corrosion in the aircraft that deliver the product to control wildland fires. Without incorporation of corrosion inhibitors to retardants, significant structural damage will occur to vital parts of the aircraft (e.g. control surfaces). This potential for damage to aircraft would result in the aircraft being unavailable for fire fighting.

There are two different forms of cyanide: simple and complex. Simple cyanide, such as hydrogen cyanide is highly toxic. Complex cyanide is very stable because it is bonded to a metal. Sodium ferrocyanide is a complex cyanide which has many daily uses, such as an anti-caking additive in table salt.

COMMUNICATION STRATEGY:



3. What is retardant?

Answer:

The retardant is a red liquid dispensed from fire fighting aircraft. It contains approximately 85% water, 10% common fertilizer, and 5% minor ingredients (color, thickener, corrosion inhibitors, and stabilizers).

4. Why do we use redardants?

Answer:

Retardants are more effective at controlling wildfire than water alone. The key elements of retardants are their ability to coat vegetation and maintain their effectiveness after water has evaporated. National policy is that we will use retardants to minimize losses from wildfires.

5. What impact can cyanide have on our rivers, lakes, and streams?

Answer:

This study identified that photo-affected cyanide in some retardants, when unintentionally released into water at certain concentrations is toxic to fish and other aquatic life. It has been and is our policy, and is reinforced in our training, that we do not drop retardant in or near water. This policy is restated in instructions given to fire suppression personnel (ground and aerial) on fires.

6. What are the impacts of this product?

Answer:

These products are used to control wildfires burning in key habitats for T&E species, and in protecting lives and communities.

Fire managers responsible for requesting retardant use balance the impacts on the environment with the resources and values to be protected from the fire.

7. What is the persistence of the material once it has been applied for the control of wildland fire?

Answer:

We have no knowledge of the persistence of these retardants in the environment. When the retardant is properly applied, we have no history of these retardants causing a loss of fish or other aquatic life. This year we will test specifically to determine see if cyanide persists in soil where these retardants were dropped during the 1999-fire season.

8. How many acres of land have been treated with these fire retardant?

Answer:

Fires burn over three million acres a year on federally administered lands. We have used retardant throughout the United States in the control of these fires. We have estimated the average number of acres on which FIRE-TROL products were used for the years 1985-1999 as 40,000 acres per year.

9. What are the health impacts on firefighters working in treated areas, either during fires or in cleanup operations?

Answer:

The agencies have completed a human health risk assessment for all retardants. The use history of these chemicals reveals no cases of systemic toxicity. Safety precautions are addressed in the Material Safety Data Sheets (MSDS) follow OSHA Guidelines and are available to all fire fighting personnel.

Retardants reduce the spread of wildfire and exposure of firefighters to hazardous fire situations.

10. Why are we now learning of this danger? Should it have been discovered during testing?

Answer:

By the mid 1990's, we became concerned about the trace amounts of cyanide in some retardants. Studies were initiated by federal fire agencies to determine the effects on aquatic species and they resulted in this March 2000 report. Although previous studies showed the trace amounts of cyanide in some retardants, this was the first report to show the cyanide concentration in some retardants exceed EPA limits for cyanide in the aquatic environment.

11. What level of cyanide is considered dangerous to humans?

Answer:

The limit for cyanide in drinking water is 200 parts per billion (ppb).

The water quality limit for cyanide in any discharge into a lake or stream is 5.2 ppb (parts per billion). This limit is set to protect fish and other organisms that live in water.

12. How long have these products been in use?

Answer:

These or similar products have been used since the mid 1970s.

13. How many bases are in the federal system?

Answer:

The federal and state agencies maintain approximately 80 airtanker bases for large aircraft (does not include single engine airtanker bases). Of these over 40 bases are affected by this decision.

