# EXHIBIT "G"

United States Department of Agriculture | Forest Service | Washington Office | 14th & Independence SW
P. O. Box 96090
Washington, DC 20090-6090

INFORMATIONAL MEMORANDUM FOR JAMES R. LYONS, UNDER SECRETARY, NRE

FROM: Phil Janik
Chief Operating Officer

SUBJECT: Aerially Delivered Fire Retardant
FILE CODE: 5160

ISSUE:

Following 2 weeks of consultation with the Department of the Interior Agencies, including the Bureau of Land Management, the National Park Service, the Fish and Wildlife Service, the Office of the General Counsel, and the Interior Office of the Solicitor and also with the Environmental Protection Agency, the Forest Service made the decision to issue the Resume Work Order to FIRE-TROL Holdings, LLC.

SITUATION:

The decision to resume using FIRE-TROL in fire suppression was based on the following commitments by all agencies:

1. Implement revised Operational Guidelines for Aerial Application of Retardant and Foam in the vicinity of aquatic environments.

2. Contract for an analysis to determine if there are impacts to the environment from aerial application of retardant during the 1999 fire season.

3. Contract for the follow-up field research recommended in the USGS Laboratory Report.

4. Provide information sources to employees and the public regarding health risks utilizing the LABAT-ANDERSON Risk Assessments completed in 1994 and 1996.

In addition to the Endangered Species Act section 7 emergency consultation with the Fish and Wildlife Service, the agencies agreed to continued programmatic consultation and are beginning discussions with CEQ on the adequacy of NEPA planning for aerially delivered retardants.

DVS USFS FOIA (020901)

BACKGROUND:

The Stop Work Order was issued to FIRE-TROL Holdings, L.L.C. on March 28, 2000, upon the review of the USGS Columbia Environmental Research Center's *The Effects of UVB Radiation On the Toxicity of Fire-Fighting Chemicals*. The order affected 46 of the 75 interagency aerial retardant firefighting bases.

The report indicates that fire retardant containing sodium ferrocyanide accidentally dropped into aquatic environments and exposed to sunlight has an impact on fish mortality. Sodium ferrocyanide in this application does not pose a health hazard to humans. The Stop Work Order was issued to allow time for further study and to determine if we are in violation of EPA guidelines and rules.

Fire retardant is manufactured from fertilizer, which is highly corrosive without an inhibiting agent in the formulation. Only the FIRE-TROL product line uses sodium ferrocyanide as a corrosion inhibitor to protect their retardant tanks and aircraft flight surfaces.

During the past 30 years there have been numerous independent and agency studies of the effectiveness, health and safety, and environmental impact of these products. Ten years ago, these studies were reviewed by the Environmental Protection Agency. They published their ruling under 40 CFR Ch. 1 (122.27 – 122.3) which resulted in the exemption of selected silvicultural activities, including fire control, nursery operations, prescribed fire, construction, and reforestation. The regulation is based on the knowledge that all fire retardants and foams, not just those containing sodium ferrocyanide, can be harmful to the aquatic environment. The EPA has deemed their use as a Cataclysmic Release, which is viewed as a balance to prevent the greater destruction of the wildland by fire (silting, suspended solids and pH changes) than the possible loss of fish from an inadvertent retardant drop into a waterway. The 40 CFR Ch. 1 (122.27 – 122.3) regulation was reviewed by the Office of the General Counsel, who conc..ted that fire retardants and foams are neither subject to Point Source Regulations nor the NPDES (National Pollution Discharge Elimination System) procedures under the Clean Water Act.

An agency review of literature, manuals, and interagency guides indicated the scientific studies have always stated that direct application of fire retardant to waterways should be avoided. This information is contained within the Air Tactical Group Supervisor's Interagency guide and needs to be added to the Fireline Handbook and the Forest Service Handbook. The policy is incorporated in the Aerial Retardant Application and Use course offered at National Advanced Resource Technology Center, as well as being discussed during our annual training sessions for aerial delivery of retardants.

