# EXHIBIT "AC"

along as best I can. I'll try and limit it --

HEARING OFFICER GOLDSTEIN: You can answer this question, but please move it along.

BY MR. DAUER:

Q Let me just clarify something. Did you say earlier that water does not affect the viscosity of the product?

A I don't believe I said that. I may have. If I did, it was --

Q Does it?

A Water quality may affect the viscosity stability of a product. Water temperature may affect the immediate viscosity of the product.

Q Does the quantity of water affect the viscosity?

A Oh, the quantity of water certainly does.

Q Can you tell -- what is the division of the viscosity range for low viscosity products?

A 61 to 250.

Q And if a product tests below 61 viscosity as a low viscosity product during your qualification testing, would that cause the product to be

A It didn't matter. 60 percent is a requirement for the laboratory evaluation.
Q So you would only apply it to the viscosity of the sample as received and then as to some subsequent point in time?
A No.
Q I apologize, I'm confused by that.
A Laboratory evaluation is what is done prior to the field evaluation. Laboratory evaluation is that series of tests that we use to determine whether a product is eligible for conditional qualification.
Q All right. Let me -- maybe this is where the confusion is. If I understand correctly, during the field test, samples are sent back to the laboratory?
A That's correct.
Q And they're tested in the laboratory?
A Yes.
Q And they're not tested by the test standards of the specifications under what you've characterized --

A They're evaluated --
Q Excuse me.
A I'm sorry.
Q What you've characterized as laboratory test standards?
A That's correct.
Q What standards are they tested?
A They are tested primarily using the lot acceptance and quality assurance tests and the criteria for that is somewhat different, it's looser, because we know that field samples are handled -- first of all, they're bulk samples, so that they are going to have a lot more variation than laboratory samples do. They are going to have been mixed in many cases with less than potable water. They are going to have been subjected to temperatures outside of our range of control. We may not get a sample for several weeks or longer.
And they maybe have been mixed under extreme stress or business conditions. We give a lot more latitude in the field than we do in our laboratory evaluations.

Q Well, what I'm trying to identify is, where are the requirements that you test for when you have those field samples and you do laboratory tests?

A The standards for laboratory -- for the field tests are very much looser, they are not written down. We want to try to assure that these products don't behave appreciably differently than anything else in the field. And it relies purely on our combined or collective experience with the lot acceptance program that's been going on since 1983.

Q So these are not set forth in the specifications?

A That's correct.

Q And they're not set forth in any sort of test manual?

A No.

Q And they're not set forth in any written document?

A No.

Can I add --

HEARING OFFICER GOLDSTEIN: You would like

EXHIBIT "AD"

BEST BEST & KRIEGER LLP
A CALIFORNIA LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
LAWYERS
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814
(916) 325-4000
(916) 325-4010 FAX
BBKLAW.COM

RIVERSIDE
(909) 686-1450

INDIAN WELLS
(760) 568-2611

ONTARIO
(909) 989-8584

SAN DIEGO
(619) 525-1300

ORANGE COUNTY
(949) 263-2600

JENNIFER L. McCREADY
(916) 551-2085
JENNIFER.McCREADY@BBKLAW.COM
FILE NO. 82008.00005

June 18, 2004

**VIA FACSIMILE AND MAIL 602-514-7760**

Paul K. Charlton, US Attorney
Department of Justice
Two Renaissance Square
40 N Central Avenue, Suite 1200
Phoenix, AZ 85004-4408

Re: Request for agreement in *Fire-Trol v. US Forest Service*

Dear Mr. Charlton:

Given the delays experienced in the above-referenced action, it now appears that, absent extraordinary relief, the court will not have sufficient time to rule on the action before the Forest Service must conduct its procurement for wildland fire retardant for 2005 through 2007. Accordingly, I am writing to request that the Forest Service agree to defer implementation of its rules requiring gum thickener and banning sodium ferrocyanide until the 2006 procurement cycle (2006 through 2008 contract years). This would provide the court sufficient time to rule before the Forest Service implements its rules in a procurement. Specifically, I request that the Forest Service agree to use Specification 5100-304b, as adopted in January 2000, in conducting the procurement for wildland fire retardants for the 2005 through 2007 contract cycle.

