PAUL F. DAUER (CALIFORNIA BAR NO. 37428)
LAW OFFICES OF PAUL F. DAUER
400 CAPITOL MALL, SUITE 2950
SACRAMENTO, CA 95814
TELEPHONE: (916) 448-2431
FACSIMILE: (916) 448-2462
EMAIL: PFDAUER@PFDATTY.COM

JENNIFER L. MCCREADY (CALIFORNIA BAR NO. 179262)
LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814
TELEPHONE: (916) 325-4000
FACSIMILE: (916) 325-4010
EMAIL: JENNIFER.MCCREADY@BBKLAW.COM

Attorneys for Plaintiff
FIRE-TROL HOLDINGS LLC

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FIRE-TROL HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES<br><br>Defendant. | Case No.: 04-1389-C<br>Judge George Miller<br><br>**DECLARATION OF ROBERT L. CROUCH IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

# DECLARATION OF ROBERT L. CROUCH

I, ROBERT L. CROUCH, declare as follows:

1. I am an independent consulting chemist. I have a B.A. in chemistry and physics from Milton College, Milton, Wisconsin, an M.A. in chemistry from Drake University, and a Ph.D. in chemistry from Arizona State University. I am president and chief chemist of Analytical Laboratory Services, Inc., 318 Kaler Drive, Phoenix, Arizona, 85020. I have held that position from 1985 to the present. Analytical Laboratory Services provides services to clients in the chemical industry, including scientific and technical consulting on chemically related issues, EPA good laboratory practice compliance, chemical methods development, and research and development. I have served as an expert witness within the area of these services on behalf of plaintiffs and defendants. Based on my training and experience I am a specialist in formulations chemistry for wildland fire retardants and suppressant products.

2. Between 1977 and 1979, I served as the research and development manager for Chemonics Industries of Phoenix, Arizona, the predecessor to Fire-Trol Holdings, LLC ("Fire-Trol"). In that capacity, I managed the research and development program for the Fire-Trol product line, addressing issues including, but not limited to, corrosion, rheology, and effectiveness. I have been involved in consulting with Fire-Trol or its predecessors on formulating and testing wildland fire retardants since 1979. I have been Research and Development Manager under contract for Fire-Trol since 1995.

3. All wildland fire retardants that the USFS has contracts to purchase contain substantial amounts of ammonium salts. The retardants will release ammonia when exposed to water, and ammonia is highly toxic to fish. I monitor use and reported incidents related to retardant drops, and I am aware of only very

few incidents in which retardant is erroneously dropped into surface waters and fish are killed as a result. Of the few incidents of fish kills, none of those of which I am aware have been scientifically demonstrated to be caused by anything other than the ammonia present in all retardants.

4. I contract with Fire-Trol to oversee the formulation of Fire-Trol retardants and arrange for Fire-Trol retardants to be tested by the United States Forest Service ("USFS") for compliance with USFS Specification 5100-304b (January 2000) ("Specification").

5. Pursuant to the Specification, all wildland fire retardants must meet certain anti-corrosion standards. The salts that are the effective ingredient in the qualified retardants are corrosive to aluminum, steel, and/or other metals that are used in the storage, mixing, and delivery of wildland fire retardants. Thus, all products purchased by the USFS contain one or more corrosion inhibitors to meet the anti-corrosion standards. There are only a few chemicals which will effectively retard the corrosive nature of the retardant salts and that are also environmentally acceptable, cost effective, and otherwise available for use in retardants.

6. Sodium ferrocyanide (also known as yellow prussiate of soda, or "YP Soda") is one of the only effective ingredients to inhibit corrosion in storage tanks and in the aircraft that deliver retardant. YP Soda is also added to table salt and road salt to inhibit corrosion and/or to prevent "caking." YP Soda is the corrosion inhibitor used by Fire-Trol in all of its wildland fire retardants that have been found to meet the Specification. Fire-Trol has successfully used YP Soda as its corrosion inhibitor in retardants sold to the USFS for as long as I have been working with Fire-Trol and its predecessors.

7. The Specification mandates detailed testing, including ninety-day corrosion tests following a one-year shelf life test, and combustion retarding effectiveness testing, sometimes called "burn testing." Because of the laboratory testing requirements, the absolute minimum time to complete testing of a retardant,

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

if no field test is required, is approximately eighteen months. Historically, the minimum time period to qualify a retardant, if the USFS does not require a field test, has been about two years. If a field test is required, it can require three or more years to complete testing and demonstrate that the retardant will perform to USFS standards stated in the Specification.

