PAUL F. DAUER (CALIFORNIA BAR NO. 37428)
LAW OFFICES OF PAUL F. DAUER
400 CAPITOL MALL, SUITE 2950
SACRAMENTO, CA 95814
TELEPHONE: (916) 448-2431
FACSIMILE: (916) 448-2462
EMAIL: PFDAUER@PFDATTY.COM

JENNIFER L. MCCREADY (CALIFORNIA BAR NO. 179262)
LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814
TELEPHONE: (916) 325-4000
FACSIMILE: (916) 325-4010
EMAIL: JENNIFER.MCCREADY@BBKLAW.COM

Attorneys for Plaintiff
FIRE-TROL HOLDINGS LLC

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FIRE-TROL HOLDINGS LLC,<br>Plaintiff,<br>v.<br>UNITED STATES<br>Defendant. | Case No.: 04-1389-C<br>Judge George Miller<br><br>**DECLARATION OF JOE GRIGEL IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

**DECLARATION OF JOE GRIGEL**

I, JOE GRIGEL, declare as follows:

1. I am the General Manager of Fire-Trol Holdings, LLC ("Fire-Trol") and have served in that position and in the same position for its predecessor companies for about 22 years. My duties include being generally responsible for all aspects of operating the business, including making pricing decisions with respect to bids of Fire-Trol products. I make this declaration of my own personal knowledge, and, if called upon as a witness to testify in this matter, I could and would testify competently to the matters stated herein.

2. Fire-Trol is principally involved in the manufacture and sale of firefighting chemicals, including foams, gels, and both powder and liquid retardants. Fire-Trol designs and manufactures its wildland fire retardants to meet United States Forest Service ("USFS") Specification 5100-304b (January 2000) ("Specification"). That Specification mandates detailed testing, including a ninety-day corrosion test using retardant which has been stored for one year. Because of the laboratory testing requirements, the absolute minimum time to complete testing of a retardant, if no field test is required, is approximately eighteen months. Practically, the minimum time period to qualify a retardant, if the USFS does not require a field test, is two years. If a field test is required, it can require three or more years to complete testing and demonstrate that the retardant will perform to USFS standards stated in the Specification.

3. Products which have been tested by the USFS and deemed to meet the requirements of Specification 5100-304b are listed on the USFS wildland fire retardant qualified products list ("QPL"). The USFS, Bureau of Land Management ("BLM"), and other government entities, such as the State of California, use the Specification and QPL in the acquisition of retardants.

4. Fire-Trol products on the QPL include Fire-Trol® GTS-R, a gum thickened dry concentrate, and Fire-Trol® LCA-R and LCG-R, non-gum-thickened wet (liquid) concentrates. These products are long-term fire retardants. Each of these retardants uses sodium ferrocyanide (also known as yellow prussiate of soda, or "YP Soda") as a corrosion inhibitor. In fact, Fire-Trol uses YP Soda as the corrosion inhibitor in all of its wildland fire retardants which meet the Specification, and has successfully used YP Soda as its corrosion inhibitor in retardants sold to the USFS for the past 30 years.

5. Fire-Trol does not have any gum-thickened liquid concentrate on the QPL. For the last 30 years, the USFS has been purchasing and applying Fire-Trol® non-gum-thickened liquid concentrate fire retardants containing YP Soda to public lands to control wildland fires.

6. Fire-Trol and Astaris, or their predecessors, have been the exclusive manufacturers of long-term chemical wildland fire retardants meeting the USFS' requirements since the conception of the retardant program in the 1960s. The sole exception was a short period in the mid-1980s when another competitor entered the market, but that competitor was ultimately unsuccessful.

7. From my conversations with numerous air tanker pilots and agency (USFS and BLM) air attack personnel, I understand that Fire-Trol's retardants can be accurately dropped to reach their target from altitudes at, or higher than, the minimum safe altitude established by the USFS.

8. Since 1986, the USFS has purchased wildland fire retardants through competitive procurements, awarding requirements contracts at USFS and BLM fire fighting bases on a firebase-by-firebase basis. The USFS conducts one procurement for the purchase of "bulk" retardant and another procurement for "full service" contracts, delivering the retardant "mixed and loaded" onto aircraft at specified bases. The USFS also conducts a separate procurement for retardant

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

delivered "FOB Origin" from which it can place individual orders for retardant for temporary bases, helicopters, and single engine air tanker ("SEAT") aircraft.

