IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FIRE-TROL HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-1389C |
| | ) | (Judge George Miller) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**DECLARATION OF VICTORIA HENDERSON**

I, Victoria E. Henderson, declare as follows:

1. My name is Victoria E. Henderson.

2. I am the Branch Chief for Equipment and Chemicals for the Fire and Aviation Management Staff in the headquarters of the United States Department of Agriculture, Forest Service.

3. My duty station is in the National Interagency Fire Center ("NIFC"), in Boise, Idaho.

4. I have been employed by the Forest Service ("FS") for over 24 years. I have been in my current position for 14 months.

5. In my position I work extensively in planning and operations of fire chemicals, including long term fire retardant.

6. I work closely with the Missoula Technology Development Center in Missoula, Montana, and the contracting staff at NIFC with respect to retardant testing and contracting.

7. I initiate the retardant contract with a request for contract action. The Contracting Officer then provides the service to advertise and award the long term fire retardant contracts for both bulk and full service permanent bases.

8. The FS does not consider procurement qualification requirements to be "rules" under the Administrative Procedure Act ("APA"). APA rulemaking, by its very language, does not apply to "a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts."

9. The Agriculture Acquisition Regulation ("AGAR"), codified at 48 CFR Chapter 4, is an example of a USDA "rule or regulation" that, because of its relationship to contracting, is exempted by the APA from rulemaking. Nonetheless the USDA publishes the AGAR and solicits comments in the Federal Register.

10. The Forest Services does not consider the internal determination of its own procurement requirements or its own procurement qualification requirements to be rules within the meaning of the APA. I am not aware of any Federal agency that interprets the determination of its procurement requirements or procurement qualification requirements to be rules within the meaning of the APA. To do so would require publishing every single procurement solicitation and qualification requirement in the Federal Register. As far as I know this is not done by any Federal agency.

11. The establishment of agency procurement requirements is governed by the Federal Acquisition Regulation ("FAR") at Subpart 11.

12. The establishment and amendment of agency procurement qualification requirements is governed by FAR Subpart 9.2.

13. Accordingly, as required by FAR Subpart 9.2 (at 9.202(a) and 9.204), the following steps must be complied with in order for the FS to establish or change the qualification requirement for long term fire retardants.

a) The agency head (or designee) shall prepare a written justification stating the necessity for establishing (or changing) the qualification requirement, and specifying why the qualification requirement must be demonstrated before contract award;

b) In the justification, estimate the likely cost for testing and evaluation that will be incurred by the potential offeror to become qualified;

c) In the justification, specify or incorporate by reference all requirements that a potential offeror (or its product) must satisfy in order to become qualified;

d) Upon request, provide potential offerors with the qualification requirement and specifications that must be met in order to become qualified;

e) Provide offerors an opportunity to demonstrate their ability to meet the standards specified for qualification;

f) Arrange publicity for the qualification requirement through the Governmentwide Point of Entry ("GPE"), which currently is FedBizOpps.

g) If active competition is likely to be fewer than two manufacturers, republicize the qualification requirement in FedBizOpps periodically. Current USDA policy is to republicize every two years if active competition is fewer than two manufacturers. Otherwise, the agency must republicize every seven years.

h) At least once every seven years, examine and revalidate the qualification requirement.

14. The FS currently has a qualification requirement for long-term fire retardant, and an associated specification (Specification 5100-304b).

15. It is the intent of the FS to amend Specification 5100-304b. In order to amend the Specification, the FS will comply with all the requirements of FAR 9.2 applicable to qualification requirements, as set forth above.

16. The FS expects the amendment to the Specification 5100-304b to be completed, and all the above FAR requirements to be complied with, by the end of November 2004.

17. Both fire retardant manufacturers have been informed of this upcoming change to the qualification requirements since May 2000.

18. At this time there is no solicitation for long-term fire retardants to which the amended Specification 5100-304b will apply.

19. It is the expectation of the FS to issue a solicitation for long-term fire retardants in the December 2004 to January 2005 timeframe. That solicitation will incorporate the amended specification. That solicitation will only procure long-term fire retardant for one-third (1/3) of the permanent fire bases. The other two-thirds (2/3) of the permanent fire bases will be supplied under contracts awarded in prior years, with products that met the current unamended Specification.

20. Fire-Trol already has submitted for testing a product designed to meet the amended Specification. Fire-Trol has been informed that this product passed all required tests for use on temporary bases, but not on permanent bases.

21. The amended specification will not restrict future procurements of long-term fire retardant to one supplier. Fire-Trol already has an approved product that meets the proposed amended Specification for use on temporary fire bases. Further, long-term fire retardant procurements for permanent fire bases have been split into thirds. That is, if the FS amends the Specification this fall, the next Solicitation will apply only to 1/3 of the permanent fire bases. The remaining 2/3 of the permanent fire bases will continue to procure long-term fire retardants under previous solicitations that did not incorporate the revised Specification but used the current (old) Specification.

22. I have been informed by my Agency Office of the General Counsel that the FS cannot be enjoined from buying long-term fire retardant that contains patented ingredients even if the supplier is not authorized by the patent owner to use such ingredients. Further, nothing prevents Fire-Trol from procuring a license to use another manufacturer's patented ingredient.

Executed on this 24th day of September, 2004.

/s/ Victoria Henderson
Victoria Henderson
United States Forest Service
United States Department of Agriculture