PAUL K. CHARLTON
United States Attorney
District of Arizona

MICHAEL A. JOHNS
Assistant U.S. Attorney
Arizona State Bar No. 3803
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500

Of Counsel:
MARION T. CORDOVA
D.C. Bar No. 39113
US Department of Agriculture
14th & Independence, SW
Room 3329D
Washington, DC 20250
Telephone: (202) 720-4978

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Fire-Trol Holdings, LLC,<br>Plaintiff,<br>v.<br>U.S. Department of Agriculture Forest Service,<br>Defendant. | CIV-03-2039-PHX-JAT<br>**REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Defendant U.S. Department of Agriculture, Forest Service, submits the following Reply Memorandum in support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction.

**MEMORANDUM**

Plaintiff's argument that this Court has subject matter jurisdiction is simply a re-assertion of *Scanwell* jurisdiction. Simply put, the Plaintiff has pled a *Scanwell* case, with jurisdiction in the district courts, but for the decision by Congress to place exclusive jurisdiction in the Court of Federal Claims upon sunset of the ADRA. As explained in our opening memorandum, Congress has directed that after January 1, 2001, only the Court of Federal Claims "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the

award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491 (emphasis added).

Specifically, Plaintiffs argue that the APA provides the necessary waiver of sovereign immunity and that 28 U.S.C. §1331 provides the necessary grant of subject matter jurisdiction. That is precisely what occurred in *Scanwell.* See *Scanwell,* 474 F.2d at 874 (APA waived sovereign immunity) and *Caddell Construction, Inc. v. United States,* 9 Cl. Ct. 1610, 1613 (U.S. Claims Court 1986)(Jurisdiction in *Scanwell* was provided by § 1331). The APA allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute . . ." to sue the United States, 5 U.S.C. §702, for declaratory or injunctive relief if the agency action was arbitrary, capricious, an abuse of discretion or contrary to a statute or regulation. However, if the alleged violation is in connection with a proposed procurement, exclusive jurisdiction is in the Court of Federal Claims regardless of whether a claim can be stated under the APA. Plaintiffs cite no case which is contrary to the line of cases which have consistently held that upon sunset of the ADRA, *Scanwell* jurisdiction no longer exists in the district courts. *City of Albuquerque v. United States Department of the Interior*, 217 F.Supp. 2d 1194, 1196-1197 (July 31, 2002) and cases cited therein. Plaintiff's arguments that the decision of the Forest Service not to purchase any more fire retardants with YP Soda or without a gum thickener violates the APA and/or the Competition In Contracting Act are clearly "connected with" the proposed procurement of fire retardant. Therefore, exclusive jurisdiction over the merits of Plaintiff's claims is now in the Court of Federal Claims.

*Califano v. Sanders,* 430 U.S. 99 (1977) acknowledges that the APA provides a waiver of sovereign immunity but no jurisdiction, and §1331 generally provides jurisdiction for review of agency action, but in that case the Court held that §1331 jurisdiction was preempted by the more specific jurisdictional statute of the Social Security Act. *Id.* at 109. Finding exclusive jurisdiction in the Court of Federal Claims is consistent with that case, and is precisely the finding in *Novell, Inc. v. United States,* 109 F. Supp. 2d 22, 25 (D.D.C. 2000)(The more specific

remedy in ADRA preempts the more general remedy in *Scanwell* under the APA and §1331, eliminating *Scanwell* jurisdiction after sunset of the ADRA). Similarly, in *Emery World Wide Airlines, Inc. v. United States,* 264 F.3d 1071, 1079 (Fed. Cir. 2001) the Court explained the intent of the ADRA sunset provision:

> "Yet, to prevent forum shopping and to promote uniformity in government procurement award law, Congress sought to channel the entirety of judicial government contract procurement protest jurisdiction to the Court of Federal Claims. [FN7] Therefore, as part of the ADRA, Congress enacted a sunset provision, which terminated federal district court jurisdiction over bid protests on January 1, 2001. Pub.L. No. 104-320, s 12(d), 110 Stat. at 3875. It is clear that Congress's intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions."
>
> * * *
>
> "FN7. The General Accounting Office ("GAO"), an Article I administrative forum, may review procurement protests, but such review does not exclude judicial review. 31 U.S.C. ss 3551-3556 (Supp. V 1999). The GAO's protest jurisdiction is defined by the Competition in Contracting Act ("CICA") of 1984, 31 U.S.C. s 3551 et seq. The USPS is exempted from all federal procurement laws not specifically enumerated in 39 U.S.C. s 410(a). United States v. Elec. Data Sys. Fed. Corp., 857 F.2d 1444, 1446 (Fed.Cir.1988). Because the CICA is not specifically enumerated in 39 U.S.C. s 410(a), the CICA does not apply to the USPS and therefore the USPS is not subject to GAO review."

