PAUL F. DAUER (CALIFORNIA BAR NO. 37428)
LAW OFFICES OF PAUL F. DAUER
400 CAPITOL MALL, SUITE 2950
SACRAMENTO, CA 95814
TELEPHONE: (916) 448-2431
FACSIMILE: (916) 448-2462
EMAIL: PFDAUER@PFDATTY.COM

JENNIFER L. MCCREADY (CALIFORNIA BAR NO. 179262)
LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814
TELEPHONE: (916) 325-4000
FACSIMILE: (916) 325-4010
EMAIL: JENNIFER.MCCREADY@BBKLAW.COM

Attorneys for Plaintiff
FIRE-TROL HOLDINGS LLC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| FIRE-TROL HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | No. 04-1389-C<br><br>Judge: George Miller |

**<u>OPPOSITION TO MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 2

QUESTIONS INVOLVED .......... 3

STATEMENT OF THE CASE .......... 4

ARGUMENT .......... 7

I. STANDARD OF REVIEW .......... 7

II. THIS COURT HAS JURISDICTION TO HEAR THE INSTANT DISPUTE .......... 8

III. FIRE-TROL IS AN INTERESTED PARTY THAT CAN INVOKE THIS COURT'S JURISDICTION .......... 12

IV. THE UNITED STATES HAS NOT ESTABLISHED BEYOND DOUBT THAT FIRE-TROL CAN PROVE NO SET OF FACTS IN SUPPORT OF ITS CLAIM WHICH WOULD ENTITLE FIRE-TROL TO RELIEF .......... 16

A. The Forest Service Ban On YP Soda In All Retardants And Requirement For Gum Thickener In All Retardants Are "Rules" Subject To The APA .......... 16

B. Fire-Trol Has Been Prejudiced By The Forest Service's Failure To Comply With APA And FAR Requirements And Violation Of CICA .......... 19

V. IF THIS COURT FINDS THAT IT LACKS JURISDICTION, IT SHOULD TRANSFER THE ACTION BACK TO THE DISTRICT COURT FOR THE DISTRICT OF ARIZONA .......... 21

CONCLUSION .......... 23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054 (Fed. Cir., 2000) .......... 20

*Alaska Central Express v. United States*, 50 Fed. Cl. 510 (2001) .......... 15

*Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365 (Fed. Cir., 1999) .......... 20

*American Federation of Government Employees, AFL-CIO v. United States*, 258 F.3d 1294 (Fed. Cir. 2001) .......... 15

*Automated Communication Sys. v. United States*, 49 Fed. Cl. 570 (Ct. Cl., 2001) .......... 7, 10, 11, 12

*CCL, Inc. v. United States*, 39 Fed. Cl. 780 (Fed. Cl. 1997) .......... 10

*City of Albuquerque v. United States Dep't of the Interior*, 379 F.3d 901 (10th Cir., 2004) .......... 15

*Clark v. United States*, 229 Ct. Cl. 570 (Ct. Cl., 1981) .......... 21, 22

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 8

*Corel Corp. v. United States*, 165 F. Supp. 2d 12 (D.D.C., 2001) .......... 12

*CW Gov't Travel, Inc. v. United States,* 61 Fed. Cl. 559, 2004 U.S. Claims LEXIS 193 at *18-19 (Ct. Cl., 2004) .......... 10

*Drury v. United States*, 52 Fed. Cl. 402 (Ct. Cl., 2002) .......... 22

*Emery Worldwide Airlines, Inc. v. United States*, 49 Fed. Cl. 211 (2001) .......... 8

*ES-KO, Inc. v. U.S.*, 44 Fed. Cl. 429 (1999) .......... 9

*Fire-Trol Holdings LLC v. United States* (Court of Federal Claims Case No. 04-240C) .......... 20

*Gajic-Stajic v. United States*, 36 Fed. Cl. 422 (Ct. Cl., 1996) .......... 7

*Galen Med. Assocs. v. United States*, 369 F.3d 1324 (Fed. Cir., 2004) .......... 20

*Labat-Anderson Inc. v. United States*, 50 Fed. Cl. 99 (Ct. Cl., 2001) .......... 9, 11, 12

*National Medical Enters. v. United States*, 28 Fed. Cl. 540 (Ct. Cl., 1993) .......... 22

*Omega World Travel, Inc. v. United States*, 9 Cl. Ct. 623 (1986) .......... 14, 15

*Ramcor Services Group, Inc. v. U.S.*, 185 F.3d 1286 (Fed. Cir. 1999) .......... 9, 11, 12, 23

*Rodway v. United States Dep't of Agric.,* 514 F.2d 809 (D.C. Cir. 1975) .......... 18

*Southfork Sys., Inc. v. United States*, 141 F.3d 1124 (Fed. Cir. 1998) .......... 10, 11

*Statistica, Inc. v. Christopher*, 102 F.3d 1577 (Fed. Cir. 1996). .......... 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sugar Cane Growers Coop. of Florida v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002) ........ 18