COMMUNICATION STRATEGY:



**KEY CONTACTS:**

Key States:

North Carolina: Stan Adams (919) 733-2162
Florida: Earl Peterson (850) 488-4274
California: Andrea Tuttle (916) 653-7772
Texas: Jim Hull (409) 845-2601
Minnesota: Jerry Rose (612) 298-4484
Alaska: Jeff Jahnke (907) 465-3379
NASF: Bill Imbergamo, Executive Director (202) 624-5415
OGC: Alan Groesbeck, Tom Fox, Kathryn Toffenetti
IOS: Kim Fondren,

**SCHEDULE OF EVENTS:**

| | |
|---|---|
| April 14, 2000: | Attorneys from USDI and USDA meet to determine how to proceed with the recommended course of action. |
| April 18,2000: | Develop the Talking Points and Q&As to be included in the field package. |
| April 20, 2000: | Issue "Start Work" order to FIRE-TROL Holdings, LLC. |
| April 20, 2000: | Issue the Interagency press release from NIFC outlining our actions. |
| April 20, 2000: | Information package to all Regional Fire Directors, Communications/Public Affairs Personnel, and agency line officers. |

EXHIBIT "D"

...ARTMENT OF AGRICULTURE
Forest Service

# NOTICE TO PROCEED, SUSPEND, OR RESUME WORK ORDER

(Reference FSH 6309.31)

CONTRACT NUMBER: 54-024B-8-1067

UNIT:

PROJECT: Long Term Fire Retardant (Bulk)

NAME AND ADDRESS OF CONTRACTOR:
Fire Trol Holdings L.L.C.
2620 North 37th Drive
Phoenix, Az 85009

ORDER NUMBER: 1

DATE ISSUED: 3/28/00

THIS IS YOUR NOTICE TO PROCEED, SUSPEND, OR RESUME WORK ON THE CONTRACT AS NOTED.

☐ NOTICE TO PROCEED

This is your notice to proceed with the work on the above contract for the following items:

The time on this contract will start at the beginning of business on

☒ SUSPENSION OF WORK

You are to suspend work for the following reason(s): As per our telephone [illegible] all work is suspended as of 3/28/00 for all Bulk bases. By no later than April 7 submit your proposed plan under this contract.

Effective close of business ______ Item Numbers ______

...Suspension ☒ Total ☐ Partial

☐ No charge will be made against contract time for period of suspension.

☐ Full count of contract time will continue.

☐ An equitable adjustment of contract time will be made for period of partial suspension upon resumption of work.

DO NOT RESUME WORK UNTIL YOU ARE NOTIFIED TO DO SO IN WRITING

☐ RESUMPTION OF WORK

...em Numbers ______ Effective Beginning of Business ______

...me charged during period of partial suspension ______ calendar days

| ...GNATURE | TITLE | DATE |
|---|---|---|
| Frank Jones | Contracting Officer | 3/28/00 |

...LEASE ACKNOWLEDGE RECEIPT BY RETURNING ______ COPY(S) TO USDA, FOREST SERVICE

| ...GNATURE | TITLE | DATE |
|---|---|---|
| | | |

INSTRUCTIONS:

If mailed to Contractor, send original by Certified Mail - Return Receipt Requested.

If delivered in person, have Contractor sign the acknowledgement and retain the original.

FS-6300-1(3-80)

EXHIBIT "E"

S. DEPARTMENT OF AGRICULTURE
Forest Service

NOTICE TO PROCEED
SUSPEND AND RESUME
WORK ORDER
(Reference FSH 6309.31)

CONTRACT NUMBER
53-8490-6-017

UNIT
Wasatch-Cache National Forest

PROJECT
Full-Service Retardant

NAME AND ADDRESS OF CONTRACTOR
Firetrol Holdings LLC
~~P. O. Box 21568~~
~~Phoenix, AZ 85036~~

ADDRESS CORRECTION:
2620 N. 37TH DRIVE
PHOENIX, AZ 85009

RECEIVED
APR 03 2000
FIRE-TROL HOLDINGS, L.L.C.
PHOENIX

ORDER NUMBER
4

DATE ISSUED
04/3/2000

THIS IS YOUR NOTICE TO PROCEED, SUSPEND, OR RESUME WORK ON THE CONTRACT AS NOTED

☐ NOTICE TO PROCEED

This is your notice to proceed with the work on the above contract for the following items:

The time on this contract will start at the beginning of business on

☒ SUSPENSION OF WORK

You are to suspend work for the following reason(s) Unacceptable levels of cyanide in FIRE-TROL's formulation

close of business 03/28/2000 Item Numbers All Items

Type of Suspension ☒ Total ☐ Partial

☐ No charge will be made against contract time for period of suspension.
☐ Full count of contract time will continue.
☐ An equitable adjustment of contract time will be made for period of partial suspension upon resumption of work.