EXHIBIT "H"

United States Department of Agriculture | Forest Service | Washington Office | 14th & Independence SW P.O. Box 96090 Washington, DC 20090-6090

File Code: 5160

Date: April 19, 2000

Ms. Jamie Clark, Director
US Fish and Wildlife Service
U.S. Department of the Interior
Washington, D.C. 20240

The Federal agencies responsible for wildland fire suppression respectfully request that the Fish and Wildlife Service accept the enclosed interim guidelines for the use of aerial application fire retardants and foams to address an unforeseen emergency under the Endangered Species Act. These interim guidelines are the result of informal expedited consultations among the Forest Service, the Bureau of Land Management and Fish and Wildlife Service staff.

The Forest Service and BLM rely on fire retardants manufactured by two separate companies as an important tool in fighting fires on lands subject to federal wildfire suppression activities (e.g., Fish & Wildlife Service, National Park Service, Bureau of Land Management, Bureau of Indian Affairs, and USDA-Forest Service activities and lands). The aerial application of retardants helps to avoid loss of life, property and habitat, while promoting the safety of the men and women who place themselves at risk while fighting wildland fires. At the request of the Forest Service, the United States Geological Survey (USGS), Columbia Environmental Research Center, undertook a laboratory analysis of the anti-corrosive agent used in one of the fire retardants to determine whether it had an adverse effect on aquatic species and their habitat. On March 15, 2000, USGS issued a report which suggested that based on laboratory analysis, there is cause for concern. We have enclosed a copy of the report for your information. Based on this report, the Forest Service, as the contracting agency for the National Inter-agency Fire Center, issued a stop work order for the affected fire retardant.

There are only two manufacturers of this necessary fire-fighting tool, and there are no alternative chemicals that would not raise issues similar to those raised by the USGS report. Similar products have been in use for decades. Because of the importance of these products to human life, property and habitat, the agencies believe that the stop work order must be lifted so that these chemicals will continue to be available for wildland fire suppression activities. The agencies believe that these revised interim guidelines will keep the retardants further away from streams and waterways, and are an important first step in addressing this problem in the longer term.

In addition to the implementation of these guidelines, the federal wildland fire suppression agencies will undertake two studies in 2000: one to look at the residual effects of fire retardants in the environment from the 1999 fire season and the other to do the follow-up field study recommended by the USGS Report. We will monitor areas where these chemicals are dropped

during the 2000 season as part of these studies. Moreover, until the relationship of fire retardant to the Endangered Species Act is permanently resolved, we will condition all future contracts or extensions of existing contracts for these fire retardant chemicals in a manner that will permit agencies to make decisions consistent with future consultations.

Enclosed are the proposed interim guidelines for the use of aerial application retardants and foams in wildland fire suppression activities. We request that the Fish and Wildlife Service agree these guidelines are appropriate interim guidelines for this situation. The recommended guidelines would be implemented immediately and would cover all uses of the chemicals on lands subject to federal wildfire suppression activity. These guidelines would remain in effect through the 2000 fire season. The agencies would conduct additional consultation with the Fish and Wildlife Service and National Marine Fisheries Service and will revisit these interim guidelines in January 2001 based on any data from the monitoring and research conducted during the 2000 fire season.

As we learn more from our monitoring and studies, and develop longer term guidelines, the action agencies will continue to engage the Fish and Wildlife Service in Section 7 consultation on the effects of these aerial application fire retardants. In the meantime, we are continuing to consult with the National Marine Fisheries Service.

We urge expeditious consideration of this request. As we approach the most severe months of the fire season, we require an adequate supply of this important suppression tool. Please contact me if I can provide you with additional information.

Sincerely,

JOSÉ CRUZ
Director
Fire and Aviation Management

Enclosure

EXHIBIT "I"

Group A.1

United States Department of Agriculture | Forest Service | Washington Office | 14th & Independence, SW P. O. Box 96090 Washington, D.C. 20090-6090

File Code: 5160
Date: JUN 1 2000

FIRE-TROL Holdings, LLC
Attn: Joe Grigel, General Manager
2620 North 37th Drive
Phoenix, AZ 85009

Dear Joe:

There were several decisions made at the May 24, 2000, Fire and Aviation Management Director's meeting concerning the National Interagency Long Term Full-Service and Bulk Retardant Contracts. These decisions were agreed to by all the Regional Fire Directors and myself.