LAW OFFICES OF
BEST BEST & KRIEGER LLP

Paul K. Charlton, US Attorney
June 18, 2004
Page 2

Please let me know as soon as possible if the Forest Service will agree to defer implementation of its rules to allow the court sufficient time to rule in the pending action. If you would like to discuss this matter, please call either me (916-325-4000) or Paul Dauer (916-448-2431). Thank you for your consideration of this matter.

Sincerely,

Jennifer L. McCready
for BEST BEST & KRIEGER LLP

JDM:dcp

cc: Michael A. Johns
Joe Grigel
Rob Crouch
Paul Dauer
David Seyer

SACRAMENTO\JDM\15833.1

**Jennifer Dauer McCready**

**From:** Mike.Johns@usdoj.gov
**Sent:** Thursday, July 15, 2004 10:47 AM
**To:** Jennifer Dauer McCready
**Subject:** Fire-Trol v. U.S. Forest Service

In response to your letter of June 18, 2004, requesting the Forest Service to defer its decision not to procure fire retardants which contain sodium ferrocyanide or which do not contain a gum thickener, I have consulted with the Forest Service and the Forest Service has declined your request.

Michael A. Johns
Assistant U.S. Attorney
Civil Chief
602-514-7566 (FAX 7760)
Cell: 602-809-2688
mike.johns@usdoj.gov
Text message 6028092688@message.alltel.com

EXHIBIT "AE"

X FILED ___ LODGED
X RECEIVED ___ COPY
AUG 13 2004
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Fire-Trol Holdings L.L.C.,

Plaintiff,

vs.

U.S. Department of Agriculture Forest Service,

Defendant.

No. CV-03-2039-PHX-JAT

**ORDER RE MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Pending before the Court is Defendant U.S. Department of Agriculture Forest Service's (the "Forest Service") Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. #15.) Plaintiff Fire-Trol Holdings L.L.C. ("Fire-Trol") filed a timely response (Doc. #17) and Defendant filed a timely reply (Doc. #20). For the following reasons the Forest Service's Motion to Dismiss will be granted.

**BACKGROUND**

Plaintiff Fire-Trol is the leading manufacturer of fire retardant chemical products used to fight wildfires in the United States, Canada, and Europe. (Doc. #1 at 2.) It is one of only two manufacturers of wildfire retardant approved for use in the United States. (*Id.*) Defendant Forest Service is an agency of the United States Department of Agriculture with the responsibility for managing public lands in national forests and grasslands. (*Id.*) As part

23

of its responsibilities, the Forest Service provides for fire protection which includes contracting for and applying fire retardant products to facilitate fighting wildfires. (*Id.*)

The Forest Service conducts competitive procurements to award fire retardant contracts. (*Id.*) Traditionally, contracts have been awarded for one year terms with two one year extension options. (*Id.*) The Forest Service awards two contracts for each firebase, one for purchase of bulk retardant, and one for retardant delivered mixed and loaded. (*Id.*) The current fire retardant contracts expire in early 2004, and the Forest Service is expected to issue the solicitation for 2004 through 2006 contracts in the fall of 2004. (Doc. #1 at 4.)

To conduct its procurement of fire retardant, the Forest Service uses a qualified products list ("QPL"). (Doc. #1 at 3.) A QPL is a list of products which have been thoroughly examined, tested in accordance with established protocols, and found to comply with the government's standard specification requirements. (*Id.*) All fire retardant products currently listed on the QPL contain one or more corrosion inhibitors. (Doc. #1 at 4.) Without incorporation of corrosion inhibitors in retardants, significant structural damage would occur to vital parts of tanker aircraft and other equipment used in fighting wildfires. (*Id.*)