8. Products which have been tested by the USFS and are deemed to meet the requirements of Specification 5100-304b are listed on the USFS wildland fire retardant qualified products list ("QPL"). The USFS, Bureau of Land Management, and other government entities, such as the State of California, use the Specification and QPL in the acquisition of retardants.

9. Fire-Trol products on the QPL include Fire-Trol® GTS-R, a gum-thickened dry concentrate (powder), and Fire-Trol® LCA-R and LCG-R, wet (liquid) concentrates that do not contain any gum thickener. These products are long-term fire retardants. Fire-Trol's only gum-thickened long-term retardant is its high viscosity, Fire-Trol® GTS-R.

10. Fire-Trol does not have any gum-thickened liquid concentrate on the QPL. However, for as long as I have been working for Fire-Trol, the USFS has been successfully applying Fire-Trol's non-gum-thickened liquid concentrate retardants to USFS lands.

11. There are two general types of phosphate salts that are used in wildland fire retardants: ammonium polyphosphates and ammonium orthophosphates. Ammonium polyphosphates demonstrate visco-elastic properties without the addition of gum thickener. Orthophosphates do not demonstrate such properties, so thickeners, such as guar gum, are added to provide viscosity or elasticity to the retardant. Thickeners may also be added to ammonium polyphosphate retardants to alter the viscosity and elasticity characteristics of the non-thickened retardant. However, a 100 centipoise ammonium polyphosphate retardant will likely behave differently from a 100 centipoise orthophosphate

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

retardant because of the differing rheological properties of the underlying retardant salt. As I understand the USFS' rule requiring gum-thickener, it does not distinguish between ammonium polyphosphate retardants and orthophosphate retardants, even though the USFS acknowledges that ammonium polyphosphates have inherent visco-elastic properties.

12. I understand that the USFS based its rule requiring gum thickener in retardants on a comparison between water and gum-thickened retardants. The characteristics of water, which has a viscosity of 1 centipoise, are materially different from the characteristics of Fire-Trol's liquid concentrate retardants, which contain ammonium polyphosphate. Fire-Trol's liquid concentrate retardants demonstrate visco-elastic properties, whereas water does not.

13. On March 28, 2000, the USFS suspended purchases of Fire-Trol's wildland fire retardants under the then-current contracts because the retardants contain YP Soda. Less than a month after suspending purchases of Fire-Trol retardants, the USFS acknowledged that its suspension of purchases from Fire-Trol was unfounded and resumed purchasing Fire-Trol fire retardants. Ms. Alice Forbes, then Branch Chief for Fire Equipment and Chemicals, USDA Forest Service, informed me on April 3, 2000 that the USFS' decision not to purchase retardant containing YP Soda was based on the U.S. Geological Survey, Columbia Environmental Research Center study titled *The Effects of UVB Radiation on the Toxicity of Fire-fighting Chemicals* ("USGS 2000 Study").

14. At the December 2000 and December 2001 annual fire retardant chemicals meetings in Reno, Nevada, Ms. Alice Forbes informed me that the USFS would not test any wildland fire retardant formulas containing YP Soda because of the USFS' ban on YP Soda.

15. Ms. Forbes' statements are consistent with a May 9, 2002 email from Paul Solarz, USFS Branch Chief, Equipment and Chemicals. Fire-Trol obtained that email from the USFS in a Freedom of Information Act request. Mr. Solarz

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

states that he is "not interested in testing any product that contains [YP Soda]." A true and correct copy of that email, which I obtained through a Freedom of Information Act request, is attached hereto as Exhibit A.

16. Ms. Forbes' statements are also consistent with the earlier statement of Cecilia Johnson, the project leader for the USFS' Wildland Fire Chemicals Systems at the Missoula Technology Development Center, following a 1999-2000 Coeur d'Alene, Idaho field test of FIRE-TROL® 931-R. Ms. Johnson informed me that the USFS would not conduct an operational field evaluation of a Fire-Trol retardant, FTR (sister formula to 931-R), because it contained YP Soda and the USFS would not be purchasing retardants containing YP Soda in or after 2004.

17. Because Fire-Trol's non-gum-thickened retardants are dropped from an altitude deemed safe by the USFS, a rule requiring gum thickener resulting in at least a 100 centipoise viscosity will not affect whether the retardants are dropped from a safe altitude.