9. The USFS historically has required bidders to bid products which are compliant with Specification 5100-304b or its predecessor specifications.

10. Except in the most recent procurement, contracts have generally been awarded for one year terms with two one-year extension options. The options have historically been exercised, resulting in a total of a three-year contract cycle.

11. In the most recent procurements, in which contracts were entered into in February 2004, the USFS awarded bulk and full service contracts for potentially different durations – a one-year term, a one-year term with a one-year extension option, and a one-year term with two one-year extension options. I was informed by USFS personnel, including Alice Forbes, that the purpose in awarding the contracts with differing terms was to stagger the awards and allow for approximately one-third of the volume of retardant to be reprocured each year, rather than 100% of the contracts being reprocured every three years. I was also informed that the USFS intends to resume awarding contracts for one base year and two option years beginning with the 2005 procurements. Assuming those procurements follow the historical pattern, the solicitations will be issued in the third or fourth quarter of 2004 for the 2005 through 2007 contract cycle.

12. On March 28, 2000, the USFS suspended purchases of Fire-Trol's wildland fire retardants under the then-current contracts because the retardants contain YP Soda. At a meeting between Fire-Trol and the USFS on April 3, 2000, Fire-Trol pointed out to the USFS that they were not in violation of EPA standards in using Fire-Trol retardants. Less than a month after suspending purchases of Fire-Trol retardants, the USFS agreed with Fire-Trol that the retardants were not violating EPA standards, acknowledged that its suspension of purchases from Fire-Trol was legally unfounded, and resumed purchasing Fire-Trol fire retardants.

13. In late May 2000, only a month after resuming purchases of Fire-Trol retardants, the USFS' Alice Forbes informed me that the USFS would not purchase wildland fire retardants containing YP Soda beginning in 2004. She stated that the USFS' decision not to purchase retardant containing YP Soda was based on the U.S. Geological Survey, Columbia Environmental Research Center study titled *The Effects of UVB Radiation on the Toxicity of Fire-fighting Chemicals* ("USGS 2000 Study").

14. In addition, following a 1999-2000 Coeur d'Alene, Idaho field test of Fire-Trol 931-R, Cecilia Johnson, the project leader for the Forest Service's Fire Chemicals Laboratory at the Missoula Technology Development Center, stated to me that the Forest Service would not conduct an operational field evaluation of a Fire-Trol retardant, FTR (sister formula to 931-R), because it contained YP Soda and the Forest Service would not be purchasing retardants containing YP Soda starting in 2004.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

15. After receiving the June 1, 2000 letter from the USFS informing me that the USFS would require gum thickener in all retardants, I asked Ms. Forbes for the basis for this rule. Ms. Forbes told me that the USFS believes that gum-thickened retardants can be dropped from higher drop-heights with more retardant reaching the "ground."

16. The USFS rule requiring gum thickener is unfounded for two principal reasons. First, Fire-Trol's non-gum-thickened retardants are dropped from an altitude deemed safe by the USFS. The USFS has no data that I am aware of from which to conclude that a 100 centipoise gum-thickened retardant optimally would be dropped from any greater altitude than Fire-Trol's non-gum-thickened retardants. A rule requiring gum thickener resulting in at least a 100 centipoise viscosity will not affect whether the retardants are dropped from a safe altitude.

17. Second, it is my understanding that the USFS is basing its conclusion about "more" retardant reaching the ground on USFS studies in which the USFS

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

drops retardant over a large, flat area and measures how much retardant is collected in cups placed on a grid. I am unaware of any study in which the USFS has measured retardants of approximately 100 centipoise viscosity to determine whether "more" retardant reaches the ground. (Fire-Trol has made Freedom of Information Act requests in which such a study, if it existed, should have been disclosed.)

18. The USFS' air tanker drop tests of which I am aware do not take into account the fact that fire fighting takes place over a three-dimensional "fuel load" (*e.g.,* trees, bushes, and grasses) which must be adequately coated in order to form an effective fire line. A study demonstrating how much retardant will land in a cup, unimpeded by vegetation, is wholly unrelated to the question of whether, in actual fire-fighting situations, sufficient retardant will reach and coat the fuel load to adequately control or affect the fire.