The Federal Circuit in *Emery*, at page 1080, approved the decision in *Novell* while discussing the legislative intent in more detail, confirming that after the ADRA sunset, exclusive jurisdiction over a pre-award protest was in the Court of Federal Claims. Whether Plaintiff's challenge to the decision of the Forest Service and specifications for the Qualified Products List (QPL) under the APA and the Competition In Contracting Act are sufficiently ripe and whether they have sufficient standing to sustain an action at this time in the Court of Federal Claims are irrelevant to the issue of jurisdiction in the district courts, and are issues for the Court of Federal Claims to decide. See *Emery,* at 1084, fn 12, in which the Court concluded that it could proceed to the merits in that single-source procurement challenge. See also *City of Albuquerque,* 217 F.Supp. at 1195 (ADRA divested district courts of jurisdiction to hear all cases in connection with a procurement or proposed procurement even if that meant that the city of Albuquerque would have no forum whatsoever in which to challenge the procurement decision). The opinions

in *City of Albuquerque*, *Novell* and *Emery* dispose of all the Plaintiff's arguments about jurisdiction.

Neither *Rodway v. United States Department of Agriculture,* 514 F.2d 809 (D.C. Cir. 1975)(rulemaking violation involving a food stamp program) nor *Sugar Cane Growers Coop. of Florida v. Veneman,* 289 F.3d 89 (D.C. Cir. 2002)(rulemaking violation involving a payment-in-kind program) hold that jurisdiction over claims connected to a procurement or a proposed procurement remains in the district courts after the ADRA sunset.

Whether the decision of the Forest Service to no longer purchase fire retardant with YP Soda and without gum thickener violates the APA or some other statute or regulation is an issue on the merits which this court does not have jurisdiction to decide. However, it seems beyond dispute that an agency determination of it's own procurement requirements could not possibly be more connected to a procurement or proposed procurement, for without one there is no need for the other. If the Forest Service were not planning to procure fire retardant, the Forest Service would not maintain a QPL listing those fire retardants that meet the Government's requirements. The Federal Acquisition Regulation ("FAR") at Subpart 9.2 sets forth the requirements for establishing qualifications requirements, and by implication a QPL. The FAR indicates that establishing a qualification requirement is not a "rulemaking" within the definition of the APA. For example, FAR 9.204(a) provides that it is the responsibility of the agency activity that establishes a qualification requirement to "arrang[e] publicity for the qualification requirements." This is generally satisfied by publishing the qualification requirement on the Governmentwide Point of Entry, currently FEDBIZOPS. There is no FAR requirement that agencies engage in notice- and-comment rulemaking for mere procurement qualifications.

On July 20, 1971, then-Secretary of Agriculture Clifford M. Hardin signed a statement of policy (the "Hardin Memorandum"), committing the USDA to public participation in USDA rulemaking even when the APA exempted that rulemaking from the requirement for public participation (36 Fed. Reg. 13804, copy attached). Plaintiff argues that the Hardin Memorandum requires that the Forest Service engage in notice and comment rulemaking for this procurement

decision. [1/] However, the APA exempts from public notice-and-comment rulemaking those rules relating to public property, loans, grants, benefits, or contracts. For example, the USDA has its own Agriculture Acquisition Regulation ("AGAR") to supplement the FAR. [2/] While the APA does not require the agency to publish the AGAR in the Federal Register, or to seek public comment, the agency does so in compliance with the Hardin Memorandum. However, all procurement decisions or determinations of agency requirements are not public notice-and-comment rules within the meaning of the APA. The APA excludes from the publication and comment requirements many agency decisions or determinations:

> "Except when notice or hearing is required by statute, this subsection does not apply--
>
> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice;. . ."