**STATUTES**

10 United States Code section 2302(3)(A)........ 11, 12
28 United States Code section 1406(c) ........ 22
28 United States Code section 1491 ........ 3, 4, 10, 11, 12, 15
28 United States Code section 1491(b) ........ 14
28 United States Code section 1631 ........ 21
36 Federal Register 13804 (July 24, 1971) ........ 18
41 United States Code section 403(2) ........ 11, 12
41 Unites States Code section 253c........ 11
48 Code of Federal Regulations section 9.202 ........ 11
48 Code of Federal Regulations section 9.203 ........ 11
48 Code of Federal Regulations section 9.203(a) ........ 11
48 Code of Federal Regulations sections 9.200 *et seq.* ........ 11
5 United States Code section 551 ........ 16
5 United States Code section 553 (b) ........ 18
5 United States Code section 553 (c) ........ 18
Rules of the Court of Federal Claims, Rule 12(b)(1) ........ 7

## INTRODUCTION

Before the District Court for the District of Arizona, the United States asserted:

> Plaintiff's arguments that the decision of the Forest Service not to purchase any more fire retardants with YP Soda or without a gum thickener violates the APA and/or the Competition In Contracting Act are clearly "connected with" the proposed procurement of fire retardant. Therefore, ***exclusive jurisdiction over the merits of Plaintiff's claims is now in the Court of Federal Claims.***

Defendant's Reply In Support Of Motion To Dismiss For Lack Of Subject Matter Jurisdiction (Arizona District Court Case No. CIV-03-2039) (hereafter, "Arizona Reply Brief") at 2:17-21 (emphasis added). The District Court granted the United States' motion to dismiss on the ground that exclusive jurisdiction over Fire-Trol Holdings LLC's ("Fire-Trol") challenge to the United States Department of Agriculture, Forest Service's ("Forest Service") rulemaking was vested in the Court of Federal Claims. The United States now takes the fundamentally inconsistent position that "Congress has not vested this Court with jurisdiction to entertain challenges to the validity of agency rules, ***including rules concerning procurement contracts***." Defendant's Motion to Dismiss ("Defendant's Motion") at 5 (emphasis added). This Court should confirm the District Court's ruling that this Court has jurisdiction over challenges to regulations for violating the Administrative Procedure Act ("APA") and challenges to qualification requirements for violating the Federal Acquisition Regulation ("FAR") when the regulations and qualification requirements affect a procurement or a proposed procurement.

As found by the Arizona District Court, this Court has jurisdiction over Fire-Trol's allegations of Forest Service violation of the APA, FAR, and CICA in connection with the qualification, testing, and procurement of wildland fire retardants. As a bidder whose previously qualified products are being threatened with exclusion from government purchasing, and whose new products are being prevented from qualification, Fire-Trol is a sufficiently "interested party" to invoke this Court's jurisdiction. Because the positions at issue are Forest Service statements of general or particular applicability made for the purpose of implementing or prescribing policy or requirements of an agency for current testing and unlimited future procurements, they are "rules" subject to the APA. Finally, as an incumbent contractor and long-time supplier of wildland fire retardant to the Forest Service, Fire-Trol has established reasonable likelihood that it would receive contract award, and, thus, "prejudice." For these reasons, the United States' Motion to Dismiss should be denied in its entirety.

## QUESTIONS INVOLVED

To finally resolve the jurisdictional question, Fire-Trol requests that this Court determine the following issues as raised in the United States' motion:

1) Whether this Court's jurisdiction over "any alleged violation of statute or regulation in connection with . . . a proposed procurement" under 28 U.S.C. section 1491 extends to challenges based on a failure to comply with the APA when adopting rules relating, in part, to future, recurring procurements;

2) Whether this Court's jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement"

under 28 U.S.C. section 1491 extends to challenges based on a failure to comply with the FAR's procedures with respect to establishing qualification requirements and/or qualified products lists;

3) Whether this Court's jurisdiction over "any alleged violation of statute or regulation in connection with . . . a proposed procurement" under 28 U.S.C. section 1491 extends to challenges that agency rules relating to procurements violate the Competition In Contracting Act ("CICA"); and

4) Whether Fire-Trol is an "interested party" pursuant to 28 U.S.C. section 1491 sufficient to trigger this Court's jurisdiction.

With respect to the United States' last two issues, Fire-Trol has pled sufficient facts to survive a motion to dismiss on the grounds raised in those issues. Fire-Trol would re-characterize those issues neutrally as follows:

1) Whether Fire-Trol has pled that the Forest Service's positions banning YP Soda and requiring gum thickener in wildland fire retardants are "rules" subject to APA requirements;

2) If prejudice is a necessary element, whether Fire-Trol has pled sufficient prejudice arising from the Forest Service's rules banning YP Soda and requiring gum thickener in wildland fire retardants.