DO NOT RESUME WORK UNTIL YOU ARE NOTIFIED TO DO SO IN WRITING

☐ RESUMPTION OF WORK

Item Numbers Effective Beginning of Business

Time charged during period of partial suspension calendar days

SIGNATURE Carolyn Jo Lippire
TITLE CAROLYN JO LIPPIRE
Contracting Officer
DATE 04/03/2000

PLEASE ACKNOWLEDGE RECEIPT BY RETURNING ______ COPY(S) TO USDA, FOREST SERVICE

SIGNATURE Timothy F. Quinach
TITLE CONTROLLER
DATE 4-3-00

INSTRUCTIONS:

If mailed to Contractor, send original by Certified Mail - Return Receipt Requested.

If delivered in person, have Contractor sign the acknowledgement and retain the original.

Previous edition obsolete.

FS-6300-8(3-80)

... DEPARTMENT OF AGRICULTURE
Forest Service

# NOTICE TO PROCEED, SUSPEND, OR RESUME WORK ORDER

(Reference FSH 6309.31)

CONTRACT NUMBER: 54-024B-8-1065

UNIT:

PROJECT: Long Term Fire Retardant (Full Service)

NAME AND ADDRESS OF CONTRACTOR:
Fire Trol Holdings L.L.C
2620 North 37th Drive
Phoenix, Az 85009

ORDER NUMBER: 1

DATE ISSUED: 3/28/00

THIS IS YOUR NOTICE TO PROCEED, SUSPEND, OR RESUME WORK ON THE CONTRACT AS NOTED.

☐ NOTICE TO PROCEED

This is your notice to proceed with the work on the above contract for the following items: ______

The time on this contract will start at the beginning of business on ______

☒ SUSPENSION OF WORK

You are to suspend work for the following reason(s) As per our Telephone conversation all work is suspended as of 3/28/00 For all Full service bases. By no later than April 7 submit your proposed plan under this contract.

Effective close of business ______ Item Numbers ______

Suspension ☒ Total ☐ Partial

☐ No charge will be made against contract time for period of suspension.
☐ Full count of contract time will continue.
☐ An equitable adjustment of contract time will be made for period of partial suspension upon resumption of work.

DO NOT RESUME WORK UNTIL YOU ARE NOTIFIED TO DO SO IN WRITING

☐ RESUMPTION OF WORK

Item Numbers ______ Effective Beginning of Business ______

Time charged during period of partial suspension ______ calendar days

| SIGNATURE | TITLE | DATE |
|---|---|---|
| Fred Gong [signature] | Contracting Officer | 3/28/00. |

PLEASE ACKNOWLEDGE RECEIPT BY RETURNING ______ COPY(S) TO USDA, FOREST SERVICE

| SIGNATURE | TITLE | DATE |
|---|---|---|
| | | |

INSTRUCTIONS:

If mailed to Contractor, send original by Certified Mail - Return Receipt Requested.

If delivered in person, have Contractor sign the acknowledgement and retain the original.

FS-6300-8(3-80)

EXHIBIT "F"

United States Department of Agriculture | Forest Service | Washington Office | 14th & Independence SW
P.O. Box 96090
Washington, DC 20090-6090

DECISION MEMORANDUM FOR CHIEF - DRAFT -

THROUGH: Janice H. McDougle
Deputy Chief, S&PF

FROM: Jośe Cruz
Director, Fire and Aviation Management

SUBJECT: Fire Retardant Suspension
FILE CODE: 5160

ISSUE:

A national Stop Work Order was issued to Fire-Trol Holdings, L.L.C. on March 28, 2000 upon the review of the USGS Columbia Environmental Research Center's *The Effects of UVB Radiation On the Toxicity of Fire-Fighting Chemicals*. The order affected 46 of the 75 interagency aerial firefighting bases.