1. The USDA Forest Service will no longer accept retardants containing sodium ferrocyanide for the year 2004 retardant contracts.

2. The USDA Forest Service will only accept bids for gum-thickened products in the year 2004 contracts.

3. The year 2001 contracts will be done on a basis of sealed bid.

4. We will not revisit the decision made in April 1999 on the fugitive issue. The specification for the contract will be 5100-104b approved in January 2000.

Questions should be directed to Alice Forbes, Branch Chief, Equipment and Chemicals at (530) 226-2727.

Sincerely,

JOSÉ CRUZ
Director
Fire and Aviation Management

cc: Regional and Area Fire Directors
Assistant Directors, WO-FAM
Alice Forbes
Frank Gomez

EXHIBIT "J"

United States Department of Agriculture | Forest Service | Washington Office | 14th & Independence SW
P.O. Box 96090
Washington, DC 20090-6090

File Code: 5160
Date: JAN 31 2002

Mr. Rob Crouch
Fire-Trol Holdings, L.L.C.
2620 North 37th Drive
Phoenix, Arizona 85009

Dear Mr. Crouch:

The Forest Service objective is to have cost-effective, environmentally safe, fire retardants as we exercise responsible stewardship of the National Forests. We appreciate efforts to work with us towards these goals. Thank you for your recent correspondence. I also appreciated our meeting. The technical questions posed in your three recent letters will be answered separately. This letter answers the programmatic questions you posed.

Decision Process
I will make decisions consistent with our motto of "caring for the land and serving people." I will make decisions based on science. I am awaiting the counsel of scientists who will review research and studies that analyze the impact of retardants and their various chemical components on the environment. Once I have sufficient facts, I will make decisions based on the advice of scientists and staff.

Competition
When companies compete for our business, we and the taxpayer benefit. It is in our interest to have at least two companies in the retardant business. While the CY2001-3 contract was based on low cost, future contracts may contain other evaluation factors.

Proscription of Unthickened Products
In the future, both wet and dry concentrates will be acceptable provided that gum-thickeners are added to provide viscosity. The science, including numerous tests drops over the years, is conclusive that a greater percentage of a gum-thickened drop reaches a target than comparable unthickened retardants. Even a small amount of gum (to achieve 100 centipoise or greater) will meet our specifications. This minimum level of gum does not proscribe liquid concentrate products.

YP Soda
The Forest Service is a leader in being environmentally responsible. As your customer the Forest Service defines the characteristics of the products we procure. Our available studies show that sodium ferrocyanide (YP Soda) exhibits strong photo-enhanced toxicity to aquatic organisms. Because other, less toxic, alternatives are available at reasonable cost, the Forest Service does not want YP Soda in retardant.

Timing

You have requested a delay in implementing the requirements of our June 1, 2000, letter. I am pleased with the progress you are making towards generating a retardant without YP Soda. It has never been the intention of the Forest Service to remove your company from competing for retardant contracts. I remain confident of the fundamental goals and requirements outlined in our June 1, 2000, letter. Because of (1) the emerging studies on the toxicity of YP Soda, (2) the length of time required to qualify new products, even with our accelerated procedures, and (3) the difficulty of replicating burn chamber test results, I will consider your request for a short delay in the application of our updated requirements. However, this consideration will be based on the results of soon to be published research regarding YP Soda toxicity and your "good faith" efforts to reformulate your products without YP Soda. I will make a final decision on any delay in implementing the requirements of our June 1, 2000, letter to you before contract action on the FY04 retardant contract begins.

Sincerely,

for JERRY T. WILLIAMS, Acting
Director
Fire and Aviation Management

cc:
T.Harbour
D.Pendleton
A.Forbes
P.Solarz
E.Dilworth

EXHIBIT "K"

USDA United States Department of Agriculture | Forest Service | Washington Office | 12th & Independence SW MENTO PO Box 96090 Washington DC 20090-6090

File Code: 5160

Date: May 26, 2002

Rob Crouch
Fire-Trol Holdings LLC
POBox 21568
Phoenix, Arizona 85036

Dear Mr. Crouch:

During your April 24, 2002, meeting with Tom Harbour, Deputy Director, Fire and Aviation Management (FAM), you requested a formal response to issues you have raised regarding the "four-point" letter dated June 1, 2000, signed by then FAM Director Jose Cruz. This letter serves as the response you requested and responds to issues in your May 11, 2002, letter.