Sodium ferrocyanide ("YP Soda") is one such corrosion inhibitor used in fire retardants. (*Id.*) Fire-Trol uses YP Soda as the corrosion inhibitor in all of its fire retardants which meet Forest Service specifications. (*Id.*) On March 28, 2000, the Forest Service issued an Order to Suspend Work (the "Order") to Fire-Trol, halting its purchases of fire retardant from Fire-Trol under the existing contracts. (Doc. #1 at 8.) The Order was prompted by Forest Service concerns over the impact of YP Soda on employees, the public, and the environment. (Doc. #1 at 9.) On April 20, 2000, the Forest Service revoked the Order. (Doc. #1 at 11.) However, one month later the Forest Service sent a letter to Fire-Trol informing them of a May 26, 2000 decision to refrain from purchasing any fire retardants containing YP Soda beginning with the 2004 through 2006 contract cycle. (*Id.*) The letter also announced that the Forest Service would only accept bids for gum-thickened products in the 2004 contracts. (Doc. #1 at 22.) On October 4, 2002, the Forest Service sent a letter to Fire-

Trol informing them that the rule banning YP Soda and requiring gum thickener would not be implemented until 2005. (Doc. #1 at 13, 22.) Fire-Trol claims the Forest Service made these decisions without complying with public notice and open competition requirements. (Doc. #1 at 35, 36.) Fire-Trol also claims the decisions by the Forest Service have put it at a competitive disadvantage and damaged its business reputation. (Doc. #1 at 31.) Finally, they claim that if the Forest Service's decision is not enjoined they will be forced out of business and a monopoly for fire retardant in the U.S. will be created in the sole remaining retardant manufacturer. (*Id.*)

Fire-Trol's Complaint (Doc. #1) against the Forest Service, filed on October 21, 2003, puts forward three claims for relief. The first two claims are for injunctive relief and declaratory judgement, respectively, under the Administrative Procedures Act ("APA") (5 U.S.C. § 706). The final claim is for declaratory judgment under the Competition In Contracting Act ("CICA") (41 U.S.C. § 251 *et seq.*).[1] The Forest Service subsequently filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## LEGAL STANDARD

"The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). A Rule 12(b)(1) motion to dismiss "for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979).

---

[1] In Claims II, and III, Fire-Trol seeks declaratory relief under 28 U.S.C. § 2201 in conjunction with the APA and the CICA. 28 U.S.C. § 2201 does not itself confer subject-matter jurisdiction. *Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979).

In resolving the former motion, a "facial attack" under Rule 12(b)(1), the district court must accept the allegations of the complaint as true. *White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000). Unlike a Rule 12(b)(6) motion, however, the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction, rather a plaintiff must affirmatively allege such jurisdiction.

In resolving a "speaking motion" or "factual attack" under Rule 12(b)(1), the court is not limited to the allegations in the pleadings if the jurisdictional issue is separable from the merits of the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Instead, the court may view evidence outside the record, and no presumptive truthfulness is due to the complaint's allegations that bear on the subject matter jurisdiction of the court. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Indeed, "the district court is [] free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Id.* However, if the court resolves a Rule 12(b)(1) motion on declarations alone without an evidentiary hearing, it must accept the complaint's factual allegations as true. *McLachlan v. Bell*, 261 F.3d 908, 909 (9th Cir. 2001).

**DISCUSSION**

In its Motion to Dismiss the Forest Service argues that Fire-Trol's claims are actually a "procurement bid protest" arising under the Administrative Dispute Resolution Act of 1996, 28 U.S.C. §1491(b) ("ADRA"), and that the ADRA preempts all procurement protests. (Doc. #15 at 3.) The Forest Service urges that the Court of Federal Claims now has exclusive jurisdiction over suits filed under the ADRA, after a sunset provision went into effect on January 1, 2001. (Doc. #15 at 4.)

In its objection to the Forest Service's motion, Fire-Trol asserts that its lawsuit is not a "procurement bid protest", but is a dispute over a "rule" promulgated by the Forest Service and is properly brought before the Court under the APA and the CICA.[2] (Doc. #17 at 2.)

---

[2] A right of judicial review of agency actions is provided under the APA in 5 U.S.C. § 702, which provides in relevant part, "A person suffering legal wrong because of agency

They contend that the Court has jurisdiction under 28 U.S.C. § 1331 because both the APA and CICA are laws of the United States.[3] (Doc. #17 at 1.)