18. The principle that gum thickener does not penetrate or inhibits coating the fuel load is acknowledged by the fact that the USFS chemically breaks down the gum thickener before spraying the retardant on the fuel load in Specification 5100-304b's combustion retarding effectiveness test.

19. On behalf of Fire-Trol, I have repeatedly requested that the USFS change its rules banning YP Soda and requiring gum thickener. Since publicly announcing, in June 2000, its rules banning purchases of retardants containing YP Soda and requiring gum thickener, no person from the USFS has ever indicated to me any willingness to reconsider the USFS rules, other than to defer implementation of the rules until the 2005 procurement.

20. I am unaware of any new or modified Specification, incorporating the USFS' rules on YP Soda and gum thickener, that has been adopted by the USFS for qualifying wildland fire retardants. Fire-Trol was informally provided with a draft 5100-304c specification in late December 2002, and provided comments in

the six-week time period allowed by the USFS. I have not received or seen any response to those comments, and I have not seen any revised 5100-304c specification.

21. I understand from an email I received in mid-July, 2004 from Ms. Tory Henderson at the USFS that the draft specification 5100-304c is still being revised. I understand from prior USFS representations, including the July 19, 2002 letter from Alan Groesbeck, that the USFS will not amend the Specification or adopt a new specification without first complying with Federal Acquisition Regulations governing such specifications and other statutes, such as the Administrative Procedure Act, which apply to USFS rulemaking. That is, I expect that, once the draft specification is finalized, parties such as Fire-Trol, environmental groups, private landowners, and other interested parties will be given notice and have the opportunity to comment on the proposed revised or new specification.

22. I have not seen or been informed of any notice of proposed rule-making published in the Federal Register or on the USFS website indicating that the USFS was intending to adopt a revised wildland fire retardant specification, that the USFS was intending to adopt a rule banning YP Soda in fire retardants, or that the USFS was intending to adopt a rule requiring gum thickener in fire retardants.

23. The draft 5100-304c specification included a combustion retarding effectiveness standard that would require manufacturers to increase the amount of retarding salts, either by re-formulating their retardants or by changing the dilution ratio on an existing retardant.

24. A formula which is altered from the current approved formula must be tested (under either the current 5100-304b Specification or the draft 5100-304c specification) for combustion retarding effectiveness, stability, storability, corrosivity, and other laboratory tests, as well as possibly being subject to an

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

operational field test, before it could be listed as a qualified product and purchased in a competitive procurement. Even if a new or revised specification were adopted immediately, no product could complete testing under the new specification before the procurement cycle for the 2007 to 2009 retardant contracts (the contracts likely solicited in the fall of 2006 and awarded in late 2006 or early 2007). The USFS has not given Fire-Trol (or any other potential manufacturer) sufficient time to qualify retardants under a 5100-304c (or other) revised specification prior to award of the 2005, or even the 2006, retardant contracts.

25. Even if the manufacturers simply alter the dilution ratio to raise the salt content of the mixed retardant, the retardant still would have to undergo certain tests to demonstrate that it meets Specification requirements. Those tests include the combustion retarding effectiveness, stability, storability, corrosivity, and other tests that must be performed on mixed retardant. Thus, even if a new or revised specification were adopted immediately, no liquid concentrate product using a new dilution ratio could complete testing under the new specification before at least the procurement cycle for the 2006 to 2008 retardant contracts (the contracts likely solicited in the fall of 2005 and awarded in late 2005 or early 2006). It is more likely, given the resource demands and delays inherent in testing, that no liquid concentrate product could be tested and approved until the procurement cycle for the 2007 to 2009 retardant contracts. No powder retardant using a new dilution ratio could complete testing under the new specification before at least the procurement cycle for the 2007 to 2009 retardant contracts (the contracts likely solicited in the fall of 2006 and awarded in late 2006 or early 2007).

26. In order to reserve time in the burn chamber, the USFS requires that manufacturers identify what retardant they intend to test. The USFS then schedules time in the burn chamber, usually in the spring or summer of the year before the test will be conducted. Because the demand for burn chamber time is high, and there is no other facility that can perform the test, a manufacturer that

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

does not have time reserved sufficiently in advance of the test is likely to be precluded from access to the burn chamber. For example, in connection with a protest, Fire-Trol sought to have certain retardants burn tested in about March 2004. The USFS indicated to the Court of Federal Claims that all burn chamber time, and all available pine needles, had already been committed for burn chamber time during 2004.