19. The principle that gum thickener does not penetrate or inhibits coating the fuel load is acknowledged by the fact that the USFS breaks down the gum thickener before spraying the retardant on the fuel load in Specification 5100-304b's combustion retarding effectiveness test.

20. I have repeatedly requested that the USFS change its rules banning YP Soda and requiring gum thickener. Since publicly announcing, in June 2000, its rules banning purchases of retardants containing YP Soda and requiring gum thickener, no person from the USFS has ever indicated to me any willingness to reconsider the USFS rules, other than to defer implementation of the rules until the 2005 procurement.

21. Because Fire-Trol uses YP Soda in all of our wildland fire retardants on the QPL, implementation of the rule banning retardants containing YP Soda will entirely preclude Fire-Trol from competing in the upcoming 2005 "bulk" and "full service" procurements. Those procurements will involve at least one-third of the USFS' retardant needs, based on the contracts expiring in 2005 without any

extension options. The contracts held by Fire-Trol which will necessarily be reprocured in 2005 were evaluated in the last procurement at almost 5 million gallons worth of retardant.

22. In addition, Fire-Trol sells approximately 2 million to 3 million gallons of retardant each year on the FOB Origin contract, which was issued in 2004 for one year with two one-year options. Orders are placed on that contract on an as-needed basis. If the USFS implements its rules banning YP Soda and requiring gum thickener in 2005, I understand that the USFS rules would prevent the USFS from ordering Fire-Trol retardants off its FOB Origin contract. Thus, even if the option were exercised and the contract extended, Fire-Trol is likely to lose 2 to 3 million gallons of FOB Origin contract retardant orders if the USFS proceeds to implement its rules banning YP Soda and requiring gum thickener in 2005.

23. Although the USFS historically has exercised the options to renew the bulk contract (including the FOB Origin contract) and full service contract, it is possible that the options would not be exercised and all of Fire-Trol's bulk, full service, and FOB Origin contracts could be reprocured in 2005. Because the rules banning YP Soda and requiring gum thickener would bar the USFS from ordering Fire-Trol products off the FOB Origin contract, I believe that it is likely that the USFS would not exercise the option to extend that contract.

24. Assuming that, in the 2005 procurement, the USFS follows historical precedent of awarding one year contracts with two one-year options, application of the USFS' rules challenged in this action to the 2005 procurement will effectively bar Fire-Trol from at least one-third of the market at fixed bases (bulk and full service contracts) for three years.

25. Fire-Trol currently has the contracts for seven of the bases at which the bulk contracts necessarily will be reprocured and six of the bases at which the full service contracts necessarily will be reprocured.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

26. Five of the seven "bulk" bases and three of the six "full service" bases are for the supply of Fire-Trol's liquid concentrate retardant. Because it will be more costly for Fire-Trol to bid its gum-thickened powder retardant, and given the close competition in the last procurement, Fire-Trol is likely to lose its existing contract bases if the USFS is permitted to proceed under its rule requiring gum thickener.

27. If the USFS implements its rule banning YP Soda in the 2005 procurements, Fire-Trol is assured of losing at least what was evaluated in the last procurements at almost 5 million gallons worth of retardant business – or approximately 38% of its current estimated contract volume with its primary customer. In addition, application of the USFS rules beginning in 2005 will bar Fire-Trol from all of the market for helicopters, SEATs, and temporary bases until this action is resolved, which has historically resulted in 2 million to 3 million gallons of retardant purchases from Fire-Trol. Approximately 85% of Fire-Trol's annual United States income arises from sales under the USFS contracts.

28. If Fire-Trol loses only the bases it serves on contracts expiring in early 2005, Fire-Trol's continued existence will be threatened, as discussed in more detail below. If Fire-Trol loses all of its USFS business through the USFS electing not to exercise the options to renew on Fire-Trol's remaining contracts, Fire-Trol will certainly be put out of business.

29. If the USFS is permitted to proceed under its rule requiring gum thickener, Fire-Trol will be prevented from bidding its most cost-effective product. Often, the difference in bid retardant prices between Fire-Trol and Astaris (or Hunot, which sells Astaris retardants on the full service contracts) is a fraction of a cent to a few cents per gallon. For example, in the most recent procurement, Fire-Trol's bids at LaGrande, Oregon and Jeffco, Colorado were, respectively, 1.9 cents and 1.1 cents below Astaris' bid prices at those bases. At the Coeur D'Alene, Idaho base, Astaris' bid was four-tenths of a cent per gallon lower than Fire-Trol's.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

(*See also* Exhibit Q to the Motion for Preliminary Injunction.) The close competition in the last procurement is typical.