5 U.S.C. §553(b)(3)(A).

When an agency determines its own procurement requirements, such decisions are not public notice-and-comment rules within the meaning of the APA. To accept Plaintiff's argument would be to accept that the USDA - indeed every Federal agency - must engage in notice-and-comment rulemaking every single time an agency determines that one type of product meets its needs while another does not. An agency is in the best position to determine its own procurement needs, and should not be second-guessed by a contractor with a vested interest in marketing its products every time the Government makes a purchase.

## CONCLUSION

Because ADRA divested the district courts of jurisdiction to hear cases involving "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," and because an agency determination of its own procurement needs - and the related establishment and maintenance of a QPL - are governed by the FAR and are clearly

---

[1/] Fire-Trol Motion in Opposition, June 23, 2004, p.3.

[2/] AGAR codified at 48 CFR Chapter 4, Parts 401 through 453.

connected with a procurement or proposed procurement, this Court lacks jurisdiction and should dismiss the Complaint and action.

Respectfully submitted this 30 day of June, 2004.

PAUL K. CHARLTON
United States Attorney
District of Arizona

MICHAEL A. JOHNS
Assistant U.S. Attorney

Original filed and copy of the foregoing mailed this 30th day of June, 2004, to:

David V. Seyer
LAW OFFICES OF DAVID V. SEYER
1761 East McNair Drive, Suite 102
Tempe, Arizona 85283-5002

Paul F. Dauer
LAW OFFICES OF BEST BEST & KRIEGER, LLP
400 Capitol Mall, Suite 1650
Sacramento, California 95814

Jennifer L McReady
BEST BEST & KRIEGER LLP
400 Capitol Mall, Suite 1650
Sacramento, CA95814

Marion T. Cordova
US Department of Agriculture
14th & Independence, SW
Room 3329D
Washington, DC 20250

(1) Approve and accept options and offers to sell to, or exchange with the United States, lands or interests in lands within areas under the jurisdiction or control of the National Park Service, and to execute all necessary agreements and conveyances incident thereto.

(2) Accept deeds conveying to the United States, lands or interests in lands, within areas under the jurisdiction or control of the National Park Service.

(3) Contract for and accept bills of sale or other evidence of title to personal property related to the acquisition of lands which is authorized to be acquired for the purposes of the areas under the jurisdiction or control of the National Park Service.

(4) Approve on behalf of the National Park Service offers of settlement in condemnation cases. Approvals of offers of settlement by him will be communicated to the appropriate office of the Solicitor's Office of the Department of the Interior for such further action as may be proper.

SEC. 2. *Revocation.* This order supersedes and revokes National Park Service Delegation of Authority Order No. 64, 36 F.R. 5629.

(205 DM, as amended; 245 DM, as amended; 5 U.S.C. 22; sec. 301 of Reorganization Plan No. 3 of 1950)

Dated: July 6, 1971.

RAYMOND L. FREEMAN,
*Acting Director,*
*National Park Service.*

[FR Doc.71-10573 Filed 7-23-71;8:51 am]

# DEPARTMENT OF AGRICULTURE

## Commodity Credit Corporation

## JUTE BAGGING AND BALE TIES USED IN WRAPPING COTTON

### Modification of Revised Specifications

The Notice of Specifications—Jute Bagging and Bale Ties Used in Wrapping Cotton (Revision 2) issued by Commodity Credit Corporation published in the FEDERAL REGISTER on May 7, 1969 (34 F.R. 7388), stated the specifications for jute bagging and bale ties for wrapping cotton tendered to Commodity Credit Corporation (hereinafter referred to as CCC) for loans beginning with the 1969 crop of cotton.

Notice is hereby given that, effective as to the 1971 and subsequent crops of cotton, the specifications contained in the notice are amended as follows:

1. In order to provide for heavier weight bale ties and buckles on gin compressed cotton, the paragraph following the center head Bale Ties and Buckles is amended to read as follows:

BALE TIES AND BUCKLES

The total weight of bale ties and buckles used to tie each bale of cotton shall be not less than 8½ pounds or more than 9½ pounds: *Provided, however,* That bale ties and buckles weighing not less than 8½ pounds or more than 10 pounds may be used to tie a gin compressed bale (gin standard or gin universal density) having not less than eight bands.