**STATEMENT OF THE CASE**

In the instant case, and as reflected in the United States' Statement of the Case, the facts related to jurisdiction are largely undisputed and can be verified with reference to documents in this Court's possession. As the United States admits, the Forest Service has

repeatedly stated its position that it will no longer purchase wildland fire retardants containing YP Soda, and that it will require gum thickener in wildland fire retardants. *See* Defendant's Motion at 3-4; *see also* Exhibits I through N of the Exhibits in Support of Motion for Preliminary Injunction.[1] The United States implies that the Forest Service changed its positions when it withdrew its May 26, 2002 letter. In fact, in the letter withdrawing the May 26 letter, the Forest Service specifically stated that "the Forest Service when it makes such changes [to Specification 5100-304b and the QPL], **intends to continue its position** that it will not accept retardants containing YP Soda and it will accept only retardants containing gum-thickeners." Exhibit L (emphasis added). The United States has maintained a consistent position that it was banning YP Soda and requiring gum-thickeners since the rules were first announced in 2000. Further, the United States does not dispute that the rules have been applied to restrict Fire-Trol's testing of its products under the current Specification for listing on the current qualified products list. *See* Declaration of Rob Crouch in Support of Motion for Preliminary Injunction ("Crouch Decl."), ¶¶ 14-16 and Exhibit A thereto. The United States has cited no evidence even suggesting that the Forest Service will alter these consistently stated positions in ongoing testing or any upcoming procurement, including the 2005 procurement.[2]

---

1 References to "Exhibits" herein are to the Exhibits in Support of Motion for Preliminary Injunction, unless otherwise noted.

2 The Forest Service also apparently is considering a change to the combustion retarding effectiveness test and/or standard. Fire-Trol has not challenged that change as an improper rule because, unlike the Forest Service position on YP Soda and gum thickener, it appears that the Forest Service is still considering whether to make a change and, if so, what the change will be.

In its Motion to Dismiss, the United States does not challenge Fire-Trol's assertion that the Forest Service has not complied with the APA requirements for adopting rules or the FAR requirements for adopting or modifying a specification. Rather, the United States takes the position that the Forest Service is not required to comply with the APA, and that it "will comply with those [FAR and statutory] requirements when changing a solicitation [sic, presumably specification]." Defendant's Motion at 18-19. It is unclear from Defendant's Motion and the Declaration of Victoria Henderson ("Henderson Decl.") filed with that motion where in the FAR process the Forest Service claims to be.

Finally, it is undisputed that there are only two competitors with qualified wildland fire retardant products. In its motion., the United States did not dispute that implementation of its rules will put Fire-Trol out of business and create a monopoly in Astaris LLC ("Astaris").[3]

In the District Court, all parties agreed that there was no current solicitation. The United States' position – and that adopted by the District Court – was that the action involved a proposed procurement and that "if the alleged violation is in connection with a proposed procurement, exclusive jurisdiction is in the Court of Federal Claims." Arizona Reply Brief at 2. As the United States asserted, "[i]f the Forest Service were not planning to procure fire retardant, the Forest Service would not maintain a QPL listing those fire

---

[3] The United States suggests that Fire-Trol has an alternate qualified retardant, but that retardant is not qualified for fixed-wing airtankers, and may only be used at temporary bases with fixed-tank helicopters. The minimal usage volume of such retardant is not sufficient to keep Fire-Trol in business.

retardants that meet the Government's requirements." *Id.* at 4. Following oral argument, the District Court ruled that:

> The contested actions and decisions by the Forest Service are directly connected to its proposed procurement of fire retardant. Each of the statutes and the regulation, if applicable, would significantly affect the process leading up to the 2005 procurement and possibly the ultimate award. The Court has little difficulty concluding that the statutes and regulations at issue in this case are "in connection with a proposed procurement."

Exhibit AE at 6:17-22.

## ARGUMENT

### I. STANDARD OF REVIEW

The court has explained that:

> When evaluating a motion to dismiss for subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegation of the complaint should be construed favorably to the pleader, [citation], to the end that the court must accept as true the facts alleged in the complaint. [citation] If in a motion to dismiss for lack of jurisdiction the facts reveal any possible basis on which the non-movant may prevail, the motion must be denied. [citation] However, the burden is on plaintiff to establish jurisdiction. [citation]

*Gajic-Stajic v. United States*, 36 Fed. Cl. 422, 423 (Ct. Cl., 1996). A complaint is not to be dismissed for lack of subject matter jurisdiction "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Automated Communication Sys. v. United States*, 49 Fed. Cl. 570, 574 (Ct. Cl., 2001) (quoting *Emery Worldwide Airlines, Inc. v. United States*, 49 Fed. Cl. 211, 219

(2001) which was quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted)) (internal quote marks omitted). The jurisdictional facts are largely undisputed, supporting Fire-Trol's position that this Court has jurisdiction over Fire-Trol's challenges to Forest Service action in connection with proposed procurements. *See* Exhibit AE at 5 (stating that "the parties do not disagree about the facts pertaining to jurisdiction").