DISCUSSION:

The USDA Forest Service Wildland Fire Chemicals Systems Laboratory in Missoula Montana commissioned the report. Fire-Trol is the world's largest producer of fire retardant chemicals. The report indicates that fire retardant containing sodium ferrocyanide accidentally dropped into aquatic environments and exposed to sunlight has an impact on fish mortality. Sodium ferrocyanide in this application does not posé a health hazard to humans. The Stop Work Order was issued to allow time for further study and to determine the level of impact sodium ferrocyanide has on the environment when compared to other non-sodium ferrocyanide containing fire retardants. The order was coordinated with our wildland fire fighting cooperators at the National Interagency Fire Center.

Fire retardant is manufactured from fertilizer, which is highly corrosive without an inhibiting agent in the formulation. Only the Fire-Trol product line uses sodium ferrocyanide as a corrosion inhibitor to protect their retardant tanks and aircraft flight surfaces. Sodium ferrocyanide is also used in food products including common table salt, gold mining leaching and road salt.

During the past thirty years there have been numerous independent and agency studies of the effectiveness, health and safety, and the environmental impact of these products. Ten years ago, these studies were reviewed by the Environmental Protection Agency. They published their ruling under 40 CFR Ch. 1 (122.27 – 122.3) which resulted in the exemption of selected silvicultural activities including, fire control, nursery operations, prescribed fire, construction and reforestation. The regulation is based on the knowledge that all fire retardants and foams, not

DVS USFS FOIA (020901)

just those containing sodium ferrocyanide, can be harmful to the aquatic environment. The EPA has deemed their use as a Cataclysmic Release, which is viewed as a balance to prevent the greater destruction of the wildland by fire (silting, suspended solids and pH changes) than the possible loss of fish from an inadvertent retardant drop into a waterway. The 40 CFR Ch. 1 (122.27 – 122.3) regulation was reviewed by the Office of the General Council who concurred that fire retardants and foams are neither subject to Point Source Regulations nor the NPDES procedures under the Clean Water Act.

An agency review of literature, manuals and interagency guides indicated the scientific studies have always stated that direct application of fire retardant to waterways should be avoided. However, operational training and policy manuals do not contain the direction to avoid waterways [with the exception of the Air Tactical Group Supervisor's interagency guide].

The decision making process to issue the stop work order was supported on the indication in the report that the sodium ferrocyanide exceeded EPA standards during its prescribed use. Based on the foregoing this information was not correct. Additionally, it was not clearly understood that all foams and retardants have the capability to kill fish under certain conditions. The report also indicated that retardants containing sodium ferrocyanide kill fish at a higher rate than previously suspected. This laboratory test was performed in a closed tank under artificial UV light and should be considered suspect until an in-depth regime of field-testing can be performed. The final decision factor was the sociological implications and public perception of the use of sodium ferrocyanide in the environment. This perception remains a factor in this issue.

The Stop Work Order has far reaching implications. Sodium ferrocyanide is used in road salt, annually treating an estimated 400,000 acres of forestland compared to 40,000 acres treated with Fire-Trol products. Of the 40,000 treated acres only 1 to 2 percent of the retardant may annually accidentally enter waterways as compared to the ice melt which carries a high concentration of the chemical into streams and lakes. A sodium ferrocyanide ban in fire retardants may translate into an agency ban on forests and states using de-icing road salts. According to the WO Forest Service Environmental Engineer our ban could also affect other agencies who use retardants and foams for fire control aboard military seagoing vessels in the engine rooms, airport crash/rescue units, and in aircraft hangars to extinguish fires.

The order has grave implications for the company. They report that they are losing $100,000. per day and will be bankrupt within the next 16 days. They also indicate that the order has affected their position in Canada where they operate 60 airtanker bases. From a field operational level, the Solutia Company has indicated that they can supply the total needs of the Forest Service, as a sole source, if the fire season is not exceptional. Fuel moisture readings so far predict the field season for 2000 will be above normal and several regions have already submitted emergency funding severity requests.