The Forest Service will not accept retardants containing sodium ferrocyanide (YPS) for the 2004 contract cycle. This is consistent with the position we expressed formally in the June 1, 2000, letter and informally expressed years ago. Only products having gum-thickener will be accepted. The specification used for the 2004 contract cycle will not include "fugitive" color as an option.

The Forest Service appreciates the commitment Fire-Trol expressed during the April 24, 2002, meeting to removing sodium ferrocyanide (YPS) from the retardants supplied in future contracts. Given our mutual concurrence on that objective, the primary issue to be resolved is the ability of Fire-Trol to provide a product (or products) for the calendar year 2004 acquisition.

Based on your decision to remove YPS from retardant products, our desire to expedite testing and approval for products, and continuing issues associated with "burn-test" replication, the Forest Service will temporarily institute the procedures outlined in attachment "A" (Modified Testing Procedures) for the purpose of testing products offered for bid for the 2004 National Long-Term Fire Retardant Contract.

Additionally, the Forest Service will implement a change in the schedule of long-term fire retardant acquisition, beginning in 2004. This change will allow improved flexibility and more vibrant competition by competing one-third of the total bases every year. Transition to the objective of competition for one-third of the bases each year will require an interim period of change.



 Printed on Recycled Paper

These changes will assure that the Forest Service has effective products available for use during the 2004 fire season and allow the Forest Service to continue to improve the program, encourage innovation, optimize public value within a competitive environment, and take actions that are responsive to environmental issues. Future, additional changes to the long-term retardant requirements will continue to improve the products the Forest Service purchases and uses. Revisions to the specification are being planned to improve retardant effectiveness, visibility, and stability. As these revisions are implemented, additional evaluations may be required as these changes are likely to preclude "grandfathering" of existing approved products.

We appreciate your continued support of the long-term fire retardant program. Specific questions related to specifications should be directed to Paul Solarz, Branch Chief, Equipment and Chemicals at 406-329-4719.

Sincerely,

/s/ *Tom Harbour*
for

JERRY T. WILLIAMS
Director
Fire and Aviation Management

Technical Enclosure

Attachment A – Modified Testing Procedures

The following is offered for qualifying products for inclusion in the competitive process for the 2004 National Long-Term Fire Retardant Contract. Products currently on the qualified products list, that also meet the requirements of the June 1, 2000 letter from then Director of Fire and Aviation Management Jose Cruz may be offered on the 2004 contract. Products must not contain sodium ferrocyanide, must be gum-thickened, and products must be iron oxide colored or uncolored. Products containing a "fugitive" color will not be allowed. New products that have successfully completed the formal evaluation process may also be offered on the 2004 contract, providing that they meet the requirements of the June 1, 2000 letter. Products that have been given an <u>**Interim Approval**</u> as described below may also be bid on the 2004 contract. The interim approval will be in effect for the 2004 contract cycle only. If products granted an interim approval later fail to meet any of the evaluation criteria, their use will be suspended and a qualified or approved product substituted for the life of the contract.

All of the requirements listed must be met before a product will be given an Interim Approval:

1. Product must be sent to the Missoula Technology and Development Center's Wildland Fire Chemical Systems group by December 1, 2002. All required agreements and paperwork must be in place and approved prior to acceptance of a product for evaluation.
2. Product must have successfully completed the standard mammalian toxicity test.
3. Product must have successfully completed the initial uniform and intergranular corrosion tests.
4. Product must have successfully completed a six-month stability test, started at the same time as the standard twelve-month test. The same stability (viscosity, salt content, density, etc.) requirements in effect for the twelve-month test will be used to determine acceptable performance. Full qualification will require successful completion of the standard twelve-month test started at the same time.
5. Product must have successfully completed a standard corrosion test on the six-month stability samples. The same requirements that apply to corrosion testing after twelve-month storage will apply. Full qualification will require successful completion of a standard corrosion test on the twelve-month stability samples started at the same time.
6. Product must successfully perform on a burn test, or meet the salt content criteria described in item 7. Products containing any other retardant salts must successfully complete a burn test, i.e., new products must perform as well as a 10.6 percent solution of diammonium phosphate burned at the same time under the same experimental test conditions.
7. A product containing one of these prescribed retardant salts or combinations will not require a burn test. A salt concentration will be verified by chemical analysis during the evaluation.