The Court notes that this Motion to Dismiss for Lack of Subject Matter Jurisdiction is a facial, rather than a substantive attack. Therefore, the Court must accept the allegations of the complaint as true. *See White*, 227 F.3d at 1241. Additionally, Fire-Trol attached declarations and other documents to its Objection to the Motion to Dismiss. Because the Motion hinges on questions of law, the attachments are unnecessary for the Court to rule.

The parties do not disagree about the facts pertaining to jurisdiction. The issues are purely legal: (1) whether Fire-Trol's action is a bid or procurement protest under the ADRA; (2) if it is a bid or procurement protest, may the Court still exercise jurisdiction under the APA in conjunction with 28 U.S.C. § 1331; (3) whether the Court can exercise jurisdiction over this action under the APA if the Forest Service established a rule; and (4) if it is a bid or procurement protest, may the Court exercise jurisdiction under the CICA in conjunction with 28 U.S.C. § 1331.

**I. Whether Fire-Trol's Action is a Bid or Procurement Protest Under the ADRA.**

The ADRA reads in pertinent part:

> Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). Initially, the ADRA granted jurisdiction to both the United States Court of Federal Claims and the Untied States District Courts. However, Congress included a sunset clause that terminated the jurisdiction of the district courts on January 1, 2001. *See* Pub.L. No. 104-320, § 12(d), 110 Stat. at 3875. The Court of Federal Claims now

---

action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

[3] 28 U.S.C. § 1331 states that, "The district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

has exclusive jurisdiction over any cases filed after that date. *See Id.* This action was filed on October 21, 2003. Therefore, if this is an action in which the ADRA applies, jurisdiction lies exclusively in the Court of Federal Claims.

The Forest Service argues that this is an action covered by the ADRA because it has merely made a procurement decision that it will not procure for government use wildland fire retardants that contain YP Soda or retardants that do not contain gum thickeners. It contends that when a Federal agency determines its own procurement requirements prior to issuing government contract solicitations, that is not a "rulemaking" under the APA.

In its Complaint, Fire-Trol alleges that the Forest Service failed to comply with the requirements of 5 U.S.C. § 553, 41 U.S.C. § 253(c), and Federal Acquisition Regulation ("FAR") Part 9, subpart 2.06-1(e)(1).[4] If Fire-Trol has alleged a violation of a statute or regulation in connection with a procurement or proposed procurement, then the claim is covered by the ADRA. The operative phrase "in connection with" is very sweeping in scope. *Ramcor Services Group, Inc. v. U.S.*, 185 F.3d 1286, 1289, (Fed. Cir. 1999). As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction. *Id.* This reasoning applies with equal force to alleged violations of regulations. *ES-KO, Inc. v. U.S.*, 44 Fed. Cl. 429, 432 (1999). The contested actions and decisions by the Forest Service are directly connected to its proposed procurement of fire retardant. Each of the statutes and the regulation, if applicable, would significantly affect the process leading up to the 2005 procurement and possibly the ultimate award. The Court has little difficulty concluding that the statutes and regulations at issue in this case are "in connection with a proposed procurement". It is also important to note that the subchapter containing 41 U.S.C. § 253(c) is entitled "Procurement Provisions", and FAR part 9, subpart 2.06-1(e)(1) specifically refers to "acquisitions" made by contracting officers.

---

[4] 5 U.S.C. § 553 establishes administrative procedures for issuing public notices of administrative rule making, 41 U.S.C. § 253(c) establishes competition procedures in conducting procurements, and FAR 9.206-1(e)(1) establishes the required actions by a contracting officer in acquisitions subject to a qualification requirement.

Because Fire-Trol has alleged the violation of a statute or regulation in connection with a procurement or proposed procurement, judicial review is appropriate under the ADRA. However, because of the sunset clause that terminated the jurisdiction of the district courts on January 1, 2001, the Court no longer has jurisdiction over Fire-Trol's claims.