27. I requested burn chamber time in 2005 to verify that certain Fire-Trol retardants meet the Specification 5100-304b combustion retarding effectiveness standard. The USFS denied Fire-Trol burn chamber time. A true and correct copy of that letter denying burn chamber time is attached hereto as Exhibit B.

28. Because I do not know what the new or revised specification standard will be for combustion retarding effectiveness, I cannot formulate a retardant (or determine a different mix ratio) and reserve burn chamber time to have the USFS conduct the combustion retarding effectiveness test on the retardant. Because the standard has not yet been adopted, it is likely that no burn chamber time will be available to test retardants to any new standard before 2006. Thus, the earliest that a new retardant (or retardant with a modified mix ratio) could complete testing would be for the 2006 procurement cycle.

29. The draft 5100-304c specification provided to Fire-Trol did not include a ban on YP Soda or a requirement for gum thickener. However, the USFS is informally applying those rules by refusing to test Fire-Trol products containing YP Soda or lacking gum thickener.

30. The draft 5100-304c specification did include an alternative means for meeting the Specification's combustion retarding effectiveness standard and an alternative means of conducting a "monitor level" operational field evaluation. Although no new specification has been published or adopted, I am aware that the USFS is listing products without conducting combustion retarding effectiveness testing on the formulas, and that they are listing products as fully qualified subject

to the informally implemented alternative monitor level operational field evaluation (now called a "modified LAQA" procedure). Based on this activity and the USFS' rules discussed above, I believe that the USFS intends to implement the ban on YP Soda and requirement for gum thickener without modifying the current Specification or adopting a new specification for wildland fire retardants.

31. Because Fire-Trol uses YP Soda in all of our wildland fire retardants on the QPL, implementation of the rule banning retardants containing YP Soda will entirely preclude Fire-Trol from competing in the upcoming 2005 "bulk" and "full service" procurements and will prevent Fire-Trol from selling retardants on the FOB Origin contracts. This will result in only Astaris (or parties to whom Astaris sells) being able to bid on new contracts or provide product under the FOB Origin contracts.

32. I have not seen and am not aware of any notice from the USFS that they are removing any of Fire-Trol's retardants from the existing QPL. Nobody from the USFS has ever informed me, and I am not aware of anyone from the USFS informing anyone else at Fire-Trol, that any of Fire-Trol's qualified retardants listed on the QPL do not meet the requirements of Specification 5100-304b. To my knowledge, there is no basis for removing any of Fire-Trol's retardants from the QPL.

33. I am aware that the USFS commissioned certain studies on wildland fire retardants by the USGS which were completed in 2002. I have reviewed those studies and am familiar with their contents. I have certain concerns with the studies that I believe would affect the authors' conclusions. For example, the studies generally assumed that retardant would be introduced into aquatic environments through run-off, but identified no basis for concluding that any significant amounts of retardant chemicals actually reach aquatic environments through run-off. My own research into four major fires reflects that amounts of retardant that may reach streams through run-off are not significant enough to

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

substantially affect the health of fish in the streams. A true and correct copy of that study is attached as Exhibit X to the Memorandum of Points and Authorities filed herewith.

34. My research shows that the most likely cause of harm to fish in aquatic environments during and following wildland fires is the fire itself. Wildland fires result in naturally-occurring cyanide and other harmful byproducts, such as ammonia, heat, and ash. The 2002 studies recognized that heat and ash are likely to cause fish mortality. The 2002 studies did not consider the effects of naturally-occurring cyanide or ammonia on fish mortality.

35. Exhibits to the Motion for Preliminary Injunction include true and correct copies of the following documents:

a. Exhibit A: November 5, 2003 Qualified Products List;

b. Exhibit B: USFS Specification 5100-304b

c. Exhibits J and K: letters I received from the USFS with respect to the ban on YP Soda and requirement for gum thickener

d. Exhibit X: “Comparison of the effects of wildfire and wildland fire retardant application on post-fire surface water quality,” a report I co-authored.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and if called as a witness, I could competently testify to the foregoing facts from my own personal knowledge if called upon to do so.

Executed at Phoenix, Arizona, on September 3 2004.

s/Robert L. Crouch
ROBERT L. CROUCH

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814