30. In fact, over the past 10 years, the prices for retardant have consistently dropped as a result of the close competition between Fire-Trol and Astaris.

31. Fire-Trol will face a competitive disadvantage if it must bid its one gum-thickened retardant at bases where it currently provides, or would otherwise bid, its liquid concentrate retardant. The powdered, gum-thickened concentrate requires more storage facilities – both for storing the dry powder and for storing the mixed retardant – than the liquid concentrate. It is likely that Fire-Trol would have to re-configure bases to provide for the additional storage, and possibly additional power, requirements. In addition, the retardant is mixed using a batch mixer which is not required for mixing the liquid concentrate retardants. Fire-Trol would have to buy or manufacture additional batch mixers, at additional cost, in order to provide its gum-thickened powder retardant. Fire-Trol also will have to incur the costs of additional training for personnel to learn to use the powdered concentrate mixing equipment. Each of these costs raises the price that Fire-Trol must charge in its bids, making it substantially less likely that Fire-Trol will be the low bidder entitled to the contract. In addition, if Fire-Trol is ultimately successful in this lawsuit, I would likely return to bidding Fire-Trol's non-gum-thickened liquid concentrate at many bases, and Fire-Trol would have little or no practical use for the mixing and storage equipment it would be compelled to purchase to perform contracts under the 2005 procurement. Stated another way, if no preliminary injunction is issued, Fire-Trol may be forced to purchase expensive equipment for which it will have little or no practical use after the 2005 procurement cycle.

32. Even if Fire-Trol loses only a third of its USFS business, the loss of those sales over which to spread its fixed expenses may effectively make it impossible for Fire-Trol to compete for the remaining USFS business.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

33. If Fire-Trol is precluded from bidding on the 2005 to 2007 retardant contracts, Fire-Trol will lose – for three years – more than one-third of the business over which it is now spreading its fixed costs. Fire-Trol will also lose the FOB Origin contract business on which Fire-Trol relies to cover a portion of its fixed costs. If the revenue on the remaining contracts is insufficient to cover the full fixed and variable costs, Fire-Trol's existence will be threatened.

34. Implementation of the rules banning YP Soda and requiring gum thickener will affect the 2006 and 2007 procurements even if Fire-Trol is successful in this action. Fire-Trol will have to bid higher prices than it otherwise would in the 2006 and 2007 procurements to recover its fixed costs because none of those fixed costs will be recovered through contracts awarded for the 2005 to 2007 procurement cycle. That is, there will be fewer purchases over which to spread the same fixed costs. Because Fire-Trol will have to recover additional costs on the 2006 and 2007 contracts, its bid price will necessarily be higher than if Fire-Trol were recovering some of those fixed costs on the 2005 to 2007 contracts. Given how competitive the fire retardant market has been, it is likely that even a small additional cost will prevent Fire-Trol from bidding a competitive price at many fire bases. Thus, preventing Fire-Trol from bidding in the 2005 procurement cycle may severely cripple or even destroy Fire-Trol's business, even if Fire-Trol is ultimately successful in this action.

35. The public will be harmed if Fire-Trol is prevented from participating in the 2005 procurements in that the public will pay more for retardant than it would pay if Fire-Trol were a competitor in the marketplace. I have reviewed and am familiar with bid abstracts prepared by the USFS after the 2004 bids and proposals were opened. These abstracts are included as Exhibits Q and R to the Motion for Preliminary Injunction. Based on those abstracts, if the USFS had awarded all of Fire-Trol's one-year contracts (excluding those with one or two options to extend) to Astaris or Hunot, and had purchased the estimated quantities

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

of retardant used to evaluate bids, the USFS would pay almost $434,000.00 more to purchase retardant than it is paying by awarding the contracts to Fire-Trol. If the USFS had awarded **all** of Fire-Trol's contracts (including those with one or two options to extend) to Astaris or Hunot, and had purchased the estimated quantities of retardant used to evaluate bids, the USFS would pay almost $923,000.00 more per year to purchase retardant than it is paying by awarding the contracts to Fire-Trol. Thus, even if the USFS exercises Fire-Trol's options to extend its current contracts, the USFS is likely to spend at least $434,000.00 more for retardant if Fire-Trol is excluded from the 2005 procurement. Attached hereto as Exhibit A is a true and correct copy of a spreadsheet which I created, based on Exhibits Q and R to the Motion for Preliminary Injunction, demonstrating the cost of retardant to the USFS if it purchased all of the retardant from Astaris.