2. In order to provide for shorter length bagging on gin compressed cotton, the first paragraph following the center head Jute Bagging is amended to read as follows:

JUTE BAGGING

All bagging must be clean, in sound condition, and of sufficient strength to adequately protect the cotton. Cotton wrapped in jute bagging to which any kind of salt or other corrosive material has been added, or which contains sisal or other hard fibers or any other material which will contaminate or adversely affect the cotton as determined by the President or Executive Vice President, CCC, will not be eligible for tender to CCC. Each one-half pattern (panel) of bagging shall be not less than 108 inches or more than 115 inches in length and must be not less than 47 inches or more than 56 inches in width: *Provided, however,* That bagging panels not less than 96 or more than 115 inches in length may be used for wrapping gin compressed bales (gin standard or gin universal density). Each pattern of bagging (two bagging panels) must weigh not less than 11¼ pounds or more than 13¾ pounds at 13.75 percent moisture content (not moisture regain): *Provided, however,* That a pattern weighing not less than 10 pounds or more than 13¾ pounds at 13.75 percent moisture content (not moisture regain) may be used for wrapping gin compressed bale if each panel of the pattern is not less than 96 inches in length.

Signed at Washington, D.C., on July 20, 1971.

KENNETH E. FRICK,
*Executive Vice President,*
*Commodity Credit Corporation.*

[FR Doc.71-10586 Filed 7-23-71;8:52 am]

## Office of the Secretary

## AGRICULTURAL RESEARCH SERVICE

### Delegation of Functions

The assignment of functions to the Agricultural Research Service in 30 F.R. 5801, as amended in 31 F.R. 4975, 32 F.R. 7469, and 36 F.R. 7152 is hereby further amended by adding a new subparagraph (10) to paragraph b of section 115 to read as follows:

(10) Assisting the Consumer and Marketing Service (C & MS) in cooperating with the various States in performing State meat and poultry inspection activities as provided by the Federal Meat Inspection Act (21 U.S.C. 661) and the Poultry Products Inspection Act (21 U.S.C. 454).

Done at Washington, D.C., this 20th day of July 1971.

CLIFFORD M. HARDIN,
*Secretary.*

[FR Doc.71-10536 Filed 7-23-71;8:48 am]

## PUBLIC PARTICIPATION IN RULE MAKING

### Statement of Policy

Notice is hereby given of the policy of the Department of Agriculture to give notice of proposed rule making and to invite the public to participate in rule making where not required by law.

5 U.S.C. 553 provides generally that before rules are issued by Government agencies, notice of proposed rule making must be published in the FEDERAL REGISTER, and interested persons must be given an opportunity to participate in the rule making through submission of data, views, or arguments.

The law exempts from this requirement rules relating to public property, loans, grants, benefits, or contracts.

The Administrative Conference of the United States has recommended that Government agencies provide for public participation when formulating rules relating to public property, loans, grants, benefits, or contracts as a matter of policy.

The advantages of implementing the Conference's recommendation that the public be afforded an opportunity for greater participation in the formulation of rules relating to public property, loans, grants, benefits, or contracts will outweigh any disadvantages such as increased costs or delays.

The public participation requirements prescribed by 5 U.S.C. 553 (b) and (c) will be followed by all agencies of the Department in rule making relating to public property, loans, grants, benefits, or contracts. The exemptions permitted from such requirements where an agency finds for good cause that compliance would be impracticable, unnecessary or contrary to the public interest will be used sparingly, that is, only when there is a substantial basis therefor. Where such a finding is made, the finding and a statement of the reasons therefore will be published with the rule.

*Effective date:* Upon publication in the FEDERAL REGISTER (7-24-71).

Signed at Washington, D.C., on July 20, 1971.

CLIFFORD M. HARDIN,
*Secretary of Agriculture.*

[FR Doc.71-10537 Filed 7-23-71;8:48 am]

# DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE

## Food and Drug Administration

## ATLAS CHEMICAL INDUSTRIES, INC.

### Notice of Filing of Petition for Food Additives

Pursuant to provisions of the Federal Food, Drug, and Cosmetic Act (sec. 409(b)(5), 72 Stat. 1786; 21 U.S.C. 348(b)(5)), notice is given that a petition (FAP 1B2698) has been filed by