## II. THIS COURT HAS JURISDICTION TO HEAR THE INSTANT DISPUTE

Other than the Arizona District Court's decision, Fire-Trol is unaware of any authority directly addressing whether, under the Administrative Dispute Resolution Act of 1996 ("ADRA") and after the sunset of district court bid protest jurisdiction, this Court has exclusive jurisdiction over a challenge to an agency's failure to comply with the FAR in adopting qualification requirements. Similarly, other than the Arizona District Court's decision, Fire-Trol is unaware of any authority addressing whether this Court has exclusive jurisdiction over a challenge to an agency's failure to comply with the APA in adopting rules whose primary effect is to restrict competition in the agency's product qualification and procurements. In essence, the question before this Court is whether the ADRA's grant of jurisdiction over actions related to a "proposed procurement" should be interpreted broadly enough to encompass qualification requirements and rules limiting competition in violation of CICA. This is a question of first impression in this Court.

The United States District Court for the District of Arizona dismissed the substantively identical action for lack of jurisdiction, holding that this Court has exclusive jurisdiction over APA, FAR, and CICA challenges to qualification

requirements and rules relating to what an agency must or must not purchase.

Specifically, that court held that:

> If Fire-Trol has alleged a violation of a statute or regulation in connection with a procurement or proposed procurement, then the claim is covered by the ADRA. The operative phrase "in connection with" is very sweeping in scope. *Ramcor Services Group, Inc. v. U.S.*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction. *Id.* This reasoning applies with equal force to alleged violations of regulations. *ES-KO, Inc. v. U.S.*, 44 Fed. Cl. 429, 432 (1999). The contested actions and decisions by the Forest Service are directly connected to its proposed procurement of fire retardant. Each of the statutes and the regulation, if applicable, would significantly affect the process leading up to the 2005 procurement and possibly the ultimate award. The Court has little difficulty concluding that the statutes and regulations at issue in this case are "in connection with a proposed procurement."

Exhibit AE at 6:11-22. Essentially, the District Court found that an allegation that the Forest Service has violated a statute or regulation, and that the violation will affect some future procurement, is sufficient to subject the action to this Court's exclusive jurisdiction under the ADRA. Following the legal analysis of the District Court, because "in connection with . . . a proposed procurement" is interpreted broadly, this Court should confirm that it has jurisdiction over challenges to adoption or modification of qualification requirements under the FAR and rulemaking under the APA, even when those actions apply to more than just a single anticipated procurement. *See Labat-Anderson Inc. v. United States*, 50 Fed. Cl. 99, 104 (Ct. Cl., 2001) (citing *Ramcor Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) for the principle that

jurisdiction over a "proposed procurement" is broadly interpreted); *CCL, Inc. v. United States*, 39 Fed. Cl. 780, 788-89 (Fed. Cl. 1997); *see also CW Gov't Travel, Inc. v. United States,* 61 Fed. Cl. 559, 2004 U.S. Claims LEXIS 193 at *18-19 (Ct. Cl., 2004) (holding that the Court of Federal Claims has jurisdiction over an action challenging an alleged "violation of statutory requirements for competition in government procurements").

The United States cites two cases for the proposition that the United States district courts have exclusive jurisdiction over APA challenges to regulations.[4] Defendant's Motion at 11 (citing *Southfork Sys., Inc. v. United States*, 141 F.3d 1124 (Fed. Cir. 1998) and *Automated Communication Sys. v. United States*, 49 Fed. Cl. 570 (2001) (hereafter, "*ACS*").) Both cases are distinguishable. *Southfork* was decided under a different jurisdictional grant – one in which jurisdiction depended on an alleged breach related to an implied contract to treat bidders fairly. *Southfork*, 141 F.3d at 1132. The current jurisdictional grant is broader, allowing this Court to hear "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. §1491. The *Southfork* court found no jurisdiction because it found no breach of an obligation to treat bidders fairly when an agency was simply following previously-adopted regulations. *Southfork*, 141 F.3d at 1134-35. Because this is not the standard applicable to Fire-Trol's action, *Southfork* is distinguishable.

---

[4] The United States has not explained why it did not raise this authority when it moved for the District Court to dismiss this action on the ground that the Court of Federal Claims had exclusive jurisdiction over this action.

Unlike *Southfork*, *ACS* did arise under the ADRA. In fact, *ACS* noted that "the jurisdictional issue is one of first impression since the passage of the ADRA."[5] *ACS*, 49 Fed. Cl. at 576. However, *ACS* also is distinguishable. *ACS* was not considering qualification requirements. Qualification requirements are recognized as an integral part of the procurement process,[6] although "[g]enerally, qualification is performed in advance and independently of any specific acquisition action." 48 C.F.R. § 9.203(a); *see generally* 48 C.F.R. §§ 9.200 *et seq*. Qualification requirements are adopted to evaluate the responsiveness of products to a standard, a step which normally is performed after bids are received. *See* 41 U.S.C. § 253c; 48 C.F.R. §§ 9.202, 9.203. Unlike a statute or regulation that controls the **process** of the procurement, such as that at issue in *ACS*, qualification requirements control the **substance** of the procurement. As a result, challenges to such requirements should be subject to this Court's jurisdiction under the ADRA. For the same reason, regulations that limit what an agency can or will procure should be viewed as part of the procurement process, and challenges to such regulations should be subject to this Court's ADRA jurisdiction.