The issue of the public perception of sodium ferrocyanide remains. While still a consideration, the information that this mineral is commonly used in many applications has lessoned the weight of this factor.

April 20, 2000 @ 1300 hrs

BRIEFING PAPER
FIRE AND AVIATION MANAGEMENT

***Topic:*** Issuing a Resume Work Order for FIRE-TROL Holdings, LLC retardant products.

***Background:***

A national Stop Work Order was issued to FIRE-TROL Holdings, L.L.C. on March 28, 2000 upon the review of the USGS Columbia Environmental Research Center's *The Effects of UVB Radiation On the Toxicity of Fire-Fighting Chemicals.* The order affected 46 of the 75 interagency aerial retardant firefighting bases.

The USDA Forest Service Wildland Fire Chemicals Systems Laboratory in Missoula Montana commissioned the report. The report indicates that fire retardant containing sodium ferrocyanide accidentally dropped into aquatic environments and exposed to sunlight has an impact on fish mortality. Sodium ferrocyanide in this application does not pose a health hazard to humans. The Stop Work Order was issued to allow time for further study and to determine if we are in violation of EPA guidelines and rules.

Fire retardant is manufactured from fertilizer, which is highly corrosive without an inhibiting agent in the formulation. Only the FIRE-TROL product line uses sodium ferrocyanide as a corrosion inhibitor to protect their retardant tanks and aircraft flight surfaces.

During the past thirty years there have been numerous independent and agency studies of the effectiveness, health and safety, and the environmental impact of these products. Ten years ago, these studies were reviewed by the Environmental Protection Agency. They published their ruling under 40 CFR Ch. 1 (122.27 – 122.3) which resulted in the exemption of selected silvicultural activities including, fire control, nursery operations, prescribed fire, construction and reforestation. The regulation is based on the knowledge that all fire retardants and foams, not just those containing sodium ferrocyanide, can be harmful to the aquatic environment. The EPA has deemed their use as a Cataclysmic Release, which is viewed as a balance to prevent the greater destruction of the wildland by fire (silting, suspended solids and pH changes) than the possible loss of fish from an inadvertent retardant drop into a waterway. The 40 CFR Ch. 1 (122.27 – 122.3) regulation was reviewed by the Office of the General Council who concurred that fire retardants and foams are neither subject to Point Source Regulations nor the NPDES (National Pollution Discharge Elimination System) procedures under the Clean Water Act.

An agency review of literature, manuals and interagency guides indicated the scientific studies have always stated that direct application of fire retardant to waterways should be

avoided. This information is contained within the Air Tactical Group Supervisor's Interagency guide and needs to be added to the Fireline Handbook and the FSH. The policy is incorporated in the Aerial Retardant Application and Use course offered at NARTC, as well as being discussed during our annual training sessions for aerial delivery of retardants.

The decision-making process to issue the stop work order on March 28, 2000 was supported on the indication in the report that the sodium ferrocyanide exceeded EPA standards during its prescribed use. Based on new information gathered in the last week, this is not correct. During this decision-making process, it was not clearly understood that all foams and retardants have the capability to kill fish under certain conditions. The report also indicated that retardants containing sodium ferrocyanide kill fish at a higher rate than previously suspected. This laboratory test was performed in a closed tank under artificial UV light and does not represent true field conditions. An in-depth regime of field-testing, as recommended in the report, will be performed.

***Situation:***

Following two weeks of consultation with the Department of the Interior Agencies, including Bureau of Land Management, National Park Service, Fish and Wildlife Service; the Office of the General Counsel and the Interior Office of the Solicitor, and the Environmental Protection Agency, the Forest Service made the decision to issue the Resume Work Order to FIRE-TROL Holdings, LLC. This decision was based on the following commitments by all agencies:

1. Implement revised Operational Guidelines for Aerial Application of Retardant and Foam in the vicinity of aquatic environments.

2. Contract for an analysis to determine if there are impacts to the environment from aerial application of retardant during the 1999 fire season.

3. Contract for the follow-up field research recommended in the USGS Laboratory Report.

4. Provide information sources to employees and the public regarding health risks utilizing the LABAT-ANDERSON Risk Assessments completed in 1994 and 1996.