a. Concentrations in the mixed retardant of 10.7 percent or greater diammonium phosphate.
b. Concentrations in the mixed retardant of 9.3 percent or greater of monoammonium phosphate.
c. Concentration in the mixed retardant of 16.0 percent or greater ammonium sulfate.
d. Combinations of ammonium sulfate, monoammonium phosphate, and diammonium phosphate adding to a total of 10.7 percent or greater, using the conversions described.
    i. For ammonium sulfate use the value calculated by dividing the ammonium sulfate concentration by 1.5.
    ii. For monoammonium phosphate use the value calculated by multiplying the monoammonium phosphate concentration by 1.5.
    iii. For diammonium phosphate use the concentration value without conversion.
e. Concentrations in the mixed retardant of 8.0 percent or greater ammonium polyphosphate.

8. Products that contain one of the prescribed retardant salts or combinations will not require an operational field evaluation although they will be subject of intensive lot acceptance and quality assurance monitoring.

As part of this evaluation process, the operational field evaluation requirement will change somewhat. There will be options for no field evaluation or one of two levels of field evaluations: full field evaluation or limited field evaluation. Products requiring a field evaluation at either level will be listed as "conditionally qualified" on the list of qualified and approved products. These products may not be offered in response to the contract solicitation. Products requiring a limited field evaluation may be substituted for a qualified product at one base with the approval of the Branch Chief for Equipment and Chemicals. Products requiring a full evaluation will be placed at a single base, determined by the Branch Chief and advisors, that is withheld from the contract for the period of the field test. The Branch Chief has the option to limit the number of field tests being performed in a fire season based on available resources.

The Lot Acceptance and Quality Assurance program has evolved to:

- Level 1 Bases are required to submit beginning and end of season samples.
- Level 2 – Bases are selected using specific criteria and must send in more frequent samples.
- Level 3 – Bases are selected due to the use of newly qualified products.

Level 3 was formerly part of a monitor level field evaluation and will now become the third level of LAQA program. Besides the frequent samples required of the second level, at defined times during the fire season bases will be requested to send larger samples for a complete chemical analysis and corrosion testing.

# EXHIBIT "L"

United States Department of Agriculture

Office of the General Counsel

Washington, D.C. 20250-1400

JUL 19 2002

Tania Calhoun, Esq.
General Accounting Office
Office of General Counsel
Procurement Law Division
441 G Street, N.W.
Washington, D.C. 20538

Subject: *Matter of Fire-Trol Holdings, LLC,* B-290674

Dear Ms. Cahoun:

The Forest Service, United States Department of Agriculture, sent a letter dated May 26, 2002, to the protester that the protester received on May 29, 2002. It is apparent that most of the protest grounds are based on the content of that letter. After reviewing the protest, additional documents, and discussing the matter with the various Forest Service officials involved, the Forest Service has determined to take corrective action and withdraw the May 26, 2002, letter. To the extent the May 26, 2002. letter may be deemed a change to specifications, the Qualified Products List, and testing procedures for qualification, the Forest Service has determined that it will make such changes after the Forest Service has complied with applicable portions of the Federal Acquisition Regulation ("FAR"), including Part 9 of the FAR, and any other applicable statutes and regulations. This withdrawal of the letter is without prejudice to the rights of the Forest Service to continue its substantive positions on YP Soda and gum-thickened retardants. That is, the Forest Service when it makes such changes, intends to continue its position that it will not accept retardants containing YP Soda and it will accept only retardants containing gum-thickeners. Once the Forest Service has determined exactly what changes it will make in the specifications, testing procedures, and the Qualified Products List and complied with applicable statutes and regulations, it will issue new letters to potential contractors and to the Government Point of Entry informing them of these changes for the 2004 contract.