**II. Whether the District Courts have Retained Any Jurisdiction Over Procurement Protests Under the APA.**

Fire-Trol urges that the Court has jurisdiction over its APA claims. It cites *Califano v. Sanders*, 430 U.S. 99, 105 (1977), for the proposition that it is well established that district courts have jurisdiction over APA claims pursuant to 28 U.S.C. § 1331. There is little doubt that the Court would have had jurisdiction over an APA action by Fire-Trol under the *Scanwell* doctrine prior to enactment of the ADRA. The D.C. Circuit in *Scanwell Laboratories v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970), held that the district courts have jurisdiction over bid protests under the APA. However, case law analyzing the ADRA's legislative history makes it clear that Congress intended that the ADRA would "subsume" any causes of action in the realm of procurement protests formerly arising under *Scanwell* and the APA. *Emery Worldwide Airlines, Inc. v. U.S.*, 264 F.3d 1071, 1079-80; *Novell, Inc. v. U.S.*, 109 F.Supp.2d 22, 24-25 (D.D.C. 2000). It would defeat the purpose of the sunset clause if procurement protest cases could still be brought in district court under the APA. *Novell*, 109 F.Supp.2d at 24-25. Because the Court finds that Fire-Trol alleges the violation of a statute or regulation in connection with a proposed procurement, under the ADRA, the Court of Federal Claims has exclusive jurisdiction. Therefore, the jurisdiction granted the Court under § 1331 and the waiver of sovereign immunity in the APA have been preempted.

**III. Whether the Court has Jurisdiction Over this Action Under the APA if the Forest Service Established a "Rule".**

Fire-Trol contends that the decision by the Forest Service regarding the contents of the fire retardant it will procure amounts to the establishment of a "rule" under the APA. They argue that because the Forest Service established a rule it must comply with the notice

and public procedure requirements of 5 U.S.C. § 553. However, even if the decisions by the Forest Service do amount to the establishment of a "rule", and the Forest Service violated § 553, jurisdiction does not exist in the District Court.[5] Under § 702 of the APA, a person suffering legal wrong or adversely affected by agency action is entitled to review thereof. 5 U.S.C. § 702. However, § 704 of the APA, entitled "Actions Reviewable", establishes that only "Agency actions made reviewable by statute and *final agency action for which there is no other adequate remedy in a court* are subject to judicial review" under the APA. 5 U.S.C. § 704 (emphasis added). The general grant of review in the APA does not provide additional judicial remedies in situations in which Congress has already provided special and adequate review procedures. *Bowen v. Massachusetts*, 487 U.S. 879, 902 (1988).

As already noted, the Court of Federal Claims has jurisdiction under the ADRA because Fire-Trol alleges the violation of statutes and regulations (including § 553) in connection with a proposed procurement. The only remedies Fire-Trol seeks in this case are declaratory and injunctive relief, both of which the Court of Federal Claims may grant under § 1491(b)(2) of the ADRA. *See* 5 U.S.C. § 1491(b)(2). Furthermore, § 1491(b)(4) of the ADRA expressly adopts the scope of review for agency actions found under § 706 of the APA.[6] *See* 5 U.S.C. § 1491(b)(4). Because Congress has provided an adequate remedy in

---

[5] Both parties seem to assume that the establishment of a rule and the existence of a procurement protest are mutually exclusive. The Court disagrees that both cannot exist simultaneously. For example, an agency may establish a rule, which effects a proposed procurement, thereby creating a procurement protest.

[6] Under § 706(2) of the ADRA, the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be:
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute;
(F) unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court.

the Court of Federal Claims over this action, the general grant of review in § 702 of the APA does not vest the Court with jurisdiction pursuant to 28 U.S.C. §1331.[7]