36. Because Astaris and Hunot will know that they do not face competition, the price differential between what the USFS will have to pay without competition and the pricing it could get with competition will likely be even greater than $434,000.00. If there is no competition, the bidder has no incentive to cut its price in an attempt to win the contract. Based on my experience in this field, lack of competition will lead to higher bid prices and a greater cost to the public.

37. Fire-Trol also sells its retardants to other governments, such as Canadian provinces, European countries, and the State of California, which rely on the USFS' Specification and identification of qualified retardants. These sales account for approximately one-third of Fire-Trol's annual income. Effectively all of Fire-Trol's sales are to government entities that purchase in total or partial reliance on Forest Service Specification 5100-304b.

38. Several Canadian provincial fire suppression agencies have expressed concern over the USFS' decision to ban retardants containing YP Soda. They told me that their concern is that the political pressure arising from the USFS' ban will

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

make it difficult for them to continue to use retardants containing YP Soda banned by the world's largest fire fighting agency (the USFS).

39. In addition, the California Department of Forestry and Fire Protection ("CDF") has been conducting a procurement for wildland fire retardant. That solicitation was recently cancelled, but California has expressed its intent to re-issue a solicitation soon. The recently-cancelled invitation for bids provided that the state would purchase only retardants which comply with Forest Service Specification 5100-304b. In connection with a protest of that solicitation, CDF's Wildland Fire Chemicals Handbook was produced to Fire-Trol. Section 8404.1 of that Handbook (revised September 2003) states that CDF "desires to utilize only those retardant products that do not contain sodium ferrocyanide or other forms of this compound." A true and correct copy of the page from that Handbook including Section 8404.1 is attached hereto as Exhibit B. I believe that this conclusion was based on the USFS' position banning YP Soda.

40. Because almost all Fire-Trol sales are to entities that rely in whole or in part on USFS Specification 5100-304b, the USFS rules requiring gum thickener and banning YP Soda essentially act as a ban on Fire-Trol's fire retardant products worldwide.

41. I am not aware of any study or other report in which the USFS has considered whether Astaris can provide sufficient retardant to supply all of the USFS' and BLM's needs, as well as the needs of other Fire-Trol customers who will have to purchase from Astaris if the USFS' rules are implemented.

42. I have not seen and am not aware of any notice from the USFS that they are removing any of Fire-Trol's retardants from the existing QPL. Nobody from the USFS has ever told me, and I am not aware of anyone from the USFS telling anyone else at Fire-Trol, that any of Fire-Trol's qualified retardants listed on the QPL do not meet the requirements of Specification 5100-304b. To my

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

knowledge, there is no basis for removing any of Fire-Trol's retardants from the QPL.

43. Exhibits to the Motion for Preliminary Injunction include true and correct copies of the following documents:

a. Exhibits C, F, G, H, S, V (excerpt), W (excerpt), Y (excerpt), Z (excerpt), AA, AB (excerpt): true and correct copies of documents I received from the USFS in response to Freedom of Information Act requests;

b. Exhibits D, E, I, L, M, N, Q, R, and AF: documents which I either received personally or which were directed to me as General Manager of Fire-Trol, and which are maintained in Fire-Trol's files

c. Exhibit O: a copy of this letter was forwarded to me by its recipient, Ron Bradley, because its content relates to Fire-Trol Holdings' business with the USFS

d. Exhibit P: I received the redacted version of the document from Fire-Trol's counsel, who I understand maintains a copy of the unredacted version. The unredacted version is subject to a protective order.

e. Exhibit T: Exhibit T is part of the court file in U.S. District Court in Montana in the action *Forest Service Employees for Environmental Ethics v. United States Forest Service* (Case No. 03-165-M-DWM).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and if called as a witness, I could competently testify to the foregoing facts from my own personal knowledge if called upon to do so.

Executed at Kamloops, B.C., on September 3, 2004.

s/Joe Grigel
JOE GRIGEL

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814