In addition, *ACS* should not be applied in the instant action because it implicitly conflicts with the holding of the Court of Appeals for the Federal Circuit in *Ramcor*.

---

5 Fire-Trol has not identified any other Court of Federal Claims case to have addressed this issue since *ACS.*

6 For purposes of section 1491 jurisdiction, the procurement process should be understood to encompass the entire process, including any adoption of regulations or specifications limiting or defining what an agency can procure. *See Labat-Anderson Inc. v. United States*, 50 Fed. Cl. 99, 104 (Ct. Cl., 2001) (relying on the definition of "procurement" in 41 U.S.C. section 403(2) and 10 U.S.C. section 2302(3)(A), which define procurement as including "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services . . .." to find that section 1491 should be broadly interpreted).

*ACS*'s conclusion that a challenge to the lawfulness of a regulation is not "in connection with a proposed procurement" is inconsistent with *Ramcor*'s statement that the "operative phrase 'in connection with' is very sweeping in scope." *Ramcor*, 185 F.3d at 1289. The *Ramcor* court's conclusion is the more widely accepted and applied principle. For example, in *Labat-Anderson Inc. v. United States*, 50 Fed. Cl. 99 (Ct. Cl., 2001), the court concluded that "in connection with" a procurement is a broad grant of jurisdiction, relying partially on *Ramcor* and partially on the broad definition of "procurement" from 41 U.S.C. section 403(2) and 10 U.S.C. section 2302(3)(A). 50 Fed. Cl. at 104. In another case, prior to the sunset of district court jurisdiction under the ADRA, a district court relied on *Ramcor* to find that it had jurisdiction, **under 28 U.S.C. section 1491,** to consider a CICA challenge to the Department of Labor's decision to standardize its office software. *Corel Corp. v. United States*, 165 F. Supp. 2d 12, 22 (D.D.C., 2001). This Court should continue to apply *Ramcor*, as did the Arizona District Court, to find that the ADRA contains a broad grant of jurisdiction sufficient to encompass allegations that the Forest Service failed to comply with the APA, FAR, and CICA in adopting rules and restrictive specifications governing its future procurements.

## III. FIRE-TROL IS AN INTERESTED PARTY THAT CAN INVOKE THIS COURT'S JURISDICTION

As set forth by the United States, an interested party is an actual or prospective bidder whose direct economic interest would be affected by the agency action with respect to an actual or proposed procurement. Fire-Trol is one of only two manufacturers of wildland fire retardant currently listed on the Forest Service's wildland fire retardant

QPL as compliant with Specification 5100-304b for use with airtankers. Fire-Trol is also an incumbent contractor for numerous airtanker bases, and has certain contracts that will or may be reprocured in the 2005 procurement cycle. As such, Fire-Trol is clearly a prospective bidder.

Fire-Trol also has a direct economic interest in being able to compete for and perform contracts for sales of wildland fire retardant. The Forest Service has consistently stated its rules banning YP Soda and requiring gum thickener, and has taken an apparently firm position that those rules will be implemented in the 2005 procurement, as discussed below. Implementation of those rules will preclude Fire-Trol from competing to keep its existing contracts that are being reprocured or from winning additional contracts in any future procurement. Fire-Trol may also lose its "FOB Origin" contract if the Forest Service declines to exercise the option to renew that contract based on its rules banning YP Soda and requiring gum thickener. That is, Fire-Trol will lose profits it otherwise would have earned had the Forest Service not violated statutes and regulations in connection with its procurement(s). In addition, Fire-Trol has a direct economic interest in having its products tested and qualified under the existing specification. If the products comply with specification requirements, Fire-Trol has an interest in bidding those products and, if successful, beginning to recover the cost of developing and qualifying the products. Thus, Fire-Trol's direct economic interest in competing for and performing contracts that it has been consistently performing for years is impacted by the Forest Service's actions in adopting rules contrary to the APA and modifying the Specification contrary to the FAR.