Because it will take some time to clear a formal letter withdrawing the May 26, 2002, letter for approval by the Undersecretary of Agriculture, it is probable that the potential contractors will not receive that letter until sometime next week. However, the action of withdrawing the May 26, 2002, letter has been cleared by appropriate officials. By copy of this letter, which will be sent both by facsimile and mail, the Government will inform the contractors of the withdrawal of the May 26, 2002 letter to be followed by a letter from the Forest Service itself confirming that withdrawal. As set forth more fully in the Agency Report, the Forest Service believes this makes

most of the protest by Fire-trol academic. The protest ground concerning G75-F is not affected by this withdrawal and the agency report fully responds to that protest ground. If you have any questions regarding this action, please call me at (202) 720-5999. Thank you for your consideration.

Very truly yours,

Alan D. Groesbeck

Alan D. Groesbeck
Attorney
General Law Division

EXHIBIT "M"

United States Department of Agriculture
Forest Service
Washington Office
14th & Independence SW
P.O. Box 96090
Washington, DC 20090-6090

File Code: 5160/6320
Date: AUG 2 2002

Mr. Thomas L. Tuttle
President
Fire-Trol Holdings, L.L.C.
2620 North 37th Drive
Phoenix, AZ 85009

Dear Mr. Thomas L. Tuttle:

This letter responds to three items: (1) it serves as a response to our 11 July meeting, a portion of which included Mr. Mark Rey, Undersecretary for Natural Resources and Environment, U.S. Department of Agriculture, (2) it responds to your 16 July letter to me and (3) it serves as a formal withdrawal of the May 26, 2002, letter to Mr. Rob Crouch, that described "Modified Testing Procedures, Attachment A".

On June 1, 2000, then Director of Fire and Aviation, Jose Cruz, issued a four-point letter to fire retardant manufacturers. One point related to the current contract and is no longer an issue. Another indicated the Forest Service would no longer accept fugitive retardants beginning in 2004, and you have not taken issue with that position. Of the two remaining points, one point noted that the Forest Service would no longer use products containing sodium ferrocyanide (also known as YP Soda or YPS) beginning with the 2004 contract cycle. The Forest Service continues to sustain the fundamentals of that position.

From the early development of retardant products containing YPS, the Forest Service raised questions about its use. Concerns were raised in printed material, Evaluation of Liquid Ammonium Polyphosphate Fire Retardants (GTR-INT-41, 1977), related to YPS use. In February of 1995, Chemonics (predecessor to your company) entered into discussion with the Forest Service concerning the continued use of sodium ferrocyanide in fire retardants. There were several meeting over the next few months. Verbal notice of concern was given about continued use of YPS at an April 14, 1995, meeting. Representatives from Chemonics were Frank Pfeffer, President; Joe Grigel, Manager of Fire-Trol Division; Lynn Biddison, Agency Liaison; and Rob Crouch, Supervisor of Research and Development. Finally, the June 1, 2000 letter served as written formal notification to discontinue use of YPS for the 2004 contract cycle. It is the position of the Forest Service, faced with evidence of the enhanced toxicity of products containing YPS in the presence of sunlight, that it is a prudent precaution to discontinue use of products containing YPS as soon as practical.

Another discussion item in the July 11, 2002, meeting was that of gum thickening. This was another point of our June 1, 2000, letter. The Forest Service has not changed its position of accepting only gum-thickened products. A gum thickener must be added and the mixed retardant must have a minimum viscosity of 100 centipoise (cP). Measured in increments of 100 cP, 100 cP represents the minimum amount of thickening necessary to achieved minimum preferred droplet size. The Forest Service contracted with Shock-Hydrodynamics and

oneywell for a number of studies (1973-1980). Relationships between gum concentrations, rheological properties, and drop performance were established. Incorporating the gum thickener in retardant can improve the delivery of the retardant by 25 to 40 percent, depending on environmental conditions. Because retardant is used when these environmental conditions are the most severe, the benefits are the greatest. Safety is key to this decision in that the gum-thickened retardant allows the retardant to be dropped effectively from higher drop heights, giving a greater safety margin for pilots. Additionally, higher drops lessens the possibility of impact and injury to ground personnel. With new systems, gum thickener is even more important because with controlled or restricted flow rates, it is important to get as much retardant to the ground as possible. Gum thickening is considered a drift control agent and improves the deliverability of the retardant. A gum thickening imparts the viscosity and elasticity needed for the enhanced drop characteristics.