**IV. Whether the District Courts have Retained Any Jurisdiction Over Procurement Protests Under the CICA.**

Fire-Trol also argues that the Court has jurisdiction over its CICA claims under 28 U.S.C. § 1331 because jurisdiction has not been committed to any other forum. Prior to 1996, CICA provided that an "interested party" could file a protest concerning an "alleged violation of a procurement statute or regulation" with the Comptroller General, in District Court, or in the Court of Federal Claims. 31 U.S.C. §§ 3552, 3556; *See Waste Management of North America, Inc. v. Weinberger*, 862 F.2d 1393, 1396 (9th Cir. 1988). However, in 1996, Congress inserted a sunset clause into § 3556 which is directly dependent upon the sunset clause found in §1491 of the ADRA. *See* Pub.L. 104-320 § 12(f), 110 Stat. 3876. The sunset clause provides:

> "In the event that the bid protest jurisdiction of the district courts of the United States is terminated pursuant to subsection (d) [section 12(d) of Pub.L. 104-320 set out as a note under section 1491 of Title 28, Judiciary and Judicial Procedure], then section 3556 of title 31, United States Code [this section], shall be amended by striking 'a court of the United States or' in the first sentence.".

*Id.* Therefore, when the jurisdiction of the district courts expired under the ADRA on January 1, 2001, it also expired under the CICA. Like the APA sunset clause, it would defeat the very purpose of this clause if procurement protest cases could still be brought in district court under the CICA.

Because the Court finds that Fire-Trol has alleged the violation of a statute or regulation in connection with a proposed procurement, this case is a procurement protest.

---

5 U.S.C. § 706(2)(A)-(F).

[7] The Tenth Circuit Court of Appeals recently held that the ADRA only waives sovereign immunity for a suit in the Court of Federal Claims when the suit is brought by an actual or prospective bidder. *City of Albuquerque v. U.S. Dept. of the Interior*, 2004 WL 1664211 (10th Cir.). Because Fire-Trol is a potential bidder in this case, *City of Albuquerque* is inapposite.

Therefore, under the ADRA, jurisdiction lies in the Court of Federal Claims. Furthermore, Congress's failure to renew district court jurisdiction prior to January 1, 2001 is evidence of its intent that any case falling into the category of a procurement protest would be subject to the specific jurisdictional language of the ADRA. Accordingly, the Court cannot exercise jurisdiction over Fire-Trol's claims and the Motion to Dismiss for Lack of Subject Matter Jurisdiction is granted.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant U.S. Department of Agriculture Forest Service's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #215) is granted.

**IT IS FURTHER ORDERED** that Plaintiff's request for a transfer of the case to the Court of Federal Claims pursuant to 28 U.S.C. 1631 is denied.

DATED this 12 day of ~~July,~~ AUG 2004.

James A. Teilborg
United States District Judge

# EXHIBIT "AF"

To: FS Director of Fire and Aviation

Subject: Liquid Concentrate Retardant

Date: 12/15/2000

The Airtanker Industry and the Lead Plane Pilots are a group comprised of approximately 140 professional pilots who collectively have many years of experience in delivering the liquid concentrate and gum thickened products to numerous fires. An excerpt from the minutes of their recent meeting indicated 100% consensus among the pilots and the air attacks who attended. Both groups believe that the liquid concentrate product is a far more enhanced product than the gum thickened products that have been recently adopted by the USFS.

Our years of experience in the field have proven that the liquid concentrate is a far superior product and should not be eliminated from the field. Liquid concentrate is the preferred product of choice due to the fact that it is generally more effective in stopping the advancement of fires than the gum thicken products.

Please re-consider your decision to exclusively utilize the gum-thickened product on wildfires. Please allow us to provide you feedback on the re evaluation of your decision.

Signed by,

Mike Lynn

Steven Maxwell

Andrew Brucker

Mark Timmons

Gene Wahlstrom

Kristen A. Sulberne

Thomas L. Risk

Bill Waldman

Brent Conner

Duane Powers Hawkins & Powers Aviation

USFS RAO R-10 Scott M. Fairchild

Dennis W Brown FAO KNF R-5

Bill Rue

Gary Fowle

Steve Howland

Connie Wirth

James M Barnes

Benny Crawford

Edward Foote

(Gordon Koenig's)

Scott Firestone

At 66

Rusty Harris

John Giller

Robert A. Baur

Bruce R-S Wicks TNF

L11