The United States' attempts to convince this Court that Fire-Trol lacks standing because no formal solicitation has been issued must fail. First, the Forest Service has conducted competitive procurements for its wildland fire retardants for years. *See* Declaration of Joe Grigel in Support of Motion for Preliminary Injunction ("Grigel Decl."), ¶ 8. Although no specific solicitation has been **issued**, the Forest Service has specifically identified the 2005 procurements as those in which it will first apply its rules banning YP Soda and requiring gum thickener. *See* Exhibit N; Henderson Decl. at ¶¶ 15-19 (stating that the specification will be amended, that the manufacturers have been aware of the change since May 2000, and that the 2005 solicitation "will incorporate the amended specification"). When Fire-Trol requested that the implementation be delayed to give the courts time to rule on Fire-Trol's challenges, the Forest Service refused. Exhibit AD. Even though no solicitation has been issued, the Forest Service has made clear its position that it will apply its rules banning YP Soda and requiring gum thickener in the 2005 procurement. Because the Forest Service has acknowledged that it will issue a formal solicitation shortly, the United States is incorrect that no procurement has been proposed. Defendant's Motion at 14.

The United States' apparent position that this Court lacks jurisdiction until a formal solicitation is issued also fails. The cases cited by the United States do not support that proposition. *Omega World Travel, Inc. v. United States*, 9 Cl. Ct. 623 (1986) addressed a different jurisdictional statute, which granted jurisdiction over a "contract claim." In contrast, 28 U.S.C. section 1491(b) applies to a procurement **or a proposed**

**procurement**. Thus, *Omega World Travel* is wholly inapposite to the interpretation of section 1491.

*Alaska Central Express v. United States*, 50 Fed. Cl. 510 (2001) is distinguishable because it involved contracts that were not procured through competitive solicitations. The court found that, because contracts for mail delivery in Alaska were not competitively procured, a potential service provider could never be a prospective bidder or offeror, so would not meet the jurisdictional requirements of the Court of Federal Claims. 50 Fed. Cl. at 519. Unlike *Alaska Central*, the Forest Service regularly competitively procures fire retardant. Grigel Decl., ¶ 8. Because Fire-Trol is an incumbent with qualified retardants, Fire-Trol is a prospective bidder or offeror on future procurements sufficient to trigger jurisdiction.

Finally, *American Federation of Government Employees, AFL-CIO v. United States*, 258 F.3d 1294 (Fed. Cir. 2001) distinguishes between bidders and entities that did not and could not bid. Nothing in that case addresses the standing of **prospective** bidders in this Court. Similarly, *City of Albuquerque v. United States Dep't of the Interior*, 379 F.3d 901 (10th Cir., 2004) found that the plaintiff was not an "interested party" sufficient to trigger Court of Federal Claims' jurisdiction because the City could not be a bidder. 379 F.3d at 911. Contrary to the United States' implication in citing *American Federation of Government Employees* and *City of Albuquerque,* the cases clearly reflect that an "interested party" with standing in this Court includes prospective bidders, such as Fire-Trol. *See American Federation of Government Employees,* 258 F.3d at 1302; *see also* Defendant's Motion at 12.

## IV. THE UNITED STATES HAS NOT ESTABLISHED BEYOND DOUBT THAT FIRE-TROL CAN PROVE NO SET OF FACTS IN SUPPORT OF ITS CLAIM WHICH WOULD ENTITLE FIRE-TROL TO RELIEF

### A. The Forest Service Ban On YP Soda In All Retardants And Requirement For Gum Thickener In All Retardants Are "Rules" Subject To The APA

The APA defines "rule" as

> . . . an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . .

5 U.S.C. § 551. The Forest Service has announced that it will not purchase wildland fire retardants containing YP Soda, and will only purchase fire retardants containing gum thickener. *See* Defendant's Motion at 3-4; Complaint, ¶¶ 51, 56-62, 93-94. These announcements are "agency statement[s] of general or particular applicability" to agency purchases of wildland fire retardant. The rules also have "future effect" because they are stated to commence with the 2005 procurement cycle and to apply thereafter. *See* Exhibit N; Complaint ¶¶ 62, 94. Finally, the rules implement a policy or practice requirement of the Forest Service by implementing an overall ban on a product that the Forest Service believes presents an "environmental risk" and implementing a policy to purchase only gum-thickened retardants. *See* Motion to Dismiss For Lack Of Subject Matter Jurisdiction (Arizona District Court) (hereafter "Arizona Motion") at 2-3. Thus, Fire-Trol has pled sufficient facts, many of which have not been disputed by the United States, to establish that the Forest Service decisions to ban YP Soda and to require gum thickeners in fire retardants are "rules" subject to the APA.

The United States attempts to characterize its rulemaking as simply determining what it will purchase in a particular procurement and not "rules" under the APA. *See* Defendant's Motion at 18. Notwithstanding the United States' attempts to characterize Forest Service actions as solely related to the 2005 procurement, the Forest Service has made it clear that it will apply the rules indefinitely to future procurements. The Forest Service has indicated that it "no longer" will purchase retardants containing YP Soda or without gum thickener. Arizona Motion at 2-3; Arizona Reply Brief at 4; Henderson Decl. at ¶¶ 15-17 (stating that the specification will be amended and that the manufacturers have been aware of the change since May 2000, implying that the change is a ban on YP Soda and a mandate for gum thickener). That is, the Forest Service admits its intent not to purchase fire retardants containing YP Soda in **any** future procurements, not just a single, upcoming procurement. Consistent with that position, the Forest Service is restricting or preventing testing of products under the current Specification. *See* Crouch Decl. at ¶¶ 14-16 and Exhibits A and B thereto. If the rules were decisions related only to the 2005 procurement and would not apply to procurements in 2006 and beyond, then the Forest Service would have no rational basis for halting or restricting testing of Fire-Trol's products containing YP Soda and without gum thickener.