We intend to pursue a restructuring of contract timing for fire retardant products. We will contract for one third of the total bases each year. During the transition from our current three-year contract to this cycle, there will be adjustments to enable accomplishment of our objective within three to four years. You will be kept apprised of the specifics through regular contracting channels.

You asked questions about the Forest Service position on any unused inventory of Fire-Trol product containing YPS. Products we have purchased from you are our responsibility; however, product not purchased is your responsibility. The Forest Service does not compensate manufacturers for economic decisions made related to the amount of inventory after an existing contract is closed. It is not our plan to purchase your remaining inventory of fire retardant containing YPS. The thio-urea situation that existed several years ago was different in that a specific ingredient (thio-urea) was put on a Regulated List by EPA. A monetary adjustment was made at that time for product on hand, because the listing of the ingredient was beyond or outside the control of the Forest Service and that contract.

A question was raised in the July 11, 2002, meeting related to amount of retardant salt used in a product. The choice of retardant salt and quantity is a company decision. This choice of retardant salt has a direct effect on what type of test is required. The simplest change of product is when a fully qualified product formulation is modified in a minor manner, for example, by a change in corrosion inhibitor. Since the retarding salts, type and quantity, remain the same, the effectiveness should not change. If this occurred, there would not be a need for any burn or field evaluation. The most complex situation occurs when a new product is submitted that uses retarding salts that have not been used before. This will require a full laboratory and field evaluation and will target and assess effectiveness, stability and corrosion.

Products that can be bid in the next contract cycle will be those qualified under FS specification 5100-304a, 304b, or by the modified qualification process. New products can be qualified by two different methods: (1) you may qualify a product by meeting Specification 5100-304b or (2) by meeting a modified qualification process which will allow for qualification without conducting additional burn tests. This modified specification will soon be published through appropriate mechanisms and after complying with applicable statutes and regulations. Our objective is to work towards having long term fire retardant without YPS as soon as possible. If you have products without YPS ready for testing, we stand ready to work with you to implement

e important objective of eliminating YPS. We will do all possible to re-establish testing protocols with the expectation that we will move to YPS "free" products in 2005.

We welcome Fire-Trol's place in the current market. However, as a customer, I must emphatically state my expectation that the Forest Service move towards products without YPS.

We are taking every prudent measure to minimize the environmental risk of fire retardants, including directing the removal of YPS from all retardant products. Our use of these products is more environmentally sensitive than ever. We evaluate our reliance on fire fighting chemicals as part of an on-going assessment of our program.

To summarize this lengthy letter:

- Until we have an appropriate specification, we will no longer accept fugitive retardant for Forest Service use for the 2004 contract cycle
- We will expect a minimum of 100 cP thickening for products beginning with the 2004 contract cycle
- We will restructure contract timing to move towards a cycle of one-third of the bases every year
- We will not accept responsibility for any company inventory containing YPS left unused by Fire-Trol at the end of the contract cycle
- We will allow products to be bid from either FS specification 5100-304a, 304b, or the modified specification.
- We will allow new products to be qualified either by FS specification 5100-304b or a modification soon to be published through appropriate mechanisms, after complying with applicable statutes and regulations
- We expect products without YPS to be available for CY 2005. We hope you will bid these products as early as the CY 2004 contract cycle.

If you have contractual questions, please contract Frank Gomez.

If you have any additional technical concerns, please contact either Tom Harbour, Deputy Director, Alice Forbes, Assistant Director, or Paul Solarz, Branch Chief, Equipment and Chemicals.

Sincerely,

JERRY T. WILLIAMS
Director, Fire and Aviation Management