Similarly, the Forest Service would have no rational reason to apply its rules to only one procurement cycle. The stated basis for the rule banning YP Soda is a perceived harm to the environment. Harm to the environment, if any, would not be materially affected by the Forest Service refusing to purchase retardants containing YP Soda on only one contract cycle affecting only one-third of the bases. The stated reason for

requiring gum thickener is that gum thickener "improves" delivery characteristics of retardant. If that were true, then the Forest Service cannot explain why it would only require gum thickener in the 2005 procurements. The reasons given by the Forest Service for its ban on YP Soda and requirement for gum thickener further support the conclusion that they are "rules" under the APA meant to apply to more than just a decision of what to purchase in a single procurement.

The United States Department of Agriculture has expressly committed its agencies, including the Forest Service, to be bound by the APA's public notice and participation procedures, stating:

> The public participation requirements prescribed by 5 U.S.C. 553 (b) and (c) will be followed by all agencies of the Department in rule making relating to public property, loans, grants, benefits, or contracts. . . .

36 Fed. Reg. 13804 (July 24, 1971); *see also Sugar Cane Growers Coop. of Florida v. Veneman*, 289 F.3d 89, 95 n.5 (D.C. Cir. 2002); *Rodway v. United States Dep't of Agric.,* 514 F.2d 809, 814 (D.C. Cir. 1975) (recognizing that "the regulation fully bound the Secretary to comply thereafter with the procedural demands of the APA."). Because the Department of Agriculture has committed that its agencies, including the Forest Service, will comply with the APA's notice and comment requirements, the Forest Service must comply with the APA in adopting its rule not to purchase retardants containing YP Soda and in adopting its rule to require gum-thickeners.

The United States appears to acknowledge this Department of Agriculture requirement, but then attempts to argue that the Forest Service is not bound by the requirement because it would be impractical for the Forest Service to comply with rulemaking procedures for every procurement decision. Fire-Trol does not dispute that complying with APA requirements for every procurement decision would be burdensome. However, as discussed above, and as clearly pled in the Complaint, the Forest Service was not merely deciding what to procure in a specific solicitation, but was adopting an agency statement implementing and/or prescribing its policy with respect to YP Soda and gum thickeners in retardants and/or describing its practice requirements. As such, the Forest Service's positions are rules and, under the Department of Agriculture commitment, subject to the APA proceedings.[7] At most, the United States has identified a disputed issue, but it has not established "beyond doubt" that Fire-Trol cannot establish any facts which would entitle it to relief for the Forest Service's violation of the APA. Accordingly, the United States' Motion to Dismiss under Rule 12(b)(6) must be denied.

### B. Fire-Trol Has Been Prejudiced By The Forest Service's Failure To Comply With APA And FAR Requirements And Violation Of CICA

In a bid protest action, a protestant must show that it was prejudiced. Prejudice is established by a showing that the protestant had a "reasonable likelihood" or "substantial

[7] The United States also suggests that the rulemaking challenged in the instant action falls under the narrow exception to the Department of Agriculture commitment. While the United States may make such an argument as a defense in the underlying suit, whether the rulemaking was properly considered and exempted from the Department of Agriculture commitment is a question to be addressed on the merits, not grounds for granting a motion to dismiss. Further, even if it could be properly considered in the United States' motion, the United States has presented no evidence that the Forest Service actually considered whether compliance would be impracticable, unnecessary, or contrary to the public interest. Certainly, the Forest Service has never produced documentation of such a finding to Fire-Trol.

chance" of receiving the contract award but for the agency's error. *See Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir., 1999); *see also Galen Med. Assocs. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir., 2004) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996).); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir., 2000). In the instant case, Fire-Trol is an incumbent contractor which has been providing wildland fire retardants to the Forest Service for 30 years.[8] Grigel Decl. ¶ 5. Fire-Trol is also one of only two manufacturers with retardants on the qualified products list as compliant with the currently applicable Specification, 5100-304b. As a manufacturer of qualified products and long-time incumbent contractor, there is a reasonable likelihood and substantial chance that Fire-Trol would receive contract awards but for the agency's errors in adopting restrictive specifications and rules, contrary to CICA.

The United States ignores the above standard for prejudice and argues that Fire-Trol was not prejudiced because it had notice of the Forest Service's improper actions.[9] Fire-Trol is not contending that it was prejudiced because it did not receive notice. Rather, Fire-Trol is claiming prejudice from the fact that the failure to comply with statutory and regulatory procedures has resulted in the Forest Service adopting rules and restrictive specifications which are irrational and contrary to CICA. If the Forest Service had properly identified the basis for its rules and specifications, accepted comments on

---

8 For some of that period, the Fire-Trol® retardants were provided by Fire-Trol's predecessor.

9 The Forest Service also ignored this standard in the prior protest against the award of the 2004 contracts. The ruling in *Fire-Trol Holdings LLC v. United States* (Court of Federal Claims Case No. 04-240C) has been appealed.

the rules and specifications, and responded to public input from Fire-Trol and other interested parties, the Forest Service would realize that its proposed rules and specifications are legally and scientifically unjustified. Thus, Fire-Trol is prejudiced in that it loses the opportunity to compete on contracts, some of which it would likely win, by the Forest Service avoiding the process which would identify and force the Forest Service to respond to the fallacies underlying its decisions.

## V. IF THIS COURT FINDS THAT IT LACKS JURISDICTION, IT SHOULD TRANSFER THE ACTION BACK TO THE DISTRICT COURT FOR THE DISTRICT OF ARIZONA

Contrary to the United States' characterization of Fire-Trol's position, Fire-Trol does not claim that it will be "remediless" if this Court finds it lacks jurisdiction.[10] Defendant's Motion at 15. Further, Fire-Trol does not dispute that this Court has the ability and obligation to evaluate its own subject matter jurisdiction without being bound by the District Court's conclusions. *See Clark v. United States*, 229 Ct. Cl. 570, 576 (Ct. Cl., 1981) (stating that "the court always has the right -- indeed, the obligation -- to consider its own jurisdiction"). However, if this Court finds that it lacks jurisdiction, then Fire-Trol requests that it transfer the matter back to the District Court, which would then have jurisdiction. *See* 28 U.S.C. § 1631 (stating that whenever a court finds it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought").

[10] The United States' accusation that Fire-Trol is seeking to "circumvent jurisdictional rules" is wholly unfounded. Fire-Trol has acknowledged that the proper forum for this action is in question. However, just because jurisdiction is unclear does not mean that Fire-Trol is seeking to "circumvent" anything. It simply means that the delineation of jurisdiction over matters impacting public procurements is not entirely clear.

The Court of Federal Claims (or its predecessors) previously has considered the circumstance of the United States changing its position on jurisdiction. As one court explained:

> Unfortunately, this is not the first time that we have had to criticize this practice by the government. [citation] It is unfair to the litigant and leads to an unnecessary waste of money and judicial resources for the government to urge another court to dismiss a case on the ground that we have adequate jurisdiction to decide the issues and then, after the other court has transferred the case here, to seek dismissal on the ground of our lack of jurisdiction.
>
> In the present case the district court's conclusion that this court has jurisdiction to grant the plaintiff full relief followed the government's representation to that effect, and presumably to some extent was based upon it. We have now determined that we do not have that jurisdiction. In the circumstances, we conclude that rather than dismiss the case, as the government urges, retransfer of the case to the district court (for whatever action it considers appropriate) pursuant to 28 U.S.C. § 1406(c) would be in the interest of justice.

*Clark*, 229 Ct. Cl. at 576-77; *see also Drury v. United States*, 52 Fed. Cl. 402, 406 (Ct. Cl., 2002); *National Medical Enters. v. United States*, 28 Fed. Cl. 540, 545-46 (Ct. Cl., 1993). As this Court has done previously, Fire-Trol requests that it transfer the action back to the District Court for the District of Arizona if this Court finds that it lacks jurisdiction over the instant action.

## CONCLUSION

Fire-Trol has pled sufficient, undisputed facts to establish that the Forest Service's failure to comply with the APA and FAR in adopting regulations and restrictive specifications principally affecting future, anticipated procurements is subject to this Court's jurisdiction. Applying *Ramcor*, the Arizona District Court dismissed the substantively identical action and found that this Court has exclusive jurisdiction over the action. Fire-Trol requests that this Court confirm the Arizona District Court's conclusion and deny the United States' motion to dismiss for lack of subject matter jurisdiction.

The United States has failed to establish beyond doubt that Forest Service rules banning YP Soda and requiring gum thickener are not subject to the APA. Because the improper adoption of those rules will prevent Fire-Trol from receiving contracts which it otherwise was likely to receive, Fire-Trol has been prejudiced by the Forest Service actions and inaction. The United States has not established beyond doubt that Fire-Trol can prove no facts entitling it to relief, so the United States' 12(b)(6) motion to dismiss for failure to state a claim should also be denied.

DATED: October 1, 2004

LAW OFFICES OF PAUL F. DAUER

By: s/Paul F. Dauer

PAUL F. DAUER
Attorneys for Plaintiff
FIRE-TROL HOLDINGS, LLC
Telephone: (916) 448-2431
Facsimile: (916) 448-2462